**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                    Chapter 11

BIZGISTICS, INC.                          Case No. 3:21-bk-02197-RCT

      Debtor.

_____/

## DEBTOR'S MODIFIED AMENDED SUBCHAPTER V PLAN OF LIQUIDATION

March 9, 2022

/s/ Megan W. Murray
Megan W. Murray
Florida Bar Number 0093922
Adam M. Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
100 N Tampa St. Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401
Email: mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
*Counsel to the Debtor*

**TABLE OF CONTENTS**

ARTICLE 1 – SUMMARY AND BRIEF HISTORY OF THE DEBTOR
ARTICLE 2 – CLASSIFICATION AND TREATMENT OF CLAIMS AN INTERESTS
ARTICLE 3 – ADMINISTRATIVE EXPENSES AND PRIORITY CLAIMS
ARTICLE 4 – TREATMENT OF CLAIMS AND INTERESTS
ARTICLE 5 – ALLOWANCE AND DISALLOWANCE OF CLAIMS
ARTICLE 6 – ASSUMPTION AND REJECTION OF LEASES
                    AND EXECUTORY CONTRACTS
ARTICLE 7 – MEANS OF IMPLEMENTATION OF PLAN
ARTICLE 8 – EFFECTS OF PLAN CONFIRMATION
ARTICLE 9 – DISCHARGE, INJUNCTION
ARTICLE 10 – MISC.

**EXHIBITS**
Exhibit A – Liquidation Analysis
Exhibit B – Definitions
Exhibit C – Abandoned Vehicles and related Auction Value
Exhibit D – Opt Out Form for Section 9.2

# ARTICLE 1

## SUMMARY AND BRIEF HISTORY OF THE DEBTOR

1.1    **Summary.** As of the Petition Date (September 12, 2021), the Debtor was operating as a contractor for FedEx pursuant to an Independent Service Provider (ISP) Agreement. The Debtor was responsible for the "last mile" delivery of packages for three zip codes in Jacksonville, Florida. The ISP Agreement under which the Debtor operated was purchased from Banner Delivery, Inc. ("**BDI**") in December of 2020. As part of the acquisition, the Debtor also purchased all of the assets and ongoing business operations of BDI pursuant to an asset purchase agreement (the "**Banner APA**"). The Debtor financed this acquisition with a $1,484,000 million loan from ReadyCap Lending, LLC.

The Debtor believes its acquisition of the ISP Agreement was effectuated through wrongdoings and misrepresentations by various parties, including but not limited to Banner, Banner Delivery and FedEx. The Debtor reserves the right to pursue Cause(s) of Action post-confirmation relating to its acquisition of the ISP Agreement and the Banner APA. Notably, FedEx has not filed a claim in this case.

The Debtor hoped to continue its operations past the ISP Agreement's expiration date of October 15, 2021. However, the Debtor and FedEx were not able to reach an agreement for an extension of the ISP Agreement, and the Debtor ceased operating on October 15, 2021. Shortly thereafter, the Debtor began the process of selling its delivery vehicles, the Debtor's main tangible assets.

On September 14, 2021, the Debtor filed its Emergency Motion for Use of Cash Collateral (Doc. No. 5), seeking authority to use cash collateral subject to a lien of ReadyCap in the normal course of the Debtor's business operations. The Debtor was granted authority to use ReadyCap's cash collateral on an interim basis through November 18, 2021. On November 18, 2021, the Debtor was granted authority to utilize cash collateral on a final basis for use in securing and storing the Debtor's vehicles while the vehicles were sold.

On December 10, 2021, the Court approved the sale of 12 vehicles pursuant to those certain Emergency Motions to Sell (Doc. Nos. 88 and 89), bringing in $271,500.00 to the estate. These were sold with ReadyCap's explicit consent. The Debtor also attempted to sell the remaining vehicles and personal property as part of an orderly liquidation of the Debtor's remaining assets. The Debtor was able to sell 2 additional vehicles, also with ReadyCap's consent, and the Debtor is currently holding $305,000 in the estate from the sale of vehicles with liens notated in favor of ReadyCap. The Debtor had prospective buyers for its remaining vehicles, but either ReadyCap wholly rejected the offers or the prospective buyers walked away because the Debtor could not obtain title information from ReadyCap.

The Debtor filed a Cause of Action on September 28, 2021, relating to a $150,000 holdback ("**Holdback**") under the ISP Agreement (held in escrow with Old Republic Title Company of Oregon ("**Old Republic**")) (Adversary Proceeding No. 21-ap-70-JAB). BDI and ReadyCap also assert an interest in the Holdback, which the Debtor adamantly disputes.

On November 3, 2021, the Debtor sought the employment of special counsel, Erik Johanson, to prosecute causes of action on behalf of the Debtor (Doc. No. 74, approved at Doc. No. 78).  In connection therewith, the Adversary Proceeding was dismissed without prejudice to allow the Debtor's special counsel to pursue some additional discovery with respect to the Debtor's causes of action, and intends to file an amended complaint to assert such claims which also are interrelated with the Holdback and the Debtor's acquisition from Banner Delivery, Inc.

The Debtor believes it has strong causes of action to pursue post-confirmation that will augment recovery to creditors.

1.2    **Liquidation Analysis.** To confirm the Plan, the Court must find that all creditors and Equity Interest Holders who do not accept the Plan will receive at least as much under the Plan as such claim and Equity Interest Holders would receive in a chapter 7 liquidation. Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis, which shows that, consistent with the liquidating nature of this Plan, all remaining assets of the Debtor will be liquidated and distributed to creditors in the same means as a chapter 7 distribution. Further, because this is a liquidating chapter 11 plan, the Debtor believes it is more beneficial to creditors to liquidate in this case under a chapter 11, given that a chapter 7 trustee and its counsel would add an additional layer of administrative expenses. The treatment proposed under the Plan satisfies 11 U.S.C. § 1129(a)(7) of the Bankruptcy Code.

