UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re

Bizgistics, LLC,

Case No. 3:21-bk-02197-RCT
Chapter 11

Debtor.
_____/

**<u>READYCAP LENDING, LLC'S RESPONSE TO DEBTOR'S OBJECTION TO CLAIM 3 AND MOTION TO VALUE AND DETERMINE SECURED STATUS OF READYCAP LENDING, LLC'S CLAIM</u>**

ReadyCap Lending, LLC (Movant)   responds to Bizgistics Objection to Claim and Motion to Value and Determine Secured Status and states as follows:

**<u>Preliminary Statement</u>**

ReadyCap is a lender which provides loan that are backed by the Small Business Administration.  In 2020, ReadyCap was approached by Darrell and Sue Giles, who wanted a loan to enable them to purchase a business that provided last mile delivery for Federal Express. ReadyCap loaned $1.4 million to Bizgistics, the company that the Giles formed to purchase the old business.  Bizgistics obtained a security agreement consisting of all assets of the company from Bizgistics to guarantee the loan and received personal guarantees from both Darrell and Susan Giles.

ReadyCap filed a proof of claim in this case. While the claim was filed late, the lateness was excused because Bizgistics was a secured claim.

The security interest does extend to the Debtor's commercial claim since it is an asset of Bizgistics covered by the security interest. Additionally, a third party hold $150,000.00 of the purchase price of the business that was paid to Banner Delivery, Inc.. The money was held back to compensate Bizgistics for any failures of Banner to comply with the terms of the contract. Any damages suffered by Bizgistics due to Banner's brief would enable Bizgistics to receive an amount of the holdback equal to the damages. Any return of the purchase price would be an asset of Bizgistics which would be covered by the ReadyCap security agreement.

### Facts

ReadyCap loaned the Debtor $1.484 million to purchase Banner Delivery, Inc. from Gareth Banner on December 15, 2020. The loan documents, AUTHORIZATION (SBA 7(A) GUARANTEED LOAN) required in Section H. **COLLATERAL CONDITIONS** that ReadyCap have a First Perfected Security interest, subject to no other liens in the following personal property (including any proceeds and products), whether now owned or later acquired wherever located:

Equipment; Inventory; Accounts; Chattel Pater; General Intangibles.

The term general intangibles has a broad definition and the term can generally be used to describe any asset. The term can specifically be used to refer to potential legal claim. Bizgistics has contended that Gareth Banner and Banner Delivery mislead it as to the profitability of the business during the sale process. It contends that it suffered damages as a result of the

misrepresentations. Therefore, it contends that the sale was fraudulent. Theoretically, that could result in damages greater than the loan amount. ReadyCap contends that it is entitled to claim assets from that claim.

Likewise, Bisgistics and Banner Delivery agreed to a hold back of $150,000.00 to compensation Bizgistics if Banner Delivery failed to perform under the contract. Since the monies that paid for the holdback came from the loan proceeds, ReadyCap is entitled to recover a part of its loan after the default on the loan by Bizgistics. Alternatively, the holdback money could be classified as accounts due and owing to Bizgistics. ReadyCap has a lien on any accounts of Bizgistics which would include this money.

ReadyCap asserts that its loan documents specifically show that ReadyCap is entitled to a security interest in the debtor's assets.

## ARGUMENT

### I.     ReadyCap does have a security interest in Bizgistic's assets

Debtor has argued that Bizgistics does not have a security interest in its assets. However, that position is belied by the schedules that the Debtor filed on September 27, 2022. In the schedule, the Debtor answers the section of 2.1 which asks Debtor to "Describe debtor's property that is subject to a lien." Debtor filled in Vehicles; Accounts; All Assets." Clearly the term all assets indicates that the Debtor is acknowledging ReadyCap's secured claim. Therefore, Debtor should be estopped from denying the information that it provided in its petition.