1.3    **Nature of Distributions.** The remaining assets of the estate are the Debtor's remaining vehicles, Cash, Causes of Action, and minimal personal property and equipment.  The ownership of some of these assets is disputed.  ReadyCap asserts a lien on most of these assets, some of which the Debtor disputes.  The Debtor has filed a claim objection to ReadyCap's Claim No. 3 (Doc. No. 139), disputing, *inter alia,* the extent of ReadyCap's alleged security interest, and the Debtor continues to pursue discussions related to this claim with ReadyCap.  The Net Sale Proceeds of the Debtor's assets (other than those abandoned to ReadyCap) will be liquidated and remitted to Holders of Allowed Claims in accordance with the priority scheme set forth in the Bankruptcy Code and this Plan. To the extent applicable, all disposable income as defined by § 1191(d) will be used to make distributions under the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

## ARTICLE 2

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1    Classification

(a)    **Unclassified Claims.**  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified and are excluded from the Classes.  The treatment accorded Administrative Expense Claims is set forth in Article 3 of this Plan

(b)    **Classes.**  For the purposes of the Plan, Claims against the Debtor are grouped in the following Classes in accordance with § 1122(a) of the Bankruptcy Code:

    (i)        Class 1 – Secured Claim of ReadyCap.

    (ii)      Class 2 – Priority Claims.

    (iii)     Class 3 – General Unsecured Claims.

    (iv)     Class 4 – All Equity Interests in the Debtor as of the Petition Date.

# ARTICLE 3

## ADMINISTRATIVE EXPENSES AND PRIORITY CLAIM

3.1   <u>Administrative Expense Claims</u>.  Unless otherwise agreed between the Debtor and the holder of an Allowed Administrative Expense Claim, each holder of an Allowed Administrative Claim, including but not limited to the Subchapter V Trustee, shall receive the Allowed Amount of such holder's Allowed Administrative Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date or as otherwise Allowed by Court Order.  Pursuant to agreement:

(a)    The full amount of the Subchapter V Trustee's Allowed Administrative Claim (Doc. Nos. 133, 143) shall be paid on the Effective Date by the Debtor's principals, Sue and Darrell Giles as a non-debtor contribution to the estate.

(b)    Debtor's counsel's Administrative Claim, upon its allowance and to the extent Allowed, shall be paid from all unencumbered recoveries from the estate, unless otherwise satisfied from non-debtor sources or allowed as a surcharge (but after motion, notice to all parties in interest and pursuant to Court Order).

3.2   <u>Statutory Fees</u>.  There are no statutory fees due under 28 U.S.C. § 1930 as this is a Subchapter V case.

# ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS

4.1   <u>Classes</u>.

**Class 1 – Allowed Secured Claim of ReadyCap.**

(a)    Except to the extent that a holder of an Allowed Class 1 Claim agrees to less favorable treatment, the holder of an Allowed Class 1 Claim shall receive, on account of its Allowed Class 1 Claim, payment or satisfaction, up to the amount of its Allowed Class 1 Claim, from the Net Sale Proceeds, net proceeds (after expenses) and/or abandonment of the ReadyCap Collateral on the Effective Date or as soon thereafter as such Class 1 Claim becomes an Allowed Claim and distribution is economically feasible.  ReadyCap intends to abandon the Abandoned Vehicles pursuant to ReadyCap's Motion for Stay Relief (Doc. No. 144).

(b)    ReadyCap's Allowed Class 1 Claim shall be deemed satisfied by the amounts it receives from (a) the Net Sale Proceeds from the sale of ReadyCap Collateral; (b) the Auction Values of the Abandoned Vehicles; (c) Cash Collateral; (d) the value of the remaining Debtor equipment abandoned to ReadyCap as such value is determined by the Court; and (e) any other assets or

proceeds that the Court determines constitute ReadyCap Collateral, at such actual amounts as determined by the Court or otherwise agreed between the Debtor and ReadyCap.

(c)    In the event the Debtor fails to surrender tangible ReadyCap Collateral to ReadyCap on or before March 31, 2022, ReadyCap shall be entitled to pursue its rights and remedies as to that specific tangible, ReadyCap Collateral at issue, and the automatic stay shall no longer be in place as to such tangible ReadyCap Collateral. To the extent the Debtor and ReadyCap dispute what constitutes tangible ReadyCap Collateral, ReadyCap shall be entitled to relief from the automatic stay to pursue such assets only after the Court determines such assets constitute ReadyCap Collateral. Tangible ReadyCap Collateral shall not be construed to mean any proceeds from the Debtor's Causes of Action.  For clarification, to the extent ReadyCap is entitled to an Allowed Unsecured Claim, such claim shall be treated as a Class 3 Unsecured Claim.  Class 1 is impaired and entitled to vote.

### Class 2 – Allowed Priority Claim

(a)    To the extent any holder of a Class 2 Priority Claim exists, after such claim becomes an Allowed Class 2 Claim, all Allowed Class 2 Claim Holders shall receive the sooner to be paid of (1) payment in full from the liquidation of any unencumbered assets or any recoveries from any Causes of Action, as soon as practicable after payment in full of all Allowed Administrative Expense Claims and Allowed Class 1 Claims; (2) assuming Allowed Administrative Expense Claims and Allowed Class 1 Claims are paid in full, payment of one-fifth of such Allowed Class 2 Claim on the 1-year anniversary of the Effective Date, and each subsequent anniversary of the Effective Date, or (3) payment in full on the fifth anniversary of the Effective Date. To the extent necessary, payment of an Allowed Class 2 Claim pursuant to (2) and (3) shall come from the Giles individually as a contribution to the estate.