Furthermore, the Notice of Chapter 11 Bankruptcy Case that was provided to all creditors states, "Secured creditors retain right in their collateral regardless of whether they file a proof of claim." Therefore, even if the proof of claim is stricken, ReadyCap still retains its rights to the

collateral. Furthermore, in the agreements that were reached with the Debtor during the course of the liquidation of the Debtor, the Debtor acknowledged that ReadyCap was a secured creditor and entitled to the proceeds from the sale of its assets. Since that was a provision in the prior agreements, Bizgistics should not be allowed to try and void the terms of its agreements with ReadyCap.

## II. ReadyCap's security interest in the holdback money and the Banner claims are valid against the Debtor

Debtor appears to be arguing that ReadyCap does not have a perfected security interest in the Debtor's property and that it is not entitled to assert claims against them. It contends that the holdback and the causes of action are not perfected because they are not specifically listed in the UCC filings and because ReadyCap does not have possession of the cause of action. Such a position is not valid.

The security interest that a creditor has against a debtor is based on the contractual agreement between the parties. That agreement controls the relationship between the parties. Bizgistics has no standing to dispute the contractual agreement that it agreed to when it took out the loan. The perfection of the security interest would protect the creditor against claims of third parties, but it has no effect on the claim of the lender against the debtor.

An appellate court dealt with this issue in a probate situation. In *Finizio v. Shubow*, 557 So.2d 640 (4th DCA 1990), a party granted a security interest in stock to a judgment creditor to guarantee the judgment. After the judgment debtor died, his estate objected to the validity of the security interest because it was not perfected. The court cited to Section 9-203(1) of the Florida Uniform Commercial Code to hold that the security interest was still valid, even if it was not

perfected. "[A]a enforceable security interest can be created without possession if there is a written security agreement signed by the debtor." *Id.* at 641.

### III. ReadyCap did not waive its right to seek unsecured distributions

Debtor argues that because ReadyCap filed its claim as a secured claim that it is not entitled to any distribution of unsecured assets because it waived its right by not filing a proof of claim as an unsecured creditor. Such a position is not supported by the bankruptcy code. Section 506 (a) (1) of the code states that the claim is a "secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such allowed claim." Therefore, the creditor cannot determine the amount of its secured claim until such time as the assets are liquidated.

In the present case, the Debtor listed the value of all of its machinery, equipment, and vehicles at a value of $1,061.00. Yet the actual realization of the machinery, equipment and vehicles has netted out around a third of that. Debtor wants to penalize the creditor for accepting the Debtor's good faith value of its assets as reasonable. In reality, ReadyCap could not make a determination of the value of the collateral until after the assets are liquidated.

Additionally, the Debtor did not list the value of the causes of action that it contends that it has against Gareth Banner and Banner Delivery. Since no lawsuit has yet been filed and no information about any of the evidence in the case has been shared with creditors, ReadyCap and other creditors cannot possibly determine the secured amount of their claim versus the unsecured.

It is generally accepted under bankruptcy law that 11 U.S.C. Section 56 (a) (1) bifurcates a secured creditor's allowed claim into secured and unsecured portions based on the underlying

collateral's value. *In re Brown*, 746 F.3d 1236, 1239 (11th Cir. 2014). ReadyCap would assert that the court cannot determine the validity of the secured claim until it determines whether the security interest extends to the causes of action. Even after that determination, the Court must wait to see how much is recovered from the causes of action. Only then can the court determine the secured amount of the claim as set out in Section 56 (a) (1).

Debtor cites case law to argue that ReadyCap is bound by its proof of claim. However, the only case cited by the Debtor involves a creditor who filed an unsecured claim and then later tried to claim its was entitled to secured status. In that case the creditor was bound by its election to file as an unsecured creditor. ReadyCap is unaware of any cases that state that a secured creditor cannot assert a status as an unsecured creditor when the secured property is insufficient to satisfy its claim. Debtor did not file any claims that supports that position. Generally, if the secured assets are insufficient to satisfy the claims, the balance of the debt is treated like a general unsecured claim with equal priority with the other unsecured creditors.