(b)    The Debtor does not believe any Class 2 Claims will exist as a result of the Debtor's net operating losses associated with the Debtor's business. The Debtor intends to file an amended tax return to this effect on or before the Effective Date. To the extent Class 2 exists, it is impaired and is entitled to vote.

### Class 3 – General Unsecured Claims.

(a)    Each holder of an Allowed General Unsecured Claim against the Debtor shall receive its pro rata share of any funds available from the liquidation of any unencumbered assets and/or any recoveries from any Causes of Action, as soon as practicable after payment in full of Allowed Administrative Expense Claims, Allowed Class 1 Claims and Allowed Class 2 Claims.  Class 3 is impaired and entitled to vote.

### Class 4 – Equity

(a)    Class 4 is comprised of all Equity Interests in the Debtor, which are owned by Sue and Darrell Giles. The Giles will retain their Equity Interests in the Debtor. No distributions will be made to the Giles until the distributions to Allowed Administrative Expense Claims, Allowed Class 1, Allowed Class 2 and Allowed Class 3 Claims have been made in full. Class 4 is impaired.

### **ARTICLE 5**

6

<u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>

5.1    A Disputed Claim is a claim that has not been Allowed or Disallowed by a non-appealable final order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2    No distribution will be made on account of a Disputed Claim unless such claim first becomes an Allowed Claim by a non-appealable final order.

5.3    On the Effective Date, all rights, and authorities shall vest in the Debtor, including the power, right, and authority to pursue objections to claims and Causes of Action, including but not limited to Causes of Action under Chapter 5 of the Bankruptcy Code. The Debtor will have the rights, powers, and privileges, to pursue, not pursue, settle, release, or enforce any objections to Claims or Causes of Action with the Bankruptcy Court's approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. The Debtor reserves the right to appoint a Plan Trustee on or before or after the Effective Date, with notice to the Court and all parties in interest, to assign the rights, powers, and privileges, to pursue, not pursue, settle, release, or enforce any objections to Claims or Causes of Action owned by the Debtor.  On the Effective Date and thereafter, all cash of the estate shall be remitted to the Subchapter V Trustee (or Plan Trustee if so appointed) who, as disbursing agent, shall have sole authority to disburse pursuant to Article 7 or subsequent Court Order.

5.4    No creditor or other party should vote for the Plan or otherwise rely on confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any objection to claim or cause of action. No creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any objection to claim or cause of action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO RELEASE ANY OBJECTIONS TO CLAIMS OR CAUSES OF ACTION, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE ESTATE AND DEBTOR. Creditors are advised that legal rights, claims, and rights of action the Debtor or the estate may have against them, if they exist, are retained under the Plan for prosecution by the Debtor. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim, or right of action against a particular creditor in the Plan or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the estate does not possess or does not intend to prosecute a particular objection to claim or cause of action if a particular creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to claims, and rights of action of the estate, whether now known or unknown, for the benefit of the Debtor's estate. Any objection to claim or cause of action shall not, under any circumstances, be waived as a result of the failure to describe it with specificity in the Plan; nor shall the Debtor, as a result of such failure, be estopped or precluded under any theory from pursuing such objection to claim or cause of action. Nothing in the Plan operates as a release of any objection to claims or causes of action. The Debtor does not presently know the full extent of the objections to claims or causes of action, and for purposes of voting on the Plan, all Creditors are advised that the Debtor will have substantially the same rights that a Chapter 7 trustee would have with respect to objections to claims and causes of action. Accordingly, neither a vote to accept the Plan by any Creditor nor the

entry of the Confirmation Order will act as a release, waiver, bar, or estoppel of any objections to claims or causes of action against such Creditor.

## ARTICLE 6

ASSUMPTION OR REJECTION OF
UNEXPIRED LEASES AND EXECUTORY CONTRACTS

6.1    Executory Contracts.  The Debtor rejects all executory contracts and unexpired leases effective as of the Effective Date.

6.2    Any claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the Confirmation Order.

## ARTICLE 7

IMPLEMENTATION OF PLAN

7.1    Plan Implementation This is a liquidating plan. The remaining assets of the estate are Cash, Causes of Action, disputed interests as to a Service Truck and Service Trailer, and minimal equipment. Any Cash identified as Cash Collateral will be remitted to ReadyCap on the Effective Date or as soon thereafter as ReadyCap is determined to have an Allowed Class 1 Claim.  Tangible assets of the estate will either be surrendered to ReadyCap or sold, and the Net Sale Proceeds will be used to fund this Plan as set forth herein.   The Debtor will liquidate all other assets and Causes of Action and distribute for the benefit of creditors.

7.2    Service Truck and Service Trailer – Banner Delivery, Inc. asserts an unsecured claim (Claim No. 1), relating to a Promissory Note ($600,000), the Holdback ($150,000) and Vehicles ($110,000)    (VIN#1FD0W5HT0JEC21611)    (the    "**Service    Truck**")    and (VIN#55YBE1821EN002935 and its contents) (the "**Service Trailer**"). There is a bona fide dispute as to the ownership of the Service Truck and Service Trailer, in which both the Debtor and BDI claim an interest.[1] The Debtor believes there is no dispute that, following the execution of the APA, BDI took a $64,000 insurance check of the Debtor's relating to the "**Accident Truck**" (Vin # 4UZAARFD6JCJY4114), and thereafter took the Accident Truck itself, despite the fact that rights to both the Accident Truck and related insurance proceeds were acquired by the Debtor through the APA.  The Debtor's Amended Motion for an Order Authorizing Sale of Disputed Trucks and Trailer Free and Clear of All Liens, Claims, and Encumbrances and Approving Form and Manner of Sale (Doc. No. 158) seeking authority to sell the Service Truck and Service Trailer ("**Sale Motion**"), and Banner Delivery, Inc. and Gareth Banner's Amended Motion from Relief from Automatic Stay (Doc. No. 166) are currently pending.  Any net proceeds the Debtor is entitled to as a result of such sale or liquidation of the Service Truck, Service Trailer and any other small tools or equipment shall be used to fund the Plan. The Debtor will prosecute BDI's (or Gareth Banner's) theft of the Debtor's insurance proceeds and the Accident Truck post-confirmation.