**IV.    ReadyCap's security interest in 'general intangibles" is sufficient to meet the requirements of the Florida UCC.**

Bizgistics argues to the court that the description of the collateral as general intangibles does not meet the requirements of the Florida UCC. Such is not the case. The Florida UCC does not require exact specificity. Fla. Stat. 679.1081 (1) states "a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described. Section (2) reads "a description of collateral reasonably identifies the collateral if it identifies the collateral by" (b) Category. Here the collateral is described as general intangibles which is an accepted category of asset under the UCC. When considered in light of the relationship between the parties, they know what they meant by general intangibles. The parties describe property as

including any proceeds and then breaks down the description into identifiable categories such as equipment, inventory, accounts instruments, chattel paper, general intangibles. In fact, the Florida UCC in Section 679.1021 (pp) "General intangible" means any personal property, including things in action..." Things in action clearly refer to litigation claims. While the definition excludes "commercial tort claims," that exception is very specific. The claimant has to be an organization or an individual. The claim must arise in torts. Finally, while the phrase is not clearly defined, the statute states that the claim must come in the course of the business or profession. That is an interesting choice of words, and Plaintiff has not found any clear definition of that in the case law. The term "in the course of business" seems to imply that the claim must arise out of the operation of the business. Here Bizgistics claim does not arise out of its operation of its business. Instead, it arose out of the acquisition of the business. If the claim arose from actions that occurred prior to the purchase of the business, does it qualify as in the course of the business? Debtor has not yet brought any cause of action against Banner Delivery so we do not know the cause of action that it will allege or the extent or the nature of any recovery. The cause of action may well arise in a breach of contract action which would not be a commercial tort.

Again, it should be pointed out that Bizgistics is relying on the Florida UCC to escape the effect of its own contractual obligations. The parties are free to contract anyway they want to. Here the only purpose of the definitions in the UCC is that the statute protects the rights of third parties with perfected security interests if there are competing cliams. Here the Debtor is trying to use a third party's defenses to allow it to escape its contractual obligations.

In *Sunz Ins. Co. v. Payroll Mgmt.* 630 B. R. 627 (N. Dist. FL 2021), the bankruptcy court faced competing claims for proceeds received from BP as a result of an oil spill in the Gulf of

Mexico. One question the court faced was whether the term "intangible property" was a sufficient description of an asset so as to be included as a general intangible covered by the security agreement. The court recognized that the term general intangibles was UCC specific whereas intangible property was not UCC specific. Again, this claim is only between the Debtor and ReadyCap. They know the terms of their agreement.. We do not have a third party who is asserting a competing security agreement. Here the Debtor is only arguing that ReadyCap should not get its security agreement against it so that it can then claim any excess unsecured debts for itself and not for the benefit of its major creditor.

As stated above the creditor is not attempting to perform an end run around the description requirement of Section 679.1081. The statute specifically mentions and defines general intangibles, and the case law has said that the term is generally specific enough to grant a security interest to a party that has a security interest in general intangibles. Although the Debtor claims that it never intended to grant a security interest in a commercial tort claim (assuming the claims against Banner meet that definition), it has produced no evidence to support that assertion. Likewise, ReadyCap would equally assert that it does have a security interest in any commercial tort claim as well as any commercial cause of action for breach of contract. Under its reasoning, ReadyCap is entitled to a security interest in the cause of action and can asset it in this case.

## V.     Conclusion

For the reasons stated above, ReadyCap requests that the Court allow its proof of claim against the Debtor, allow to have a secured claim against the Debtor, allow any part of the claim not covered by its security to be treated as an unsecured claim. Alternatively, the Court should grant an evidentiary hearing and let the parties testify regarding their understandings of their agreements.

This 23rd day of April, 2022.

                                        s/ Clive N. Morgan
                                        Clive N. Morgan
                                        Florida Bar No. 357855
                                        Busch Mills & Slomka, LLP
                                        6712 Atlantic Blvd.
                                        Jacksonville, FL 32211
                                        Tel: (904) 508-0777
                                        Email: cmorgan@buschmills.com
                                        Attorney for ReadyCap

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the Response was served via the electronic filing using CM/ECF systems on all parties on this 23rd day of April, 2022.

                                        s/ Clive N. Morgan
                                        Clive N. Morgan
                                        Fla Bar No. 357855