---

[1] The Debtor purchased all assets of BDI pursuant to the APA. The Service Truck and Trailer were not on small list of excluded items, therefore they were included in the sale.

7.3    The Debtor post-confirmation

The Debtor's current principals shall continue to hold the sole equity in the Debtor post-confirmation and shall remain employed in their current capacities as COO (Sue Giles) and CEO (Darrell Giles), unless otherwise ordered by the Court.  Neither Sue nor Darrell Giles shall be compensated for serving in such capacities during the remaining term of the Plan.

7.4    Provisions Concerning Plan Distributions.

(a)    All distributions under the Plan shall be made by the Subchapter V Trustee (or Plan Trustee, if so appointed), whether the Plan is confirmed pursuant to § 1191(a) or (b) of the Bankruptcy Code. On the Effective Date, the Debtor shall transfer all amounts held in trust for the benefit of the Debtor to the account designated by the Subchapter V Trustee (or the Plan Trustee, if so designated).

(b)    Disbursing Agent.  Unless otherwise ordered by the Court, the Subchapter V Trustee (or Plan Trustee if so appointed) shall act as the disbursing agent and shall make all distributions required under this Plan, and shall be compensated at such hourly rate as he has been paid throughout this case, or as otherwise provided by the Court, from assets of the Debtor, or if necessary, by contribution from the Debtor's principals as necessary. The Debtor believes that disbursements should be minimal until the Causes of Action are liquidated, minimizing the Subchapter V Trustee's (or Plan Trustee's) role and attendant expenses during the Plan period.

(c)    Date of Distributions.  Distributions shall be made beginning on the first Monday to occur after the occurrence of the Effective Date that is a Business Day and continue thereafter as dictated by the terms of the Plan.

7.5    Unclaimed Distributions.  If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder, or such check is returned due to an incorrect or incomplete address, within 90 days of the date such check was issued, then the Subchapter V Trustee (or, if applicable Plan Trustee) shall provide written notice to such Holder notifying such Holder that such check has not been negotiated.  The Subchapter V Trustee may, in its discretion, independently attempt to track down, correct or complete addresses of claimants.  If, after 90 days from the date upon which the Subchapter V Trustee provides written notice to the Holder of an Allowed Claim that such check has not been negotiated (i.e., 180 days from the date upon which the check was issued), the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further claim in respect of such check,. Any unclaimed Distribution as described above shall revert to the estate and the Trustee shall redistribute any unclaimed funds to other creditors of the same class as the Holder of an Allowed Claim who has not claimed its Distribution, until all such Allowed Claims of that Class are satisfied in full, and then to such other Classes of Claims and Interests as set forth in the Plan.

7.6    Disputed Claims.

(a)    Objection Deadline.  As soon as practicable, but in no event later than thirty (30) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court,

objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders thereof and the United States Trustee for the Middle District of Florida.

7.7        Procedures for Resolving Disputed Claims

(a)        Prosecution of Objections to Claims. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing (or by negative notice under local rules), and except as otherwise provided in the Plan, the Debtor will have the exclusive right to make and file objections to all Claims, other than those claims deemed as "Allowed" under the terms of the Plan. All objections commenced prior to the Confirmation Date will be finished by the Debtor.

(b)        Except as may be specifically set forth in the Plan, nothing in the Plan, the Confirmation Order or any order in aid of Confirmation, will constitute, or be deemed to constitute, a waiver or release of any claim, Cause of Action, right of setoff, or other legal or equitable defense that either Debtor had immediately prior to the commencement of this case against or with respect to any Claim or Equity Interest, with the exception of claims against any creditor who holds a stipulated and Allowed Claim under the Plan. Except as set forth in the Plan, upon Confirmation the Debtor will retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that either Debtor had immediately prior to the commencement of this Case as if it had not been commenced.

(c)        Payments and Distributions on Disputed Claims. As and when authorized by a Final Order, Disputed Claims that become Allowed Claims will be paid such that the Holder of such Allowed Claim receives all payments and distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question. Holders of Disputed Claims will not be entitled to vote on the Plan unless otherwise provided for in the Plan or ordered by the Court. Except as otherwise provided in the Plan, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order.

(d)        Disallowance / Allowance of Claims and Interests. According to the Plan, all Claims held by entities against whom the Debtor has obtained a Final Order establishing liability for a Cause of Action under Code Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Code will be deemed disallowed pursuant to Code Section 502(d), and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that entity have been settled or resolved by a Final Order and all sums due the Debtor by that Entity are turned over to the Debtor. The Debtor reserves and will have the exclusive right and authority to bring any Causes of Action before and after the Effective Date.

(e)        Allowance of Claims. Except as expressly provided in the Plan, no Claim or Equity Interest will be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court in the Bankruptcy Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Code or the Bankruptcy Court enters a Final Order in the Bankruptcy Cases allowing such Claim or Equity Interest.

(f)        Confirmation Date. If any controversy related to the Confirmation Date is not resolved prior to the Effective Date, the Debtor's interpretation of the Plan will govern.

7.8        <u>Transfer Taxes</u>. The transfer of any assets or property pursuant to this Plan, or the making or delivery of an instrument of transfer under this Plan, shall not (and the Confirmation Order shall so order), pursuant to § 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp, transfer tax or other similar tax.

7.9        <u>Effectuating Documents and Further Transactions</u>.   The Debtor and its current management shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

## ARTICLE 8

## EFFECTS OF PLAN CONFIRMATION

8.1        <u>Injunction</u>.  All injunctions or automatic stays provided for in the case or the Plan or pursuant to §§ 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the property is no longer property of the estate.  Any preliminary or permanent injunction entered by the Bankruptcy Court such as the Confirmation Order, shall continue in full force and effect following the Confirmation Date and Final Decree Date, unless otherwise ordered by the Bankruptcy Court

8.2        <u>Terms of Injunction and Automatic Stay.</u>  Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court, the injunction described in Article 9 of the Plan shall remain in full force and effect following the Effective Date.  All other injunctions or automatic stays provided for in the Bankruptcy Case pursuant to § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

8.3        <u>Disallowed Claims.</u>  On and after the Effective Date, the Estate shall be fully and finally discharged of any liability or obligation on a Disallowed Claim.

8.4        <u>Retention and Enforcement of Causes of Action.</u>  Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Debtor (or the Plan Trustee, as applicable) shall retain and have the exclusive right to enforce any and all Causes of Action and rights of the Debtor that arose both before and after the Petition Date.

8.5        <u>Vesting</u>.  Unless otherwise ordered by the Court or transferred to a Plan Trustee, all assets and rights of the Debtor shall vest in the post-confirmation Debtor (other than disbursement rights granted to the Subchapter V Trustee).  Any reference to Debtor herein shall refer to Plan Trustee to the extent applicable.

## ARTICLE 9

## DISCHARGE AND INJUNCTION

9.1        Pursuant to Section 1141(d)(3)(A), the Debtor shall not receive a discharge.

9.2    Limited Exculpation from Liability

**THE DEBTOR'S TWO OFFICERS (SUE AND DARRELL GILES) AND ITS GENERAL BANKRUPTCY COUNSEL, UNDERWOOD MURRAY, P.A. (ACTING IN SUCH PROFESSIONAL CAPACITY) (COLLECTIVELY, THE "*EXCULPATED PARTIES*") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE LIMITED EVENTS OF DRAFTING, NEGOTIATIONS AND CONFIRMATION OF THE PLAN; PROVIDED, HOWEVER, THIS EXCULPATION FROM LIABILITY PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH PARTY. ANY SUCH CLAIMS SHALL BE GOVERNED BY THE STANDARD OF CARE OTHERWISE APPLICABLE TO THE STANDARD OF NEGLIGENCE CLAIMS OUTSIDE OF BANKRUPTCY. THE RIGHTS GRANTED UNDER THIS ARTICLE 9.2 ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.**

**ANY INTERESTED PARTY WISHING TO OPT OUT OF THIS PROVISION SHALL BE REQUIRED TO RETURN AN EXECUTED FORM ATTACHED HERETO AS EXHIBIT D WITHIN 30 DAYS OF THE ENTRY OF THE COURT'S ORDER CONFIRMING THIS PLAN. THE DEBTOR SHALL FILE A NOTICE WITH THE COURT INDICATING THOSE PARTIES WHO OPTED OUT OF THIS PROVISION WITHIN 30 DAYS OF ENTRY OF THE CONFIRMATION ORDER, WHICH NOTICE SHALL MERGE AND BE INTEGRATED WITH THE PLAN AND CONFIRMATION ORDER.**

9.3    Injunction

**IN ORDER TO PRESERVE AND IMPLEMENT THE PLAN, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER OR BY OTHER COURT ORDER, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM AGAINST THE ESTATE ARE AND SHALL BE PERMANENTLY ENJOINED AND FOREVER BARRED TO THE FULLEST EXTENT PERMITTED BY LAW FROM TAKING ANY OF THE FOLLOWING ACTIONS TOWARDS RECEIVING DISTRIBUTIONS ON ACCOUNT OF ANY SUCH CLAIMS, OTHER THAN ACTIONS BROUGHT TO ENFORCE ANY RIGHTS OR OBLIGATIONS UNDER THE PLAN: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST THE DEBTOR OR ITS ASSETS OR ITS ESTATE TO COLLECT ON SUCH CLAIMS; (B) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST THE DEBTOR OR ITS ASSETS OR ITS ESTATE; (C) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN, THE CONFIRMATION ORDER OR OTHER COURT ORDER.**

**NOTHING IN THIS PLAN SHALL BE CONSTRUED TO PRE-DETERMINE, ADJUDICATE, PROHIBIT, LIMIT OR IMPAIR ANY PARTY IN INTEREST'S RIGHTS, CLAIMS, COUNTERCLAIMS, OR DEFENSES AGAINST THE DEBTOR TO THE EXTENT SUCH RIGHTS, CLAIMS, COUNTERCLAIMS OR DEFENSES ARE PERMITTED UNDER THE LAW OR BANKRUPTCY CODE AND NOT OTHERWISE INCONSISTENT WITH THE PLAN, ALL OF WHICH RIGHTS ARE FULLY RESERVED.**

## ARTICLE 10

### MISCELLANEOUS

10.1   **Definitions**. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, unless otherwise defined.

10.2       **Effective Date.** The Effective Date of this Plan (the "**Effective Date**") is the first business day  after the date the Debtor files notice of all opt-out parties pursuant to Section 9.2 and Exhibit D. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

10.3       **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

10.4       **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

10.5       **Default.**  If the Debtor fails to make any payment required under the Plan, and if such default continues for a period of 30 days following receipt by the Debtor of notice of such default from any affected Holder of an Allowed Claim, upon written demand from any such Holder of an Allowed Claim, unless the Debtor disputes the existence of the alleged payment default, the Debtor shall within 30 days, seek to modify the plan pursuant to Section 1193(b) of the Bankruptcy Code, to among other things, eliminate the said default.

In the event of an uncured default, which is not eliminated by virtue of a post-confirmation modification of the Plan; (i) secured creditors may pursue their collateral and any other applicable remedies in any court of competent jurisdiction; and (ii) unsecured creditors may pursue any applicable remedies in any court of competent jurisdiction.

10.6       **Headings and Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

10.7 **Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan or such other agreement, document, or instrument.

10.8 **Corporate Governance**. The Debtor requests that the Bankruptcy Court relieve it of the requirement of Section 1123(a)(6) of the Bankruptcy Code given that 100% of the stock is owned by Sue Giles and Darrell Giles.

10.9 **Post Confirmation Duties of Subchapter V Trustee**.  Aaron Cohen is the duly appointed Subchapter V Trustee in this case. On the Effective Date, unless otherwise ordered by the Court, the Subchapter V Trustee shall maintain his duties, responsibilities, rights, and obligations set forth in the Bankruptcy Code, the Plan, and orders of the Bankruptcy Court to monitor and oversee the post-confirmation bankrupt estate until its closure.

10.10 **Tax Returns.** Consistent with the Bankruptcy Code, the Debtor and its principal shall be responsible for filing all prepetition, post petition, and post confirmation tax returns, whether local, state, or federal and whether income, sales and use, or otherwise. Except for any tax claims being paid under the Plan from estate funds, the Debtor shall be responsible for the payment of all tax obligations associated with the Debtor. For the avoidance of doubt, except for making any distributions called for under the Plan, the Subchapter V Trustee shall not have any obligation or liability for filing any tax returns for the Debtor or the estate, or paying any tax obligations of the Debtor or the estate.

10.11 **Notice.** All notices, requests, elections, or demands in connection with this Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested to:

> Megan W. Murray
> Underwood Murray, P.A.
> 100 N. Tampa St., Suite 2325
> Tampa. FL 33602
>
> Subchapter V Trustee, Bizgistics, Inc.
> Aaron R. Cohen
> P.O. Box 4218
> Jacksonville, Florida 32201
> Tel: 904-389-7277
> FL Bar #558230
> acohen60@bellsouth.net

10.12 **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permitted by applicable law, including any jurisdiction that is necessary or appropriate to ensure that the purposes and intent of the Plan are carried out.

Dated: March 9, 2022

Susan "Sue" Giles, as Chief Operating Officer

/s/ *Susan Giles*

Darrell Giles, as Chief Executive Officer

/s/ *Darrell Giles*

Respectfully submitted,

/s/ Megan W. Murray
Megan W. Murray
Florida Bar Number 0093922
Adam M. Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 N. Tampa St., Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
        *Counsel to the Debtor*

Susan "Sue" Giles, as Chief Operating Officer

Darrell Giles, as Chief Executive Officer

Respectfully submitted,

/s/ Megan W. Murray
Megan W. Murray
Florida Bar Number 0093922
Adam M. Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 N. Tampa St., Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
*Counsel to the Debtor*

**EXHIBIT A – LIQUIDATION ANALYSIS**

|  | Chapter 11 | Chapter 7 |
|---|---|---|
| **Assets:** | | |
| ReadyCap Collateral | $ 600,000 | $ 550,000 |
| Miscellaneous Personal Property | $ 37,760 | $ 30,000 |
| Cash on Hand | $ - | $ - |
| Disputed Holdback | $ 150,000 | $ 75,000 |
| Insurance Funds & Accident Truck | $ 77,000 | $ 77,000 |
| Disputed Truck and Trailer | $ 110,000 | $ 75,000 |
| Net Causes of Action | $ 1,000,000 | $ 500,000 |
| **Total Assets** | **$ 1,974,760** | **$ 1,307,000** |
| | | |
| **Liabilities** | | |
| Allowed Secured Claim | $ 637,760 | $ 580,000 |
| Administrative Expense Claims | $ 150,000 | $ 250,000 |
| Priority Unsecured Claims | $ - | $ - |
| Total Liabilities Before Distributions to Unsecured creditors | $ 787,760 | $ 830,000 |
| **Proceeds for Unsecured Creditors** | **$ 1,187,000** | **$ 477,000** |
| | | |
| General Unsecured Claims | $ 1,692,699 | $ 1,692,699 |
| Percent Recovery for General Unsecured Claims | 70% | 28% |

* It is unknown whether a chapter 7 trustee agrees to pursue the litigation as the Debtor. If he does

he will be paid on statutory basis and also retain main case counsel to do so, perhaps in addition to

contingency counsel, increasing administrative fees in a chapter 7 liquidation.

**The Debtor believes that ReadyCap is partially unsecured based on its lack of perfection in a

commercial tort claim and the holdback escrow.  ReadyCap has sought stay relief as to the remaining

vehicles with ReadyCap liens, which the Debtor does not oppose.

***In preparing the Liquidation Analysis, Debtor estimated Allowed Claims based upon a review of

Claims listed on Debtor's Schedules and Proofs of Claim Filed to date. In addition, the Liquidation

Analysis includes estimates for Claims not currently asserted in this Case, but which could be asserted

and Allowed in a Chapter 7 liquidation, including Administrative Claims, wind-down costs, and trustee

fees. Debtor's estimate of Allowed Claims set forth in the Liquidation Analysis is an estimate of

recoveries under Chapter 11 and Chapter 7 and should not be relied on for any other purpose,

including determining the value of any distribution to be made on account of Allowed Claims and

Interests under the Plan. Nothing herein shall be construed as a concession or admission of the

Debtor, the actual number of allowed claims and the recoveries in this case could materially differ

from these estimations. Further the Debtor believes that even if the values of assets were exactly the

same, which is not clear, the confirmation of a liquidating chapter 11 plan is still in the best interest of

the estate because added chapter 7 costs could reduce recoveries to the estate and because the

Debtor is in the best position to recover the largest remaining assets, causes of action, on behalf of

the estate.

## EXHIBIT B

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in the Plan (as hereinafter defined). Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in the Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules (as such terms are hereinafter defined) shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply in construction of the Plan.

"Abandoned Vehicles" means those vehicles listed in Exhibit C and the related Auction Values, deriving from the appraisal performed at closing of the sale from BDI to the Debtor in late 2020.

"Administrative Expense Claim" means any Claim for the payment of any Administrative Expense.

"Administrative Expense" means any cost or expense of administration of the Bankruptcy Case under § 503(b) of the Bankruptcy Code.

"Allowed" means and includes, with respect to any Claim, (a) any Claim (other than a Disputed Claim), proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) that is listed in the Schedules as liquidated in a certain amount and not Disputed or Contingent, and, in each such case in (a) and (b) herein, as to which either (1) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (2) the Claim has been Allowed by a Final Order of the Bankruptcy Court (but only to the extent so Allowed).

"Allowed Amount" means the dollar amount in which a Claim is Allowed.

"Bankruptcy Case" means the above-captioned chapter 11 case for the Debtor that was filed on the Petition Date.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., as in effect on the Petition Date, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

"Bankruptcy Court" or "Court" means either the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, having jurisdiction over the Bankruptcy Case or, to the extent the reference is withdrawn, the District Court.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Bankruptcy Case, together with all amendments and modifications to the extent applicable to the Bankruptcy Case.

"Banner" means Garreth Banner.

"Banner APA" means the asset purchase agreement entered into between the Debtor, Banner, and Banner Delivery.

"Banner Delivery" or "BDI" means Banner Delivery, Inc.

"Business Day" means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)).

"Cash" means lawful currency of the United States of America and its equivalents.

"Causes of Action" means any and all of the Debtor's or Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any creditor or other third party, including any reference to "potential claim" and any claims under Chapter 5 of the United States Bankruptcy Code an any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to herein.  When used herein, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor pursuant to a Final Order of the Bankruptcy Court.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan; nor shall the Debtor be estopped or precluded under any theory from pursuing such Causes of Action. Except as waived by the terms of the Plan or Final Order of the Bankruptcy Court, nothing in the Plan operates as a release of any Cause of Action, and all Causes of Action not so released shall become Causes of Action of the Debtor by virtue of operation of the Plan.

"Claims Bar Date" means the last date set by the Court for any Creditors, other than any Governmental Units and Holders of Equity Interests, if any, to file Proofs of Claim in the Case.

"Class" means a category of Claims as classified in Article 2.

"Confirmation" or "Confirmation of the Plan" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Confirmation Order becomes a Final Order.

"Confirmation Order" means the Order of the Bankruptcy Court confirming the Plan pursuant to Section 1191 of the Bankruptcy Code.

"Contingent" means a right that has not accrued and that is dependent upon a future event or events that has or have not occurred and may never occur.

"Creditor" means any Person holding an Allowed Claim, including Administrative Claimants and Claims of the kind specified in Code Sections 502(b), 502(h) and/or 502(i), and such Person's heirs, successors, assigns, executors, and personal representatives.

"Debtor" means Bizgistics, Inc. who filed its chapter 11 bankruptcy petition on the Petition Date.

"Disputed Claim" means a Claim that has not been Allowed by a Final Order of the Bankruptcy Court as to which (a) a Proof of Claim has been filed with the Bankruptcy Court, or is deemed filed under applicable law or Order of the Bankruptcy Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Bankruptcy Court or (3) granted in whole or part by a Final Order of the Bankruptcy Court.  For purposes of the Plan, a Claim that has not been Allowed by a Final Order of the Bankruptcy Court shall also be considered a Disputed Claim, whether or not an objection has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, if (A) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (B) the amount of the Claim specified in the schedules is listed as unknown and no Proof of Claim has been filed asserting an amount of the Claim; (C) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (D) no corresponding Claim has been scheduled in the Schedules or (E) such Claim is reflected as disputed, unliquidated or Contingent in the Proof of Claim filed in respect thereof.

"Distribution" means funds to be paid to Holders of Allowed Claims.

"Distribution Date" means dates when Distributions may be made pursuant to the Plan.

"District Court" means the United States District Court for the Middle District of Florida, or the unit thereof having jurisdiction over the matter in question.

"Effective Date" means the date defined in Article 10.

"Equity Interest" means the equity in the Debtor or the Debtor as provided for in the Plan.

"Estate" means the estate of the Debtor created by § 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

"FedEx" means FedEx Ground Package System, Inc.

"Final Order" means an Order, the implementation, operation or effect of which has not been stayed and as to which Order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

"Governmental Unit" means any foreign, provincial, federal, state, local or municipal (a) government, (b) governmental agency, (c) governmental commission, (d) governmental department, (e) governmental bureau, (f) governmental ministry or (g) governmental entity.

"Impaired" refers to any Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"ISP Agreement" means the Independent Service Provider Agreement entered into between the Debtor and FedEx effective as of November 14, 2020.

"Net Sale Proceeds" means the amount of Cash paid to the Debtor through the sale of its assets, less selling costs associated with the sale of such assets (including but not limited to any surcharge or carveout ordered by the Court), and including without limitation, real estate commissions, pro-ration of property taxes and utilities, transfer taxes (if applicable), excise taxes, title fees, escrow fees and closing costs.

"Order" means an order or judgment of a court.

"Petition Date" means September 12, 2021.

"Plan" means the Debtor's Plan under Chapter 11, Subchapter V of the United States Bankruptcy Code, including any exhibits and other attachments hereto, as it and they may be amended, modified or supplemented from time to time.

"Pro Rata " or "Pro Rata Share" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such  allowed Claims or Allowed Interests under the Plan.

Priority Claim" means a Claim that is entitled to priority under § 507.

"Professional" means any entity retained by order of the Bankruptcy Court in connection with this chapter 11 case pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code, including any entity retained pursuant to an order of the Bankruptcy Court authorizing the retention of "ordinary-course professionals."

"Proof of Claim" means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001, 3002 or 3003.

"ReadyCap Collateral" means any vehicles, cash collateral, equipment or other assets upon which the Court determines ReadyCap has a first priority lien and pursuant to which Ready Cap has an Allowed Class 1 Claim under this Plan.

"Schedules" means the Schedules, Statements and Lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they may be amended or supplemented from time to time.

"Service Truck" shall have the meaning ascribed in Article 7.

"Service Trailer" shall have the meaning ascribed in Article 7.

"Subchapter V Trustee" means Aaron R. Cohen, Esq., who was appointed pursuant to 11 U.S.C. § 1183.

EXHIBIT C

**Abandoned Vehicles:**

| UNIT NUMBER | LIEN | Owner | VIN | Auction Value – per M&E Appraisal Nov. 2020 |
|---|---|---|---|---|
| 96703 | ReadyCap | Bizgistics | 1HTMGABM01A930174 | $14,500.00 |
| 408050 | ReadyCap | Bizgistics | 4UZAARDU6HCJD1843 | $35,000.00 |
| 412344 | ReadyCap | Bizgistics | 4UZAAPFD1KCKN9145 | $55,000.00 |
| 321455 | ReadyCap | Bizgistics | 1FC3E4KL5GDC13591 | $23,500.00 |
| 405658 | ReadyCap | Bizgistics | 4UZAARDU7HCJC2410 | $48,000.00 |
| 412345 | ReadyCap | Bizgistics | 4UZAAPFD3KCKN9146 | $55,000.00 |
| 325569 | ReadyCap | Bizgistics | 1F65F5KY3G0A15965 | $27,000.00 |
| 321458 | ReadyCap | Bizgistics | 1FC3E4KL3GDC13590 | $22,500.00 |
| 405665 | ReadyCap | Bizgistics | 4UZAANFD6JCJP7821 | $49,000.00 |
| 310920 | ReadyCap | Bizgistics | 4UZA4FF40XCA49809 | $11,750.00 |
|  |  |  | **Total** | **$341,250.00** |

21

## EXHIBIT D

[Form to be attached to Confirmation Order and mailed to all parties in interest]

**ANY INTERESTED PARTY WISHING TO OPT OUT OF THIS PROVISION SHALL BE REQUIRED TO EXECUTE AND RETURN THIS FORM WITHIN 30 DAYS OF THE ENTRY OF THE COURT'S ORDER CONFIRMING THE DEBTOR'S PLAN.**

As a party in interest, you are entitled to opt out of the limited exculpation provision in section 9.2 of the Plan, restated as follows:

**9.2 THE DEBTOR'S TWO OFFICERS (SUE AND DARRELL GILES) AND ITS GENERAL BANKRUPTCY COUNSEL, UNDERWOOD MURRAY, P.A. (ACTING IN SUCH PROFESSIONAL CAPACITY) (COLLECTIVELY, THE "*EXCULPATED PARTIES*") SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON OR ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO THE LIMITED EVENTS OF DRAFTING, NEGOTIATIONS AND CONFIRMATION OF THE PLAN; PROVIDED, HOWEVER, THIS EXCULPATION FROM LIABILITY PROVISION SHALL NOT BE APPLICABLE TO ANY LIABILITY FOUND BY A COURT OF COMPETENT JURISDICTION TO HAVE RESULTED FROM FRAUD OR THE WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF ANY SUCH PARTY. ANY SUCH CLAIMS SHALL BE GOVERNED BY THE STANDARD OF CARE OTHERWISE APPLICABLE TO THE STANDARD OF NEGLIGENCE CLAIMS OUTSIDE OF BANKRUPTCY. THE RIGHTS GRANTED UNDER THIS ARTICLE 9.2 ARE CUMULATIVE WITH (AND NOT RESTRICTIVE OF) ANY AND ALL RIGHTS, REMEDIES, AND BENEFITS THAT THE EXCULPATED PARTIES HAVE OR OBTAIN PURSUANT TO ANY PROVISION OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW.**

If you choose to opt out of the exculpation and not be bound by section 9.2, you must indicate so by checking the appropriate box below:

[  ]    I opt out of this provision as it relates to the Debtor's two officers, Sue and Darrell Giles, individually.

[  ]    I opt out of this this provision as it relates to the Debtor's Bankruptcy Counsel, Underwood Murray, P.A.

[  ]    I opt out of this provision as it relates to both the Debtor's two officers, Sue and Darrell Giles, individually, and to the Debtor's general bankruptcy counsel, Underwood Murray, P.A.

Name of Party in Interest: _____

Signature of Party in Interest: _____

**This form must be delivered either by U.S. Mail or email to counsel at the address below such that it is received within 30 days of the order confirming the Debtor's Plan.**

**Megan W. Murray**
**100 N Tampa, Suite 2325, Tampa, FL 33602**
**mmurray@underwoodmurray.com**