**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                   Chapter 11

BIZGISTICS, INC.                                        Case No. 3:21-bk-02197-RCT

            Debtor.
_____/

**MOTION TO APPROVE ACCOUNTING RE:**
**TRANSFER OF ESTATE FUNDS TO SUBCHAPTER V TRUSTEE**

Debtor, Bizgistics, Inc. ("**Debtor**"), by and through undersigned counsel, files this Motion to Approve Accounting Re: Transfer of Estate Funds to Aaron Cohen, as Subchapter V Trustee ("**Motion**"), appointed as the disbursing agent pursuant to Section 7.4 of the Plan, pursuant to the Order Confirming Debtor's Modified Amended Subchapter V Plan of Liquidation (Doc. No. 186), and in support thereof states:

1.      On March 10, 2022, the Court confirmed the Debtor's Amended Plan of Liquidation (Doc. Nos. 181 and 186).

2.      The Plan provides that on the Effective Date and thereafter, all cash of the estate shall be remitted to the Subchapter V Trustee (or Plan Trustee if so appointed) who, as disbursing agent, shall have sole authority to disburse pursuant to Article 7 or subsequent Court Order. Plan, ¶ 5.3.

3.      Debtor's counsel is holding $305,000 of estate funds pursuant to the accounting on **Exhibit A**, and the sales documents attached hereto as **Composite Exhibit B**.

4.      ReadyCap refuses to confirm the accounting set forth on Exhibit A is accurate. Therefore, in an abundance of caution and to avoid any issues relating to counsel's trust account,

the Debtor seeks confirmation and approval as to the accounting of the trust funds and transfer of same to the Subchapter V Trustee.

WHEREFORE, the Debtor respectfully requests that the Court grant the Motion, confirm the accounting set forth in Exhibit A is accurate vis a vis the approved sales in Composite Exhibit B, upon which Debtor's counsel will transfer the funds to the Subchapter V Trustee.

Dated: May 9, 2022.

Respectfully submitted,

/s/ Megan W. Murray
Megan W. Murray
Florida Bar Number 0093922
Adam M. Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 N. Tampa St., Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
*Counsel to the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF, on May 9, 2022, including the United States Trustee, who is registered to receive electronic notices in this case.

/s/ Megan W. Murray
Megan W. Murray, Esq.
Florida Bar No. 0093922

# EXHIBIT A

**Accounting to Aaron Cohen, Subchapter V Trustee**

$  84,476.00   Receipt from buyer (I Nazir) for 9 Trucks) - 9 Trucks

$  42,000.00   Receipt from buyer (Brightstar Holdings, Rodney Hutson) - 3 Trucks (1st Half)

$    9,524.00   Receipt from Bizgistics for Nazir Truck Deposit - remaning amount for 9 trucks (1st Half)

$  94,000.00   Receipt from buyer (I Nazir) for 9 Trucks) - 9 Trucks (2nd Half)

$  41,500.00   Receipt from buyer (Brighstar Holdings, Rodney Hutson) - 3 trucks (2nd Half)

$  29,000.00   Receipt from Del McGee for purchase of 2 vehicles (full amount)

**$ 300,500.00   Will be sent to Aaron Cohen per Confirmation Order, Doc. No. 186**

# COMPOSITE EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    Chapter 11

BIZGISTICS, INC.                                          Case No. 3:21-bk-02197-RCT

                    Debtor

_____/

### EMERGENCY MOTION FOR SALE OF ASSETS FREE AND CLEAR
### OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Bizgistics, Inc. (the "**Debtor**") by and through undersigned counsel files this Motion for Sale of Assets Free and Clear of All Liens Claims and Encumbrances (the "**Sale Motion**") pursuant to 11 U.S.C. § 363 and in support thereof states as follows:

### Preliminary Statement

After failing to reach an agreement with FedEx that would permit the Debtor to continue to operate as a FedEx "last mile" contractor, the Debtor embarked on a robust sale process to maximize value to creditors through a sale of its vehicle fleet and related delivery equipment. As a result of the Debtor's efforts, the Debtor has determined that a hybrid private and auction sale of its delivery vehicles will maximize returns to creditors.

Accordingly, the Debtor requests approval to proceed with a private sale of certain vehicles to Rodney Hutson (the "**Hutson Vehicles**").

### Background

1.      Bizgistics, Inc. filed a voluntary petition for relief under subchapter V of Chapter 11 of title 11 of the United States Code on September 12, 2021 (the "**Petition Date**").

2.      On the Petition Date, the Debtor was operating as a service provider to FedEx Ground Package System, Inc. ("**FedEx**") under an Independent Service Provider agreement ("**ISP**

**Agreement**"). Under the ISP Agreement, the Debtor was responsible for the last mile delivery of packages for FedEx in a designated area of Jacksonville, Florida.

3.      The Debtor is the owner a fleet of vehicles (the "**Vehicles**"), which it utilizes to deliver packages.

4.      The Debtor's ISP Agreement with FedEx terminated by its own terms on October 15, 2021.

5.      After failing to reach an agreement with FedEx to continue to provide services under a new independent services provider agreement the Debtor undertook a robust marketing effort for its Vehicles. As a result of the Debtor's efforts, the Debtor has identified several buyers for many of its Vehicles, including Rodney Hutson ("Hutson"). Hutson has offered to purchase the Hutson Vehicles for an aggregate sale price of $83,500 (the "**Purchase Price**").[1] A description of the Hutson Vehicles is attached to this Motion as **Exhibit A**, and the terms of the proposed sale are contained in the sale agreement (the "**Sale Agreement**") attached as **Exhibit B** to this Motion. ReadyCap Lending, LLC ("**ReadyCap**") asserts a security interest in all of the Vehicles.

6.      As to the Vehicles for which the Debtor has not arranged to be sold, the Debtor intends to seek approval to sell such vehicles at a public auction.

The Sale Agreement[2]

7.      Pursuant to the Sale Agreement, Hutson has deposited with counsel for the Debtor a deposit equal to 50% of the Purchase Price (the "**Deposit**"). Upon approval of the Sale Agreement, the Deposit is to be applied towards the Purchase Price. If the sale is not consummated, other than due to fault of the Debtor, the Deposit shall be retained as liquidated

---

[1] Hutson has escrowed an amount equal to 50% of the Purchase price.
[2] For a full description of the terms of the Sale Agreement, please refer to Exhibit B. To the extent anything contained herein is inconsistent with the terms of the Sale Agreement attached as Exhibit B, the terms of Exhibit B shall control.

damages.  If the sale is not consummated due to fault of the Debtor or if the Court does not approve the sale, Hutson, shall be entitled to the return of the Deposit.

**<u>Basis for Relief</u>**

8.      Section 11 U.S.C. § 363(b)(1) of the Bankruptcy Code permits the Debtor to sell property of the estate, other than in the ordinary course of business after notice and a hearing.  A proposed sale under § 363(b)(1) is evaluated under the business judgment rule. *In re Diplomat Construction, Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012).  A sale should be approved where "the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith." *In re Phoenix Steel Corp.*, 82 B.R. 334, 336 (Bankr. D. Del. 1987).

9.      ReadyCap's lien will attach to the cash proceeds of any sale to the same extent and validity as such lien attached to the Vehicles prior to the sale.

10.      Section 11 U.S.C. § 363(f)(2) also permits any sale to be "free and clear" of any interest of an entity other than the estate in property if "such entity consents."

11.      Here, ReadyCap is the only entity other than the Debtor who asserts an interest in the Hutson Vehicles.  ReadyCap has consented to the sale as proposed, the Hutson Vehicles may be sold free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f)(2).

12.      Additionally, property may be sold "free and clear" of any interest of an entity other than the estate if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  11 U.S.C. § 363(f)(5)

13.      Here, to the extent it does not consent to the sale of the Vehicles, ReadyCap could be compelled to accept a monetary satisfaction in exchange for its lien. *See In re Gulf States Steel*

*Inc., of Alabama*, 285 B.R. 497, 508 (Bankr. N.D. Al. 2002) (The ability to cramdown a plan under the bankruptcy code satisfies the requirements of 11 U.S.C.§ 363(f)(5)).

14.     In exercising its business judgment, the Debtor believes that a sale of the Hutson Vehicles through a private sale will maximize the value of the vehicles for the Debtor's creditors. After the Debtor failed to reach an agreement with FedEx, the Vehicles are the Debtor's primary assets.  There is currently a nationwide shortage of the delivery vehicles of the type owned by the Debtor, and such vehicles are in high demand. The Debtor, in its business judgment, believes that a private sale of the Hutson Vehicles now in the midst of "peak" delivery season will allow those Hutson Vehicles to be sold at a premium, maximizing their value to the estate and its creditors.

15.     The Debtor also seeks authority to take all actions, and execute all documents, that the Debtor deems reasonable, necessary, and/or desirable to effectuate the relief requested herein in its business judgment.

16.     Furthermore, the Debtor seeks to assert a surcharge equal to 10% of the Purchase Price (the "**Surcharge**") for the efforts incurred by the Debtor's  professionals in finalizing the sale of the Hutson Vehicles for the benefit of the Debtor's creditors.  Surcharging the collateral of a secured creditor is appropriate to permit "the [debtor] to recover these amounts from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor." *In re Smith Intern. Enterprises, Inc.*, 325 B.R. 450, 453 (Bankr. M.D. Fla. 2005) (internal citations and quotations omitted).  The intent of this provision of the Bankruptcy Code is to "prevent a windfall to a secured creditor at the expense of the estate." *Id.* (internal citations and quotations omitted)

17.     The Debtor was ready to auction all of the Vehicles much earlier, and had retained an auction proposal with Moecker, had filed an auction motion and was proceeding to auction the Vehicles as early as November 15, 2021 (see Doc. Nos. 46 and 47).

18.     At ReadyCap's request the Debtor pulled the Application and the Debtor and ReadyCap collectively agreed to withdraw the Auction Motion to allow ReadyCap to utilize its own auctioneer, which turned out to be more expensive and less viable.

19.     Since this time, the Debtor has undertaken extensive efforts to find private buyers to maximize the sale process, and provide certainty to its creditors. It is notable that the Debtor's principals, who executed personal guarantees in favor of ReadyCap, believe the sales proposed herein maximize the value of the Vehicles.

20.     Through the efforts of the Debtor and its professionals ReadyCap has obtained the benefit of the potential receipt of hundreds of thousands of dollars without the associated expense of auctioning the Vehicles, which was estimated to equal 15% of the Purchase Price, plus costs. Therefore, the assertion of the Surcharge for the time and expense the Debtor and its professionals have undertaken is appropriate and in line with the policy underlying § 506(c).

21.     Given the holiday season, the Debtor request that the Court waive the 14-day stay under 6004(h).

### Notice

22.     A copy of this Sale Motion is being served on all creditors and parties in interest. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Sale Motion is adequate and sufficient and complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

WHEREFORE, the Debtor respectfully request that the Court: (1) grant the Sale Motion; (2) approve a sale of the Hutson Vehicles pursuant to the Sale Agreement attached as Exhibit B; (3) waive the 14-day stay requirement of Federal Rules of Bankruptcy 6004(h); (4) approve the Surcharge equal to 10% of the Purchase Price; and (5) grant all such further relief the Court deems to be just and proper.

Dated: December 8, 2021.

Respectfully submitted,

*/s/ Megan W. Murray*
Megan W. Murray, Esq.
Florida Bar No: 0093922
Adam Gilbert, Esq.
Florida Bar No: 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 North Tampa St., Suite 2325
Tampa, FL  33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email:  mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically through the Court's CM/ECF system on December 8, 2021, which provides notice to all counsel of record by electronic means and via First Class U.S. Mail to those parties on the attached mailing matrix.

*/s/ Megan W. Murray*
Megan W. Murray, Esq.

**Exhibit A**

| VIN | Buyer | Price |
|---|---|---|
| 4UZAARDU18CZ58931 | HUTSON | $20,000.00 |
| 4UZAARDU9HCJC2408 | HUTSON | $30,000.00 |
| 4UZAARDU7HCJC2407 | HUTSON | $33,500.00 |

# EXHIBIT B



This **CONTRACT FOR PURCHASE OF VEHICLES** (this "**Agreement**") is made as of 11/9/2021, 2021 (the "Effective Date"), between **BIZGISTICS, INC** ("**Seller**"), and RODNEY HUTSON
_____, ("**Buyer**"). Seller and Buyer may be referred to separately as "**Party**" and collectively as "**Parties**" in this contract ("**Agreement**").

1.    **Court Approval**: The Parties' respective obligations to purchase and sell the Vehicle(s) pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing. Title to the Vehicle(s) shall be free and clear of all liens.

2.    **Sale and Purchase of Vehicles**: Subject to the terms and conditions of this Agreement and the Sale Order (defined below), and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all Seller's right, title, and **interest** in the Vehicles described in Exhibit A. The sale of the Vehicles is conducted on an "AS IS, WHERE IS" basis, with no warranties as to condition whatsoever.

3.    **Purchase Price**: The aggregate purchase price for the Vehicles shall be $ 83,500.00 (the "**Purchase Price**"), which is equal to the aggregate value of the price of each individual Vehicle as listed on Exhibit A.

4.    **Deposit**: Prior to, and as a condition to Seller's execution of this Agreement, Buyer shall have deposited with Underwood Murray P.A. ("**Escrow Agent**") a deposit equal to 50% of the Purchase Price (the "**Deposit**"). The Deposit shall be held in Escrow Agent's trust account, without interest, pending final approval of the Agreement by the Bankruptcy Court and applied to the Purchase Price at Closing (defined below).

5.    **Default Provisions:** If Closing fails to occur because this Agreement is not approved by the Bankruptcy Court or Seller is unable or unwilling to close for any reason, the Deposit shall be returned to Buyer within 10 days of either entry of a Bankruptcy Court order denying the sale or 10 days of Seller's failure to close on the Closing Date as Buyer's sole and exclusive remedy and as liquidated damages for Seller's failure to close. **If Closing fails to occur as the result of Buyer's failure of performance, then the entire Deposit shall be retained by the Seller, at which time it shall become property of Seller.**

6.    **Court Approval:** Seller is required to obtain Bankruptcy Court approval of the sale of the Vehicles to the Buyer pursuant to this Agreement (the "**Sale Order**"). Seller shall file a motion seeking approval of this Agreement and entry of the Sale Order (the "**Sale Motion**") within 7 days of the execution of this Agreement.

7.    **Buyer Representations**:

a.  Buyer represents it has had an opportunity to inspect the Vehicles, no other due diligence is required, it has no contingencies to Closing or performing under this Agreement, other than approval by the Bankruptcy Court.

b.  Buyer represents this Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms as of the date Buyer executes this agreement.  Buyer acknowledges that this Agreement will not become binding on the Seller until Seller obtains a Sale Order.

c.  Buyer represent that neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will result in a violation by Buyer of any federal, state, local, or other law or governmental requirements of any kind, and any rules, regulations, permits, licenses, and orders promulgated thereunder.

8.    **Closing:** Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place within three (3) business days after the Sale Order becomes final and non-appealable (14 days after the Sale Order is entered) (the "**Closing Date**").

a. At the Closing, Seller shall transfer title to the Vehicles to Buyer in accordance with Florida law.

b. At the Closing, Buyer shall deliver to Seller the Purchase Price, less the Deposit.

c. After Closing, Buyer shall be solely responsible for arranging for the transportation and storage of the Vehicles and any and all associated costs (including, but not limited to, the procurement and payment for any necessary insurance).

9.    BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE VEHICLES ARE SO ASSIGNED, LEASED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

10.    Miscellaneous:

a. This Agreement may not be amended except by an instrument in writing signed by both Parties

b. This Agreement constitutes the entire agreement between the Parties and supersedes any prior agreements.

c. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original.

d. Each Party shall bear its own costs and expenses incurred in executing and consummating this Agreement.

e. Time is of the essence with respect to each Party's obligations hereunder.

f. If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Tampa, Florida are open for business.

g. This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida and each Party submits to the jurisdiction of the Bankruptcy Court to resolve any disputes arising out of this Agreement.

11.    **Jury Trial Waiver:** BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

**Escrow Agent Provisions:**

12.    If conflicting demands relating to this Agreement are made upon the Escrow Agent, the parties hereto expressly agree that the Escrow Agent may file suit to interplead the Deposit into the registry of the Bankruptcy Court and seek a declaratory relief as to the entitlement to funds. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the Parties under this Agreement, the Escrow Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

DocuSign Envelope ID: 5DA781CF-3E43-40CA-B2FB-32A7A2920CA1

13.      In no event shall Escrow Agent be liable for any act or omission under or in respect of this Agreement except where Escrow Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Escrow Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Escrow Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

14.      Seller and Buyer acknowledge that Escrow Agent may also serve as legal counsel to Seller in connection with this Agreement, and both Seller and Buyer consent to Escrow Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Escrow Agent shall be entitled to resign as Escrow Agent and to represent Seller in such dispute or adversity, and in such case shall deliver any and all funds held by Escrow Agent pursuant to this Agreement to a successor escrow agent designated by Seller and consented to by Lender, or approved by the Bankruptcy Court if no consent is obtained after commercially reasonable effort.

BUYER:      RODNEY HUTSON      (print)

Signature:   *RODNEY HUTSON*

Its:      CEO @ Brightstar Holdings Inc

Date:      11/9/2021

**SELLER:**      **Bizgistics, Inc.**

Signature:   *Darrell Giles*

Its:      CEO

Date:      11/10/2021

## Exhibit A

| Vehicle Make | Vehicle Year | Vehicle Model | VIN | Amount |
|---|---|---|---|---|
| FREIGHTLINER (823) | 2008 | WALK IN P1000 | 4UZAARDU18CZ58931 | $ 20,000.00 |
| FREIGHTLINER (858) | 2017 | BOX P1200 | 4UZAARDU9HCJC2408 | $ 30,000.00 |
| FREIGHTLINER (859) | 2017 | BOX P1200 | 4UZAARDU7HCJC2407 | $ 33,500.00 |

Label Matrix for local noticing
113A-3
Case 3:21-bk-02197-RCT
Middle District of Florida
Jacksonville
Wed Dec  8 16:18:11 EST 2021

Banner Delivery Inc.
c/o Gareth E. Banner
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Garth Banning
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Bizgistics, Inc.
925 Morgan Road
Rydal, PA 19046-3028

Roberta A. Colton
Tampa
, FL

Erik Johanson
ERIK JOHANSON PLLC
3414 Bay to Bay Blvd., #300
Tampa, FL 33629-7084

Thane Martin
Redcross, Martin & Associates, Inc.
1 Winding Drive, Monroe Bldg.
Suite 206
Philadelphia, PA 19131-2994

Megan W. Murray and Underwood Murray, P.A
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Old Republic Title Company of Oregon

ReadyCap Lending LLC
c/o BUSCH  MILLS & SLOMKA LLP
701 S. Olive Ave.
Suite 105
West Palm Beach, FL 33401-6197

AFLAC
153 Blanding Blvd
Suite 3
Orange Park, FL 32073-2613

AT&T Mobility
PO box 6463
Carol Stream, IL 60197-6463

American Express
PO Box 1270
Newark, NJ 07101-1270

American Homes 4 Rent
8936 Westerny Way
Suite 150
Jacksonville, FL 32256-0338

Banner Delivery, Inc.
c/o Daniel E. Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

(p)BENETRENDS  INC
P O BOX 824984
PHILADELPHIA PA 19182-4984

Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

Comcast
1701 JFK Blvd
Philadelphia, PA 19103-2899

Comcast Cable
4600 Touchton Road E
Building 200
Jacksonville, FL 32246-8299

Conservve
8936 Western Way
Suite 150
Jacksonville, FL 32256-0338

Darrell Giles
925 Morgan Road
Rydal, PA 19046-3028

Darrell Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Del McGee
1898 County Line Road
Madison, AL 35756-4925

EFS, LLC
PO Box 630038
Cincinnati, OH 45263-0038

Fed Ex Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA 15108-9373

FedEx Ground Package System, Inc.
100 FedEx Dr.
Coraopolis, PA 15108

Gareth Banner
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

Garth Banner
Banner Delivery, Inc.
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

GoMobileX
108 Paddock Place
Ponte Vedra Beach, FL 32082-3957

Indeed
6433 Champion Grandview Way
Building 1
Austin, TX 78750-8589

Kelchco CSP
1461 Webster St
Birmingham, MI 48009-7004

Kubicki Draper / Martin Blaya
9100 S. Dadeland Blvd.
Suite 1800
Miami, FL 33156-7817

Lytx, Inc.
9785 Towne Centre Drive
San Diego, CA 92121-1968

Lytx, Inc.
PO Box 849972
Los Angeles, CA 90084-9972

MD Repair and Services, Inc.
3372 Phillips Highway
Jacksonville, FL 32207-4312

MWMT Co.
7201 Frankford Ave.
Suite 1060
Philadelphia, PA 19135-1010

Marsh Sponsored Programs
PO BOX 14404
Des Moines, IA 50306-3404

Marsh Sponsored Programs
a division of Marsh USA Inc.
PO Box 14404
Des Moines, IA 50306-3404

Miller's Mobile Services, Inc.
4320 Gate Lane
Jacksonville, FL 32226-1938

New Benefits. Ltd.
PO Box 803475
Dallas, TX 75380-3475

Old Republic Title Company of Oregon
c/o Lara Fernandez
Trenam, Kemker, Scharf, Barkin et al.
101 East Kennedy Blvd., Ste 2700
Tampa, FL 33602-5150

PayChex
911 Panorama Trail S.
Rochester, NY 14625-2396

Pennsylvania Department of Revenue
PO Box 280427
Harrisburg, PA 17128-0427

Print Kreations
571 Berlin-Cross Keys Road
Sicklerville, NJ 08081-9550

Protective Insurance Company
PO Box 7099
Indianapolis, IN 46207-7099

ReadyCap Lending LLC
c/o Clive N. Morgan
BUSCH, MILLS & SLOMKA, LLP
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

ReadyCap Lending, LLC
200 Connell Drive,
Suite 4000
Berkeley Heights, NJ 07922-2805

ReadyCap Lending, LLC
c/o Christopher Y. Mills, Esq.
Busch Mills & Slomka, LLP
701 S. Olive Ave., Suite 105
West Palm Beach, FL 33401-6197

Siteground/SG Hosting Inc.
901 N. Pitt St.
Suite 325
Alexandria, VA 22314-1549

Southern Crane & Wrecker
3936 Phoenix Ave.
Jacksonville, FL 32296

Susan Giles
925
Morgan Road
Rydal, PA 19046-3028

Susan Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Terry L. Rhodes, Executive Director
Department of Highway Safety and Motor V
2900 Apalachee Parkway
Tallahassee, FL 32399-0500

VM Wholesale Tire
125 East 63rd Street
Jacksonville, FL 32208-4711

Westlake Financial Services
PO Box 54807
Los Angeles, CA 90054-0807

Aaron R. Cohen +
P.O. Box 4218
Jacksonville, FL 32201-4218

Clive N. Morgan +
Morgan Legal, P.A.
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Lara Roeske Fernandez +
Trenam Law
101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602-5150

Rhys P Leonard +
Trenam Kemker
101 East Kennedy Boulevard
Suite 2700
Tampa, FL 33602-5170

Scott E Bomkamp +
United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

Megan Wilson Murray +
Underwood Murray PA
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jake C Blanchard +
Blanchard Law, P.A.
1501 South Belcher Road, Unit 6B
Largo, FL 33771-4505

Daniel E Etlinger +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Adam M Gilbert +
Underwood Murray, P.A.
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jocelyn C. Smith +
Brick Business Law, P.A.
3413 W. Fletcher Avenue
Tampa, FL 33618-2813


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Benetrends, Inc.
1684 S. Broad St.
Suite 130
Lansdale, PA 19446-5422


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Susan Giles

(d)Erik Johanson +
Erik Johanson PLLC
3414 Bay to Bay Boulevard, #300
Tampa, FL 33629-7084

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
--------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case


End of Label Matrix
Mailable recipients     65
Bypassed recipients      3
Total                   68

ORDERED.

Dated:  December 15, 2021

Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                                Chapter 11

BIZGISTICS, INC.                                          Case No. 3:21-bk-02197-RCT

    Debtor.
_____/

**ORDER GRANTING IN PART DEBTOR'S**
**EMERGENCY MOTION FOR SALE OF ASSETS FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363**
(Doc. No. 88)

THIS MATTER came before the Court for a hearing on December 10, 2021 at 10:00 a.m.

(the "**Hearing**") upon Bizgistics, Inc.'s (the "**Debtor**") Emergency Motion for Sale of Assets Free

and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363 (Doc. No. 88)

("**Motion**").  Based upon the Motion, the representation and arguments of counsel at the Hearing,

the Declaration of Darrell Giles, the proffer of testimony of Darrell Giles, and the consent of

ReadyCap Lending, LLC ("**ReadyCap**") to the sale price, the Court makes the following findings of fact:

 a) This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § § 1408 and 1409.  The statutory predicates for the relief requested in the Motion are §§ 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure.

 b) The Debtor is the owner of several delivery vehicles.  A description of the vehicles that are being sold pursuant to this Order (the "**Hutson Vehicles**") is attached as **Exhibit A** to this Order.

 c) The Debtor filed the Motion on December 8, 2021 and notice of the Hearing was timely served on all parties to whom notice was required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.  No objections to the Motion were filed.  At the Hearing, ReadyCap announced its opposition to the surcharge requested in the Motion (the "**Surcharge**") but otherwise consented to the sale of the Hutson Vehicles as set forth in the Motion.

 d) Other than the Debtor, ReadyCap is the only other party who asserts an interest in the Hutson Vehicles.

 e) At the Hearing, the Debtor sought approval of a private sale of the Vehicles to Rodney Hutson and/or his assignee, (collectively "**Hutson**") pursuant to the contract attached as Exhibit B to the Motion (the "**Hutson Contract**"), incorporated herein by reference in its entirety.[1]

---

[1] To the extent there is a conflict between the Hutson Contract and this Order, this Order shall control.

f) As demonstrated by (i) the testimony and other evidence proffered or adduced at the Hearing and (ii) representations of counsel made on the record at the Hearing, the Court finds that:

i. The Debtor advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtor's business judgment pursuant to § 363 of the Bankruptcy Code to sell the Hutson Vehicles to Hutson in accordance with the terms of the Hutson Contract.

ii. The sale of the Hutson Vehicles is an arms-length transaction, for fair value, and is in the best interests of the estate and its creditors.

iii. The Debtor and Hutson have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation, and execution of the Hutson Contract. Neither the Debtor nor Hutson have engaged in any conduct that would cause or permit the Hutson Contract to be avoided under § 363(n) of the Bankruptcy Code.

iv. The Debtor has articulated good and sufficient business justification for the sale of the Hutson Vehicles pursuant to § 363(f) of the Bankruptcy Code.

v. The sale of the Hutson Vehicles to Hutson satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code.

vi. The consideration provided by Hutson pursuant to the Hutson Contract (i) is fair and reasonable and (ii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Conveyance Act and § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the State of Florida.

vii.     Approval of the Motion and of the Hutson Contract is in the best interests of the Debtor, its estate, its creditors, and all parties in interest.

viii.    The transfer of the Hutson Vehicles to Hutson will be a legal, valid, and effective transfer and will vest Hutson (or his designee) with all right title, and interest of the Debtor in the Hutson Vehicles free and clear of all liens, claims, encumbrances, defenses (including without limitation, rights of setoff and recoupment) and interest, known or unknown whether pre-petition or post-petition, secured or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, mature or unmatured, legal or equitable.

ix.     Neither the sale, transfer, or disposition of the Hutson Vehicles pursuant to the Hutson Contract and/or any further amendments thereto will subject Hutson to any liability for claims, obligations, or encumbrances, unless such liability is provided for by the Hutson Contract.

Accordingly it is,

**ORDERED THAT**:

1.     The Motion is **GRANTED IN PART** as set forth herein:

2.     The findings of fact set forth in this Order are ratified and findings of this Court and are incorporated herein.  To the extent many of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are hereby confirmed as conclusions of law.

3.     Notice of the Hearing was adequate, fair, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Federal Rules of Bankruptcy Procedure 2002 and 6004.  The fourteen day stay provided for by Federal Rule of Bankruptcy Procedure

6004(h) is hereby **WAIVED**.

4.      The form and substance of the Hutson Contract and the transaction contemplated thereby, and by this Order, are hereby approved in all respects.  After entry of this Order the Debtor and Hutson may enter into any non-material amendment or modification to the Contract that is not adverse to the Debtor's estate without the need for further notice and hearing.

5.      The Debtor is authorized and directed to execute all documents required to consummate the sale to Hutson.  No further consents or approvals are required for the Debtor to consummate the sale or the transactions contemplated thereby.

6.      At the Closing, Hutson shall pay by wire transfer of immediately available funds, the Purchase Price, less the Deposit to the Escrow Agent, and Hutson shall authorize the release of the Deposit by Escrow Agent.

7.      The lien of ReadyCap shall attach to only those sale proceeds directly traceable to the sale of the Hutson Vehicles, to the same extent, validity and priority as such lien existed prior to the sale of the Hutson Vehicles.  In no event shall any lien of ReadyCap attach to funds held by Escrow Agent that are not directly and indisputably traceable to the sale of the Hutson Vehicles.

8.      Hutson is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all encumbrances in or on the Hutson Vehicles of any kind or nature whatsoever.

9.      The Debtor and Hutson have acted in good faith, the terms and conditions of the Hutson Contract are fair and reasonable and negotiated in good faith, Hutson is an arm's length purchaser and entitled to the benefits and protections provided by 11 U.S.C. § 363(m).

10.     The Debtor's request for a Surcharge is hereby **DENIED WITHOUT PREJUDICE.** The Debtor may re-file a separate motion seeking to assert a Surcharge for the sale of the Hutson Vehicles.

11.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including those matters concerning the closing of the sale contemplated by this Order.

### ###

[Megan W. Murray is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.]

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:                                                          Chapter 11

BIZGISTICS, INC.                                    Case No. 3:21-bk-02197-RCT

                    Debtor
_____/

**EMERGENCY MOTION FOR (I) SALE OF ASSETS**
**FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**
**PURSUANT TO 11 U.S.C. § 363 AND (II) APPROVAL OF POST PETITION**
**FINANCING PURSUANT TO 11 U.S.C. § 364 EFFECTIVE AS OF OCTOBER 22, 2021**

Bizgistics, Inc. (the "**Debtor**") by and through undersigned counsel files this Motion for Sale of Assets Free and Clear of All Liens Claims and Encumbrances Pursuant to 11 U.S.C. § 363 and (II) Approval of Post-Petition Financing Pursuant to 11 U.S.C. § 364 Effective as of October 1, 2021 (the "**Sale Motion**") pursuant to 11 U.S.C. §§ 363 and 364 and in support thereof states as follows:

**Preliminary Statement**

After failing to reach an agreement with FedEx that would permit the Debtor to continue to operate as a FedEx "last mile" contractor, the Debtor embarked on a robust sale process to maximize value to creditors through a sale of its vehicle fleet and related delivery equipment.  As a result of the Debtor's efforts, the Debtor has determined that a hybrid private and auction sale of its delivery vehicles will maximize returns to creditors.

Additionally, the Debtor requests retroactive approval for debt incurred by the Debtor for the payment of previously approved employee wages as an administrative expense, to be applied to the Deposit for the Nazir Vehicles.

Accordingly, the Debtor requests approval to proceed with a private sale of certain vehicles to Ifran Nazir (the "**Nazir Vehicles**").

**Background**

A.    *The Sale*

1.    Bizgistics, Inc. filed a voluntary petition for relief under subchapter V of Chapter 11 of title 11 of the United States Code on September 12, 2021 (the "**Petition Date**").

2.    On the Petition Date, the Debtor was operating as a service provider to FedEx Ground Package System, Inc. ("**FedEx**") under an Independent Service Provider agreement ("**ISP Agreement**"). Under the ISP Agreement, the Debtor was responsible for the last mile delivery of packages for FedEx in a designated area of Jacksonville, Florida.

3.    The Debtor is the owner a fleet of vehicles (the "**Vehicles**"), which it utilizes to deliver packages.

4.    The Debtor's ISP Agreement with FedEx terminated by its own terms on October 15, 2021.

5.    After failing to reach an agreement with FedEx to continue to provide services under a new independent services provider agreement, the Debtor undertook a robust marketing effort for its Vehicles. As a result of the Debtor's efforts, the Debtor has identified several buyers for many of its Vehicles, including Ifran Nazir ("**Nazir**"). Nazir has offered to purchase the Nazir Vehicles for an aggregate sale price of $188,000 (the "**Purchase Price**").[1] A description of the Nazir Vehicles is attached to this Motion as **Exhibit A**, and the terms of the proposed sale are contained in the sale agreement (the "**Sale Agreement**") attached as **Exhibit B** to this Motion. ReadyCap Lending, LLC ("**ReadyCap**") asserts a security interest in all of the Vehicles.

---

[1] Nazir has escrowed an amount equal to 50% of the Purchase price (inclusive of amounts sought as an administrative expense herein).

2

6.      As to the Vehicles for which the Debtor has not arranged to be sold, the Debtor intends to seek approval to sell such vehicles at a public auction.

B.      *The Sale Agreement*[2]

7.      Pursuant to the Sale Agreement, Nazir has deposited $84,476.00 with counsel for the Debtor, which, with the amount sought as an administrative expense claim (detailed below), totals a deposit equal to 50% of the Purchase Price (the "**Deposit**").[3]  Upon approval of the Sale Agreement, the Deposit is to be applied towards the Purchase Price.  If the sale is not consummated, other than due to fault of the Debtor, the Deposit shall be retained as liquidated damages.  If the sale is not consummated due to fault of the Debtor or if the Court does not approve the sale, Nazir shall be entitled to the return of the Deposit (less those amounts sought as an administrative expense).

C.      *The Financing*

8.      On or around October 22, 2021 Newave, Inc. ("**Newave**"), which is owned by Nazir, advanced $9,524.00 on behalf of the Debtor for post-petition payment wages owed to 12 of the Debtor's former employees.  Newave advanced these funds to ensure that these 12 employees, who were scheduled to begin working for Newave, timely received all amounts owed to them by Bizgistics.

9.       The 12 employees were scheduled to be "transitioned" to Newave pursuant to an agreement between the Debtor and Newave after the Debtor's ISP Agreement had expired.  And such funds would have been transferred to these 12 employees regardless of any agreement

---

[2] For a full description of the terms of the Sale Agreement, please refer to Exhibit B.  To the extent anything contained herein is inconsistent with the terms of the Sale Agreement attached as Exhibit B, the terms of Exhibit B shall control.
[3] Inclusive of the amount requested as an administrative expense herein.

between Newave and the Debtor.  However, the timing of such transfer may have been slightly

delayed absent the agreement.

     10.    Rather than send these funds to the Debtor, Newave paid these 12 employees

directly on behalf of the Debtor. See Declaration of Darrel Giles[4].

## Basis for Relief

     *A.*     *Approval of Sale Pursuant to 11 U.S.C. § 363*

     11.    Section 11 U.S.C. § 363(b)(1) of the Bankruptcy Code permits the Debtor to sell

property of the estate, other than in the ordinary course of business after notice and a hearing.  A

proposed sale under § 363(b)(1) is evaluated under the business judgment rule. *In re Diplomat*

*Construction, Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012).  A sale should be approved where

"the proposed sale is fair and equitable, that there is a good business reason for completing the sale

and the transaction is in good faith." *In re Phoenix Steel Corp.*, 82 B.R. 334, 336 (Bankr. D. Del.

1987).

     12.    ReadyCap's lien will attach to the cash proceeds of any sale to the same extent and

validity as such lien attached to the Vehicles prior to the sale.

     13.    Section 11 U.S.C. § 363(f)(2) also permits any sale to be "free and clear" of any

interest of an entity other than the estate in property if "such entity consents."

     14.    Here, ReadyCap is the only entity other than the Debtor who asserts an interest in

the Nazir Vehicles.  ReadyCap has consented to the sale prices, so the Nazir Vehicles may be sold

free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f)(2).

---

[4] Filed contemporaneously with this Motion.

15.     Additionally, property may be sold "free and clear" of any interest of an entity other than the estate if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5)

16.     Here, to the extent it does not consent to the sale of the Vehicles, ReadyCap could be compelled to accept a monetary satisfaction in exchange for its asserted lien. *See In re Gulf States Steel Inc., of Alabama*, 285 B.R. 497, 508 (Bankr. N.D. Al. 2002) (The ability to cramdown a plan under the bankruptcy code satisfies the requirements of 11 U.S.C.§ 363(f)(5)).

17.     In exercising its business judgment, the Debtor believes that a sale of the Nazir Vehicles through a private sale will maximize the value of the vehicles for the Debtor's creditors. After the Debtor failed to reach an agreement with FedEx, the Vehicles are the Debtor's primary assets.  There is currently a nationwide shortage of the delivery vehicles of the type owned by the Debtor, and such vehicles are in high demand. The Debtor, in its business judgment, believes that a private sale of the Nazir Vehicles now in the midst of "peak" delivery season will allow those Nazir Vehicles to be sold at a premium, maximizing their value to the estate and its creditors.

18.     The Debtor also seeks authority to take all actions, and execute all documents, that the Debtor deems reasonable, necessary, and/or desirable to effectuate the relief requested herein in its business judgment.

19.     Furthermore, the Debtor seeks to assert a surcharge equal to 10% of the Purchase Price (the "**Surcharge**") for the efforts incurred by the Debtor's professionals in finalizing the sale of the Nazir Vehicles for the benefit of the Debtor's creditors.  Surcharging the collateral of a secured creditor is appropriate to permit "the [debtor] to recover these amounts from the collateral of a secured creditor to the extent that the expenditures benefit the secured creditor." *In re Smith Intern. Enterprises, Inc.*, 325 B.R. 450, 453 (Bankr. M.D. Fla. 2005) (internal citations and

5

quotations omitted). The intent of this provision of the Bankruptcy Code is to "prevent a windfall to a secured creditor at the expense of the estate." *Id.* (internal citations and quotations omitted)

20. The Debtor was ready to auction all of the Vehicles much earlier, and had retained an auction proposal with Moecker, had filed an auction motion and was proceeding to auction the Vehicles as early as November 15, 2021 (see Doc. Nos. 46 and 47).

21. At ReadyCap's request the Debtor pulled the Application and the Debtor and ReadyCap collectively agreed to withdraw the Auction Motion to allow ReadyCap to utilize its own auctioneer, which turned out to be more expensive and less viable.

22. Since this time, the Debtor has undertaken extensive efforts to find private buyers to maximize the sale process and provide certainty to its creditors. It is notable that the Debtor's principals, who executed personal guarantees in favor of ReadyCap, believe the sales proposed herein maximize the value of the Vehicles.

23. Through the efforts of the Debtor and its professionals ReadyCap has obtained the benefit of the potential receipt of hundreds of thousands of dollars without the associated expense of auctioning the Vehicles, which was estimated to equal 15% of the Purchase Price, plus costs. Therefore, the assertion of the Surcharge for the time and expense the Debtor and its professionals have undertaken is appropriate and in line with the policy underlying § 506(c).

24. Given the holiday season, the Debtor request that the Court waive the 14-day stay under 6004(h).

B.  *Approval of Post-Petition Financing Pursuant to 11 U.S.C. § 364(b)*

25. The Debtor may incur unsecured debt outside the ordinary course of business as an administrative expense after notice and a hearing. *See* 11 U.S.C. § 364(b). While approval for post-petition financing must generally be sought prior to the Debtor incurring debt, courts have

retroactively approved post-petition financing in unusual circumstances. *See In re Boss Litho, Inc.*,

2018 WL 6072329, *2 (9th Cir. B.A.P. Nov. 20, 2018) ("If a debtor has not obtained court approval

before incurring debt, the bankruptcy court may retroactively approve the transaction.").   To

determine whether retroactive approval of post-petition financing is appropriate, courts in the

Ninth Circuit consider:

> "(1) Whether the financing transactions benefits the bankruptcy estate; (2)
> whether the [debtor] has adequately explained its failure to seek prior
> authorization or otherwise established that it acted in good faith when it failed
> to seek prior authorization; (3) whether there is full compliance with the
> requirements of section 363[(b)]; and (4) whether the circumstances of the case
> present one of those rare situations in which retroactive authorization is
> appropriate."

> *Id.*

26.    Here, unusual circumstances exist warranting retroactive approval of the post-

petition advance from Newave.  First, the advancement of funds to meet a portion of the Debtor's

approved payroll obligations benefited the Debtor's estate.  If Newave had not advanced these

funds, the funds would have come out of the Debtor's operating account once the final settlement

payment from FedEx.  Second, the Debtor failed to seek prior approval for the post-petition

financing, as the Debtor's management mistakenly believed that approval was not required, as the

net benefit to creditors would be zero, and that payments for employee wages had already been

approved.  Third as of the filing of this Sale Motion, the Debtor has complied with the requirements

of § 364(b) by seeking notice and a hearing for the incurrence of post-petition debt as an

administrative expense.  Finally, the circumstances of this case present the rare situation where

retroactive relief is appropriate.  The Debtor has received a zero interest advance, which will have

no net effect on creditors because the advance was used to make a payroll payment that had

previously been approved by the Court. Furthermore, rather than request repayment from the Debtor, Newave has instead requested that the advance of $9,524.00 be applied to the Deposit.

27.     Therefore, unusual circumstances exist warranting the retroactive approval of the post-petition debt incurred by the Debtor pursuant to 11 U.S.C. § 364(b).

### Notice

28.     A copy of this Sale Motion is being served on all creditors and parties in interest. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Sale Motion is adequate and sufficient and complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

WHEREFORE, the Debtor respectfully request that the Court: (1) grant the Sale Motion; (2) approve a sale of the Nazir Vehicles pursuant to the Sale Agreement attached as Exhibit B; (3) waive the 14-day stay requirement of Federal Rules of Bankruptcy 6004(h); (4) approve the Surcharge equal to 10% of the Purchase Price; (5) retroactively approve the incurrence of $9,524.00 of post-petition debt (the "**Debt**") by the Debtor as an administrative expense; (6) allow the Debt to applied towards the Deposit in lieu of payment as an administrative expense; and (7) grant all such further relief the Court deems to be just and proper.

Dated: December 8, 2021.

Respectfully submitted,

*/s/ Megan W. Murray*
Megan W. Murray, Esq.
Florida Bar No: 0093922
Adam Gilbert, Esq.
Florida Bar No: 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 North Tampa St., Suite 2325
Tampa, FL  33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com

agilbert@underwoodmurray.com
*Counsel for the Debtor*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically through the Court's CM/ECF system on December 8, 2021, which provides notice to all counsel of record by electronic means and via First Class U.S. Mail to those parties on the attached mailing matrix.

*/s/ Megan W. Murray*
Megan W. Murray, Esq.

## Exhibit A

| VIN | Buyer | Price |
|---|---|---|
| 4UZAARDU1ECFK8413 | NAZIR | $22,500.00 |
| 4UZAARDU5HCJC2406 | NAZIR | $28,500.00 |
| 4UZAARDUXECFK8393 | NAZIR | $12,500.00 |
| 4UZAARDU8HCJE8059 | NAZIR | $30,000.00 |
| 1F65F5KY7D0A13678 | NAZIR | $22,000.00 |
| 1FC3E4KL6GDC13079 | NAZIR | $12,500.00 |
| 1FC3E4KL2GDC13080 | NAZIR | $7,500.00 |
| 4UZAARDU3HCHW8504 | NAZIR | $20,500.00 |
| 4UZAARDU0GCHH5792 | NAZIR | $32,000.00 |

# EXHIBIT B



This **CONTRACT FOR PURCHASE OF VEHICLES** (this "**Agreement**") is made as of 11/8/2021, 2021 (the "Effective Date"), between **BIZGISTICS, INC** ("**Seller**"), and _____ _____, ("**Buyer**"). Seller and Buyer may be referred to separately as "**Party**" and collectively as "**Parties**" in this contract ("**Agreement**").

1.      **Court Approval**: The Parties' respective obligations to purchase and sell the Vehicle(s) pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing. Title to the Vehicle(s) shall be free and clear of all liens.

2.      **Sale and Purchase of Vehicles**: Subject to the terms and conditions of this Agreement and the Sale Order (defined below), and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all Seller's right, title, and **interest** in the Vehicles described in Exhibit A. The sale of the Vehicles is conducted on an "AS IS, WHERE IS" basis, with no warranties as to condition whatsoever.

3.      **Purchase Price**: The aggregate purchase price for the Vehicles shall be $   188,000.00   (the "**Purchase Price**"), which is equal to the aggregate value of the price of each individual Vehicle as listed on Exhibit A.

4.      **Deposit**: Prior to, and as a condition to Seller's execution of this Agreement, Buyer shall have deposited with Underwood Murray P.A. ("**Escrow Agent**") a deposit equal to 50% of the Purchase Price (the "**Deposit**"). The Deposit shall be held in Escrow Agent's trust account, without interest, pending final approval of the Agreement by the Bankruptcy Court and applied to the Purchase Price at Closing (defined below).

5.      **Default Provisions:** If Closing fails to occur because this Agreement is not approved by the Bankruptcy Court or Seller is unable or unwilling to close for any reason, the Deposit shall be returned to Buyer within 10 days of either entry of a Bankruptcy Court order denying the sale or 10 days of Seller's failure to close on the Closing Date as Buyer's sole and exclusive remedy and as liquidated damages for Seller's failure to close. **If Closing fails to occur as the result of Buyer's failure of performance, then the entire Deposit shall be retained by the Seller, at which time it shall become property of Seller.**

6.      **Court Approval:** Seller is required to obtain Bankruptcy Court approval of the sale of the Vehicles to the Buyer pursuant to this Agreement (the "**Sale Order**"). Seller shall file a motion seeking approval of this Agreement and entry of the Sale Order (the "**Sale Motion**") within 7 days of the execution of this Agreement.

7.      **Buyer Representations**:

a.   Buyer represents it has had an opportunity to inspect the Vehicles, no other due diligence is required, it has no contingencies to Closing or performing under this Agreement, other than approval by the Bankruptcy Court.

b.   Buyer represents this Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms as of the date Buyer executes this agreement. Buyer acknowledges that this Agreement will not become binding on the Seller until Seller obtains a Sale Order.

c.   Buyer represent that neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will result in a violation by Buyer of any federal, state, local, or other law or governmental requirements of any kind, and any rules, regulations, permits, licenses, and orders promulgated thereunder.

8.      **Closing:** Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place within three (3) business days after the Sale Order becomes final and non-appealable (14 days after the Sale Order is entered) (the "**Closing Date**").

DocuSign Envelope ID: 3E237BBC-E420-407B-A462-1215E4895639

    a.  At the Closing, Seller shall transfer title to the Vehicles to Buyer in accordance with Florida law.

    b.  At the Closing, Buyer shall deliver to Seller the Purchase Price, less the Deposit.

    c.  After Closing, Buyer shall be solely responsible for arranging for the transportation and storage of the Vehicles and any and all associated costs (including, but not limited to, the procurement and payment for any necessary insurance).

9.    BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE VEHICLES ARE SO ASSIGNED, LEASED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

10.    Miscellaneous:

    a.  This Agreement may not be amended except by an instrument in writing signed by both Parties

    b.  This Agreement constitutes the entire agreement between the Parties and supersedes any prior agreements.

    c.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original.

    d.  Each Party shall bear its own costs and expenses incurred in executing and consummating this Agreement.

    e.  Time is of the essence with respect to each Party's obligations hereunder.

    f.  If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Tampa, Florida are open for business.

    g.  This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida and each Party submits to the jurisdiction of the Bankruptcy Court to resolve any disputes arising out of this Agreement.

11.    **Jury Trial Waiver:** BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

**Escrow Agent Provisions:**

12.    If conflicting demands relating to this Agreement are made upon the Escrow Agent, the parties hereto expressly agree that the Escrow Agent may file suit to interplead the Deposit into the registry of the Bankruptcy Court and seek a declaratory relief as to the entitlement to funds. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the Parties under this Agreement, the Escrow Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

DocuSign Envelope ID: 3E237BBC-E420-407B-A462-1215E4895639

13.     In no event shall Escrow Agent be liable for any act or omission under or in respect of this Agreement except where Escrow Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Escrow Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Escrow Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

14.     Seller and Buyer acknowledge that Escrow Agent may also serve as legal counsel to Seller in connection with this Agreement, and both Seller and Buyer consent to Escrow Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Escrow Agent shall be entitled to resign as Escrow Agent and to represent Seller in such dispute or adversity, and in such case shall deliver any and all funds held by Escrow Agent pursuant to this Agreement to a successor escrow agent designated by Seller and consented to by Lender, or approved by the Bankruptcy Court if no consent is obtained after commercially reasonable effort.

BUYER: _____Irfan Nazir_____ (print)

Signature: _Irfan Nazir_

Its: _Director Sales Ops_

Date: _11/8/2021_


**SELLER:**       **Bizgistics, Inc.**

Signature: _Darrell Giles_

Its: _CEO_

Date: _11/9/2021_

DocuSign Envelope ID: 3E237BBC-E420-407B-A462-1215E4895639

## EXHIBIT A

| Vehicle Make | Vehicle Year | Vehicle Model | VIN | Amount | |
|---|---|---|---|---|---|
| FORD (865) | 2013 | WALK IN P1000 | 1F65F5KY7D0A13678 | $ | 22,000.00 |
| FREIGHTLINER (846) | 2014 | WALK IN P1200 | 4UZAARDU1ECFK8413 | $ | 22,500.00 |
| FREIGHTLINER (847) | 2017 | BOX P1200 | 4UZAARDU5HCJC2406 | $ | 28,500.00 |
| FREIGHTLINER (841) | 2017 | WALK IN P1200 | 4UZAARDU8HCJE8059 | $ | 30,000.00 |
| FORD | 2016 | WALK IN P700 | 1FC3E4KL6GDC13079 | $ | 12,500.00 |
| FORD | 2016 | WALK IN P700 | 1FC3E4KL2GDC13080 | $ | 7,500.00 |
| FREIGHTLINER (864) | 2017 | BOX P1200 | 4UZAARDU3HCHW8504 | $ | 20,500.00 |
| FREIGHTLINER (853) | 2014 | WALK IN P1200 | 4UZAARDUXECFK8393 | $ | 12,500.00 |
| FREIGHTLINER | 2016 | WALK IN P1200 | 4UZAARDU0GCHH5792 | $ | 32,000.00 |

Label Matrix for local noticing
113A-3
Case 3:21-bk-02197-RCT
Middle District of Florida
Jacksonville
Wed Dec  8 16:18:11 EST 2021

Banner Delivery Inc.
c/o Gareth E. Banner
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Garth Banning
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Bizgistics, Inc.
925 Morgan Road
Rydal, PA 19046-3028

Roberta A. Colton
Tampa
, FL

Erik Johanson
ERIK JOHANSON PLLC
3414 Bay to Bay Blvd., #300
Tampa, FL 33629-7084

Thane Martin
Redcross, Martin & Associates, Inc.
1 Winding Drive, Monroe Bldg.
Suite 206
Philadelphia, PA 19131-2994

Megan W. Murray and Underwood Murray, P.A
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Old Republic Title Company of Oregon

ReadyCap Lending LLC
c/o BUSCH  MILLS & SLOMKA LLP
701 S. Olive Ave.
Suite 105
West Palm Beach, FL 33401-6197

AFLAC
153 Blanding Blvd
Suite 3
Orange Park, FL 32073-2613

AT&T Mobility
PO box 6463
Carol Stream, IL 60197-6463

American Express
PO Box 1270
Newark, NJ 07101-1270

American Homes 4 Rent
8936 Westerny Way
Suite 150
Jacksonville, FL 32256-0338

Banner Delivery, Inc.
c/o Daniel E. Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

(p)BENETRENDS  INC
P O BOX 824984
PHILADELPHIA PA 19182-4984

Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

Comcast
1701 JFK Blvd
Philadelphia, PA 19103-2899

Comcast Cable
4600 Touchton Road E
Building 200
Jacksonville, FL 32246-8299

Conservve
8936 Western Way
Suite 150
Jacksonville, FL 32256-0338

Darrell Giles
925 Morgan Road
Rydal, PA 19046-3028

Darrell Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Del McGee
1898 County Line Road
Madison, AL 35756-4925

EFS, LLC
PO Box 630038
Cincinnati, OH 45263-0038

Fed Ex Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA 15108-9373

FedEx Ground Package System, Inc.
100 FedEx Dr.
Coraopolis, PA 15108

Gareth Banner
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

Garth Banner
Banner Delivery, Inc.
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

GoMobileX
108 Paddock Place
Ponte Vedra Beach, FL 32082-3957

Indeed
6433 Champion Grandview Way
Building 1
Austin, TX 78750-8589

Kelchco CSP
1461 Webster St
Birmingham, MI 48009-7004

Kubicki Draper / Martin Blaya
9100 S. Dadeland Blvd.
Suite 1800
Miami, FL 33156-7817

Lytx, Inc.
9785 Towne Centre Drive
San Diego, CA 92121-1968

Lytx, Inc.
PO Box 849972
Los Angeles, CA 90084-9972

MD Repair and Services, Inc.
3372 Phillips Highway
Jacksonville, FL 32207-4312

MWMT Co.
7201 Frankford Ave.
Suite 1060
Philadelphia, PA 19135-1010

Marsh Sponsored Programs
PO BOX 14404
Des Moines, IA 50306-3404

Marsh Sponsored Programs
a division of Marsh USA Inc.
PO Box 14404
Des Moines, IA 50306-3404

Miller's Mobile Services, Inc.
4320 Gate Lane
Jacksonville, FL 32226-1938

New Benefits. Ltd.
PO Box 803475
Dallas, TX 75380-3475

Old Republic Title Company of Oregon
c/o Lara Fernandez
Trenam, Kemker, Scharf, Barkin et al.
101 East Kennedy Blvd., Ste 2700
Tampa, FL 33602-5150

PayChex
911 Panorama Trail S.
Rochester, NY 14625-2396

Pennsylvania Department of Revenue
PO Box 280427
Harrisburg, PA 17128-0427

Print Kreations
571 Berlin-Cross Keys Road
Sicklerville, NJ 08081-9550

Protective Insurance Company
PO Box 7099
Indianapolis, IN 46207-7099

ReadyCap Lending LLC
c/o Clive N. Morgan
BUSCH, MILLS & SLOMKA, LLP
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

ReadyCap Lending, LLC
200 Connell Drive,
Suite 4000
Berkeley Heights, NJ 07922-2805

ReadyCap Lending, LLC
c/o Christopher Y. Mills, Esq.
Busch Mills & Slomka, LLP
701 S. Olive Ave., Suite 105
West Palm Beach, FL 33401-6197

Siteground/SG Hosting Inc.
901 N. Pitt St.
Suite 325
Alexandria, VA 22314-1549

Southern Crane & Wrecker
3936 Phoenix Ave.
Jacksonville, FL 32296

Susan Giles
925
Morgan Road
Rydal, PA 19046-3028

Susan Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Terry L. Rhodes, Executive Director
Department of Highway Safety and Motor V
2900 Apalachee Parkway
Tallahassee, FL 32399-0500

VM Wholesale Tire
125 East 63rd Street
Jacksonville, FL 32208-4711

Westlake Financial Services
PO Box 54807
Los Angeles, CA 90054-0807

Aaron R. Cohen +
P.O. Box 4218
Jacksonville, FL 32201-4218

Clive N. Morgan +
Morgan Legal, P.A.
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Lara Roeske Fernandez +
Trenam Law
101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602-5150

Rhys P Leonard +
Trenam Kemker
101 East Kennedy Boulevard
Suite 2700
Tampa, FL 33602-5170

Scott E Bomkamp +
United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

Megan Wilson Murray +
Underwood Murray PA
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jake C Blanchard +
Blanchard Law, P.A.
1501 South Belcher Road, Unit 6B
Largo, FL 33771-4505

Daniel E Etlinger +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Adam M Gilbert +
Underwood Murray, P.A.
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jocelyn C. Smith +
Brick Business Law, P.A.
3413 W. Fletcher Avenue
Tampa, FL 33618-2813


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Benetrends, Inc.
1684 S. Broad St.
Suite 130
Lansdale, PA 19446-5422


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Susan Giles

(d)Erik Johanson +
Erik Johanson PLLC
3414 Bay to Bay Boulevard, #300
Tampa, FL 33629-7084

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
--------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case


End of Label Matrix
Mailable recipients    65
Bypassed recipients     3
Total                  68

ORDERED.

**Dated: December 15, 2021**

Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                    Chapter 11

BIZGISTICS, INC.                          Case No. 3:21-bk-02197-RCT

    Debtor.
_____/

**ORDER GRANTING IN PART DEBTOR'S**
**EMERGENCY MOTION FOR (I) SALE OF ASSETS FREE**
**AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**
**PURSUANT TO 11 U.S.C. § 363; AND (II) APPROVAL OF POST PETITION**
**FINANCING PURSUANT TO 11 U.S.C. § 364 EFFECTIVE AS OF OCTOBER 22, 2021**
(Doc. No. 89)

THIS MATTER came before the Court for a hearing on December 10, 2021 at 10:00 a.m.

(the "**Hearing**") upon Bizgistics, Inc.'s (the "**Debtor**") Emergency Motion for (I) Sale of Assets

Free and Clear of all Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363; and (II)

Approval of Post-Petition Financing Pursuant to 11 U.S.C. § 364 Effective as of October 22, 2021

(Doc. No. 89) ("**Motion**").  Based upon the Motion, the representation and arguments of counsel at the Hearing, the Declaration of Darrell Giles, the proffer of testimony of Darrell Giles, and the consent of ReadyCap Lending, LLC ("**ReadyCap**") to the sale price, the Court makes the following findings of fact:

a)      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § § 1408 and 1409.  The statutory predicates for the relief requested in the Motion are §§ 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure.

b)      The Debtor is the owner of several delivery vehicles.  A description of the vehicles that are being sold pursuant to this Order (the "**Nazir Vehicles**") is attached as **Exhibit A** to this Order.

c)      The Debtor filed the Motion on December 8, 2021 and notice of the Hearing was timely served on all parties to whom notice was required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.  No objections to the Motion were filed.  At the Hearing, ReadyCap announced its opposition to the surcharge requested in the Motion (the "**Surcharge**") but otherwise consented to the sale of the Nazir Vehicles as set forth in the Motion.

d)      Other than the Debtor, ReadyCap is the only other party who asserts an interest in the Nazir Vehicles.

e)      At the Hearing, the Debtor sought approval of a private sale of the Vehicles to Ifran Nazir and/or his assign, Newave. Inc., (collectively "**Nazir**") pursuant to the contract attached as

Exhibit B to the Motion (the "**Nazir Contract**"), incorporated herein by reference in its entirety.[1]

     f)      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Hearing and (ii) representations of counsel made on the record at the Hearing, the Court finds that:

     i.      The Debtor advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtor's business judgment pursuant to § 363 of the Bankruptcy Code to sell the Nazir Vehicles to Nazir in accordance with the terms of the Nazir Contract.

     ii.      The sale of the Nazir Vehicles is an arms-length transaction, for fair value, and is in the best interests of the estate and its creditors.

     iii.      The Debtor and Nazir have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation, and execution of the Nazir Contract.  Neither the Debtor nor Nazir have engaged in any conduct that would cause or permit the Nazir Contract to be avoided under § 363(n) of the Bankruptcy Code.

     iv.      The Debtor has articulated good and sufficient business justification for the sale of the Nazir Vehicles pursuant to § 363(f) of the Bankruptcy Code.

     v.      The sale of the Nazir Vehicles to Nazir satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code.

     vi.      The consideration provided by Nazir pursuant to the Nazir Contract (i) is fair and reasonable and (ii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Conveyance Act and § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the State of Florida.

---

[1] To the extent there is a conflict between the Nazir Contract and this Order, this Order shall control.

vii.     Approval of the Motion and of the Nazir Contract is in the best interests of the Debtor, its estate, its creditors, and all parties in interest.

viii.     The transfer of the Nazir Vehicles to Nazir will be a legal, valid, and effective transfer and will vest Nazir (or his designee) with all right title, and interest of the Debtor in the Nazir Vehicles free and clear of all liens, claims, encumbrances, defenses (including without limitation, rights of setoff and recoupment) and interest, known or unknown whether pre-petition or post-petition, secured or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, mature or unmatured, legal or equitable.

ix.     Neither the sale, transfer, or disposition of the Nazir Vehicles pursuant to the Nazir Contract and/or any further amendments thereto will subject Nazir to any liability for claims, obligations, or encumbrances, unless such liability is provided for by the Nazir Contract.

Accordingly it is,

**ORDERED THAT**:

1.     The Motion is **GRANTED IN PART** as set forth herein:

2.     The findings of fact set forth in this Order are ratified and findings of this Court and are incorporated herein.  To the extent many of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are hereby confirmed as conclusions of law.

3.     Notice of the Hearing was adequate, fair, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Federal Rules of Bankruptcy Procedure 2002 and 6004.  The fourteen day stay provided for by Federal Rule of Bankruptcy Procedure

6004(h) is hereby **WAIVED**.

4.      The form and substance of the Nazir Contract and the transaction contemplated thereby, and by this Order, are hereby approved in all respects.  After entry of this Order the Debtor and Nazir may enter into any non-material amendment or modification to the Contract that is not adverse to the Debtor's estate without the need for further notice and hearing.

5.      The Debtor is authorized and directed to execute all documents required to consummate the sale to Nazir.  No further consents or approvals are required for the Debtor to consummate the sale or the transactions contemplated thereby.

6.      At the Closing, Nazir shall pay by wire transfer of immediately available funds, the Purchase Price, less the Deposit to the Escrow Agent, and Nazir shall authorize the release of the Deposit by Escrow Agent.

7.      The Debtor's request for approval of an advance made by Newave, Inc. in the amount of $9,524.00 as an administrative expense (the "**Newave Administrative Expense**") is hereby **APPROVED** pursuant to 11 U.S.C. § 364(b) effective as of October 22, 2021.  Prior to Closing, the Debtor, with the consent of ReadyCap, is hereby authorized and directed to send $9,524.00 to the Escrow Agent from funds currently held by the Debtor in the Debtor-in-Possession account for application to the Purchase Price in full and complete satisfaction of the Newave Administrative Expense.

8.      The lien of ReadyCap shall attach to only those sale proceeds directly traceable to the sale of the Nazir Vehicles, to the same extent, validity and priority as such lien existed prior to the sale of the Nazir Vehicles.  In no event shall any lien of ReadyCap attach to funds held by Escrow Agent that are not directly and indisputably traceable to the sale of the Nazir Vehicles.

9.      Nazir is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all encumbrances in or on the Nazir Vehicles of any kind or nature whatsoever.

10.     The Debtor and Nazir have acted in good faith, the terms and conditions of the Nazir Contract are fair and reasonable and negotiated in good faith, Nazir is an arm's length purchaser and entitled to the benefits and protections provided by 11 U.S.C. § 363(m).

11.     The Debtor's request for a Surcharge is hereby **DENIED WITHOUT PREJUDICE.**  The Debtor may re-file a separate motion seeking to assert a Surcharge for the sale of the Nazir Vehicles.

12.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including those matters concerning the closing of the sale contemplated by this Order.

### 

[Megan W. Murray is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.]

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:                                                          Chapter 11

BIZGISTICS, INC.                                               Case No. 3:21-bk-02197-RCT

          Debtor

_____/

**EMERGENCY MOTION FOR SALE OF ASSETS FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363**

      Bizgistics, Inc. (the "**Debtor**") by and through undersigned counsel files this Motion for

Sale of Assets Free and Clear of All Liens Claims and Encumbrances (the "**Sale Motion**") pursuant

to 11 U.S.C. § 363 and in support thereof states as follows:

**Preliminary Statement**

      After failing to reach an agreement with FedEx that would permit the Debtor to continue

to operate as a FedEx "last mile" contractor, the Debtor embarked on a robust sale process to

maximize value to creditors through a sale of its vehicle fleet and related delivery equipment.  As

a result of the Debtor's efforts, the Debtor has determined that a hybrid private and auction sale of

its delivery vehicles will maximize returns to creditors.

      Accordingly, the Debtor requests approval to proceed with a private sale of certain vehicles

to Del McGee (the "**McGee Vehicles**").

**Background**

      1.     Bizgistics, Inc. filed a voluntary petition for relief under subchapter V of Chapter

11 of title 11 of the United States Code on September 12, 2021 (the "**Petition Date**").

      2.     On the Petition Date, the Debtor was operating as a service provider to FedEx

Ground Package System, Inc. ("**FedEx**") under an Independent Service Provider agreement ("**ISP**

**Agreement**").  Under the ISP Agreement, the Debtor was responsible for the last mile delivery of packages for FedEx in a designated area of Jacksonville, Florida.

3.      The Debtor is the owner a fleet of vehicles (the "**Vehicles**"), which it utilizes to deliver packages.

4.      The Debtor's ISP Agreement with FedEx terminated by its own terms on October 15, 2021.

5.      After failing to reach an agreement with FedEx to continue to provide services under a new independent services provider agreement the Debtor undertook a robust marketing effort for its Vehicles.  As a result of the Debtor's efforts, the Debtor has identified several buyers for many of its Vehicles, including Del McGee ("**McGee**").  McGee has offered to purchase the McGee Vehicles for an aggregate sale price of $33,500 (the "**Purchase Price**").  A description of the McGee Vehicles is attached to this Motion as **Exhibit A**, and the terms of the proposed sale are contained in the sale agreement (the "**Sale Agreement**") attached as **Exhibit B** to this Motion. ReadyCap Lending, LLC ("**ReadyCap**") asserts a security interest in all of the Vehicles.

6.      As to the vehicles for which the Debtor has not arranged to be sold, the Debtor intends to seek approval to sell such vehicles at a public auction or abandon them back to ReadyCap pursuant to the Plan (Doc. No. 97).

The Sale Agreement[1]

7.      Pursuant to the Sale Agreement, McGee will deposit with counsel for the Debtor a deposit equal to 100% of the Purchase Price (the "**Deposit**").  Upon approval of the Sale Agreement, the Deposit is to be applied towards the Purchase Price.  Pursuant to the Sale Agreement:

---

[1] For a full description of the terms of the Sale Agreement, please refer to Exhibit B.  To the extent anything contained herein is inconsistent with the terms of the Sale Agreement attached as Exhibit B, the terms of Exhibit B shall control.

A. If Closing fails to occur because this Agreement is not approved by the Bankruptcy Court or because Seller is unable or unwilling to close for any reason, the Deposit shall be returned to Buyer within 10 days of return of the Vehicles listed in Exhibit A (if applicable) and either (i) entry of a Bankruptcy Court order denying the sale or (ii) 10 days of Seller's failure to close on the Closing Date as Buyer's sole and exclusive remedy.

B. If the sale fails to occur because the Bankruptcy Court does not approve it for any reason, the Vehicles shall be returned to a location of Seller's choosing within the city of Jacksonville, FL, in which case Buyer shall be solely responsible for the entire cost of returning the Vehicles, including but not limited to insurance, the cost of transportation and any other costs associated with the return of the Vehicles to the Seller.

8.      This sale is slightly different than the prior sales insofar as McGee is not putting up 50% of the Purchase Price until he inspects the vehicles.  The Debtor believes there is a high likelihood of consummation of the sale because McGee is traveling 8 hours with a tow truck to bring the vehicles back with him upon inspection and payment of the Purchase Price.

## Basis for Relief

9.      Section 11 U.S.C. § 363(b)(1) of the Bankruptcy Code permits the Debtor to sell property of the estate, other than in the ordinary course of business after notice and a hearing.  A proposed sale under § 363(b)(1) is evaluated under the business judgment rule. *In re Diplomat Construction, Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012).  A sale should be approved where "the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith." *In re Phoenix Steel Corp.*, 82 B.R. 334, 336 (Bankr. D. Del. 1987).

10.      ReadyCap's lien will attach to the cash proceeds of any sale to the same extent and validity as such lien attached to the Vehicles prior to the sale.

11.      Section 11 U.S.C. § 363(f)(2) also permits any sale to be "free and clear" of any interest of an entity other than the estate in property if "such entity consents."

12.     Here, ReadyCap is the only entity other than the Debtor who asserts an interest in the McGee Vehicles.  ReadyCap has consented to the sale as proposed, the McGee Vehicles may be sold free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f)(2).

13.     Additionally, property may be sold "free and clear" of any interest of an entity other than the estate if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  11 U.S.C. § 363(f)(5)

14.     Here, to the extent it does not consent to the sale of the McGee Vehicles, ReadyCap could be compelled to accept a monetary satisfaction in exchange for its lien. *See In re Gulf States Steel Inc., of Alabama*, 285 B.R. 497, 508 (Bankr. N.D. Al. 2002) (The ability to cramdown a plan under the bankruptcy code satisfies the requirements of 11 U.S.C.§ 363(f)(5)).

15.     In exercising its business judgment, the Debtor believes that a sale of the McGee Vehicles through a private sale will maximize the value of the vehicles for the Debtor's creditors. After the Debtor failed to reach an agreement with FedEx, the Vehicles are the Debtor's primary assets.  There is currently a nationwide shortage of the delivery vehicles of the type owned by the Debtor, and such vehicles are in high demand. The Debtor, in its business judgment, believes that a private sale of the McGee Vehicles now in the midst of "peak" delivery season will allow those McGee Vehicles to be sold at a premium, maximizing their value to the estate and its creditors.

16.     The Debtor also seeks authority to take all actions, and execute all documents, that the Debtor deems reasonable, necessary, and/or desirable to effectuate the relief requested herein in its business judgment.[2]

17.     Given the holiday season, the Debtor request that the Court waive the 14-day stay under 6004(h).

---

[2] The Debtor reserves the right to seek a surcharge of the Purchase Price via separate motion.

## Notice

18.    A copy of this Sale Motion is being served on all creditors and parties in interest. Accordingly, the Debtor requests that the Court enter an order finding that such notice of this Sale Motion is adequate and sufficient and complies with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court.

WHEREFORE, the Debtor respectfully request that the Court: (1) grant the Sale Motion; (2) approve a sale of the McGee Vehicles pursuant to the Sale Agreement attached as Exhibit B; (3) waive the 14-day stay requirement of Federal Rules of Bankruptcy 6004(h); and (4) grant all such further relief the Court deems to be just and proper.

Dated: December 23, 2021.

Respectfully submitted,

*/s/ Megan W. Murray*
Megan W. Murray, Esq.
Florida Bar No: 0093922
Adam Gilbert, Esq.
Florida Bar No: 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 North Tampa St., Suite 2325
Tampa, FL  33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com
        agilbert@underwoodmurray.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically through the Court's CM/ECF system on December 23, 2021, which provides notice to all counsel of record by

electronic means and via First Class U.S. Mail to those parties listed below and on the attached

mailing matrix.

Enterprise Rent-A-Car
P.O. Box 843369
Kansas City, MO 64184

Budget Truck Rental, LLC
c/o Corporation Service Company
1201 Hays Street
Tallahassee, FL 32301

Budget Truck Rental
c/o A and J Auto Repair
170-k College Dr.
Orange Park, FL 32065

*/s/ Megan W. Murray*
Megan W. Murray, Esq.

## Exhibit A

| VIN | Buyer | Price |
|---|---|---|
| 4UZAANFD7JCJY4082 | Del McGee | $25,000.00 |
| 4UZA4FF41XCA61161 | Del McGee | $4,250.00 |
| 4UZA4FF40XCA49809 | Del McGee | $4,250.00 |

# EXHIBIT B

This **CONTRACT FOR PURCHASE OF VEHICLES** (this "**Agreement**") is made as of_____, 2021 (the "Effective Date"), between **BIZGISTICS, INC** ("**Seller**"), and _____ _____, ("**Buyer**").  Seller and Buyer may be referred to separately as "**Party**" and collectively as "**Parties**" in this contract ("**Agreement**").

1.     **Court Approval**:  The Parties' respective obligations to purchase and sell the Vehicle(s) pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing.  Title to the Vehicle(s) shall be free and clear of all liens.

2.     **Sale and Purchase of Vehicles**:  Subject to the terms and conditions of this Agreement and the Sale Order (defined below), and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all Seller's right, title, and interest in the Vehicles described in Exhibit A (the "**Vehicles**").  The sale of the Vehicles is conducted on an "AS IS, WHERE IS" basis, with no warranties as to condition whatsoever.

3.     **Purchase Price**: The aggregate purchase price for the Vehicles shall be $33,500 (the "**Purchase Price**"), which is equal to the aggregate value of the price of each individual Vehicle as listed on Exhibit A.

4.     **Deposit**:  Prior to, and as a condition to Seller's execution of this Agreement, Buyer shall have deposited with Underwood Murray P.A. ("**Escrow Agent**") a deposit equal to 100% of the Purchase Price (the "**Deposit**").  The Deposit shall be held in Escrow Agent's trust account, without interest, pending final approval of the Agreement by the Bankruptcy Court and applied to the Purchase Price at Closing (defined below).

5.     **Default Provisions:**
   a.   If Closing fails to occur because this Agreement is not approved by the Bankruptcy Court or because Seller is unable or unwilling to close for any reason, the Deposit shall be returned to Buyer within 10 days of return of the Vehicles listed in Exhibit A (if applicable) and either (i) entry of a Bankruptcy Court order denying the sale or (ii) 10 days of Seller's failure to close on the Closing Date as Buyer's sole and exclusive remedy.
   b.   If the sale fails to occur because the Bankruptcy Court does not approve it, the Vehicles shall be returned to a location of Seller's choosing within the city of Jacksonville, FL, in which case Buyer shall be solely responsible for the entire cost of returning the Vehicles, including but not limited to insurance, the cost of transportation and any other costs associated with the return of the Vehicles to the Seller.

6.     **Court Approval:** Seller is required to obtain Bankruptcy Court approval of the sale of the Vehicles to the Buyer pursuant to this Agreement (the "**Sale Order**").  Seller shall file a motion seeking approval of this Agreement and entry of the Sale Order (the "**Sale Motion**") within a reasonable time of the execution of this Agreement.

7.     **Buyer Representations**:

a.   Buyer represents this Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms as of the date Buyer executes this agreement.  Buyer acknowledges that this Agreement will not become binding on the Seller until Seller obtains a Sale Order.

b.   Buyer represents that neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will result in a violation by Buyer of any federal, state, local, or other law or governmental requirements of any kind, and any rules, regulations, permits, licenses, and orders promulgated thereunder.

8.     **Closing:** Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place within three (3) business days after the Sale Order becomes final and non-appealable (14 days after the Sale Order is entered) (the "**Closing Date**").

a. Within a reasonable time after Closing, Seller shall transfer title to the Vehicles to Buyer in accordance with Florida law.

b. Notwithstanding the time of the Closing, Buyer is permitted to take possession of the Vehicles upon the receipt of the full Deposit by the Seller and proof of insurance. However, Buyer explicitly understands and acknowledges that the Sale remains subject to approval by the Bankruptcy Court and that Buyer may be required to return the Vehicles pursuant to Section 5 of this Agreement. This provision shall survive the execution and/or termination of this Agreement.

c. Buyer shall be solely responsible for arranging for the transportation and storage of the Vehicles and any and all associated costs (including, but not limited to, the procurement and payment for any necessary insurance).

9.  BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE VEHICLES ARE SO ASSIGNED, LEASED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

10.  Miscellaneous:

a. This Agreement may not be amended except by an instrument in writing signed by both Parties.

b. This Agreement constitutes the entire agreement between the Parties and supersedes any prior agreements.

c. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original.

d. Each Party shall bear its own costs and expenses incurred in executing and consummating this Agreement.

e. Time is of the essence with respect to each Party's obligations hereunder.

f. If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Tampa, Florida are open for business.

g. This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida and each Party submits to the jurisdiction of the Bankruptcy Court to resolve any disputes arising out of this Agreement.

11.  **Jury Trial Waiver:** BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

**Escrow Agent Provisions:**

12.  If conflicting demands relating to this Agreement are made upon the Escrow Agent, the parties hereto expressly agree that the Escrow Agent may file suit to interplead the Deposit into the registry of the Bankruptcy

Court and seek a declaratory relief as to the entitlement to funds. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the Parties under this Agreement, the Escrow Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

13.     In no event shall Escrow Agent be liable for any act or omission under or in respect of this Agreement except where Escrow Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Escrow Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Escrow Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

14.     Seller and Buyer acknowledge that Escrow Agent may also serve as legal counsel to Seller in connection with this Agreement, and both Seller and Buyer consent to Escrow Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Escrow Agent shall be entitled to resign as Escrow Agent and to represent Seller in such dispute or adversity, and in such case shall deliver any and all funds held by Escrow Agent pursuant to this Agreement to a successor escrow agent designated by Seller and consented to by Lender, or approved by the Bankruptcy Court if no consent is obtained after commercially reasonable effort.

**BUYER:** _____**(print)**

Signature: _____

Its:       _____

Date:     _____


**SELLER:**       **Bizgistics, Inc.**

Signature: _____

Its:       _____

Date:     _____

**EXHIBIT A**

| VIN | Buyer | Price |
|---|---|---|
| 4UZAANFD7JCJY4082 | Del McGee | $25,000.00 |
| 4UZA4FF41XCA61161 | Del McGee | $4,250.00 |
| 4UZA4FF40XCA49809 | Del McGee | $4,250.00 |

Label Matrix for local noticing
113A-3
Case 3:21-bk-02197-RCT
Middle District of Florida
Jacksonville
Thu Dec 23 14:46:53 EST 2021

Banner Delivery Inc.
c/o Gareth E. Banner
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Garth Banning
11077 Mandarin Preserve Drive
Jacksonville, FL 32257-1568

Bizgistics, Inc.
925 Morgan Road
Rydal, PA 19046-3028

Roberta A. Colton
Tampa
, FL

Erik Johanson
ERIK JOHANSON PLLC
3414 Bay to Bay Blvd., #300
Tampa, FL 33629-7084

Thane Martin
Redcross, Martin & Associates, Inc.
1 Winding Drive, Monroe Bldg.
Suite 206
Philadelphia, PA 19131-2994

Megan W. Murray and Underwood Murray, P.A
100 N. Tampa St., Suite 2325
Tampa, FL 33602-5842

Old Republic Title Company of Oregon

ReadyCap Lending LLC
c/o BUSCH  MILLS & SLOMKA LLP
701 S. Olive Ave.
Suite 105
West Palm Beach, FL 33401-6197

AFLAC
153 Blanding Blvd
Suite 3
Orange Park, FL 32073-2613

AT&T Mobility
PO box 6463
Carol Stream, IL 60197-6463

American Express
PO Box 1270
Newark, NJ 07101-1270

American Homes 4 Rent
8936 Westerny Way
Suite 150
Jacksonville, FL 32256-0338

Banner Delivery, Inc.
c/o Daniel E. Etlinger
606 E. Madison Street
Tampa, FL 33602-4029

(p)BENETRENDS  INC
P O BOX 824984
PHILADELPHIA PA 19182-4984

Buchanan Ingersoll & Rooney PC
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555

Comcast
1701 JFK Blvd
Philadelphia, PA 19103-2899

Comcast Cable
4600 Touchton Road E
Building 200
Jacksonville, FL 32246-8299

Conservve
8936 Western Way
Suite 150
Jacksonville, FL 32256-0338

Darrell Giles
925 Morgan Road
Rydal, PA 19046-3028

Darrell Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Del McGee
1898 County Line Road
Madison, AL 35756-4925

EFS, LLC
PO Box 630038
Cincinnati, OH 45263-0038

Fed Ex Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA 15108-9373

FedEx Ground Package System, Inc.
100 FedEx Dr.
Coraopolis, PA 15108

Gareth Banner
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

Garth Banner
Banner Delivery, Inc.
11077 Mandarin Preserve Dr
Jacksonville, FL 32257-1568

GoMobileX
108 Paddock Place
Ponte Vedra Beach, FL 32082-3957

Indeed
6433 Champion Grandview Way
Building 1
Austin, TX 78750-8589

Kelchco CSP
1461 Webster St
Birmingham, MI 48009-7004

Kubicki Draper / Martin Blaya
9100 S. Dadeland Blvd.
Suite 1800
Miami, FL 33156-7817

Lytx, Inc.
9785 Towne Centre Drive
San Diego, CA 92121-1968

Lytx, Inc.
PO Box 849972
Los Angeles, CA 90084-9972

MD Repair and Services, Inc.
3372 Phillips Highway
Jacksonville, FL 32207-4312

MWMT Co.
7201 Frankford Ave.
Suite 1060
Philadelphia, PA 19135-1010

Marsh Sponsored Programs
PO BOX 14404
Des Moines, IA 50306-3404

Marsh Sponsored Programs
a division of Marsh USA Inc.
PO Box 14404
Des Moines, IA 50306-3404

Miller's Mobile Services, Inc.
4320 Gate Lane
Jacksonville, FL 32226-1938

New Benefits. Ltd.
PO Box 803475
Dallas, TX 75380-3475

Old Republic Title Company of Oregon
c/o Lara Fernandez
Trenam, Kemker, Scharf, Barkin et al.
101 East Kennedy Blvd., Ste 2700
Tampa, FL 33602-5150

PayChex
911 Panorama Trail S.
Rochester, NY 14625-2396

Pennsylvania Department of Revenue
PO Box 280427
Harrisburg, PA 17128-0427

Print Kreations
571 Berlin-Cross Keys Road
Sicklerville, NJ 08081-9550

Protective Insurance Company
PO Box 7099
Indianapolis, IN 46207-7099

ReadyCap Lending LLC
c/o Clive N. Morgan
BUSCH, MILLS & SLOMKA, LLP
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

ReadyCap Lending, LLC
200 Connell Drive,
Suite 4000
Berkeley Heights, NJ 07922-2805

ReadyCap Lending, LLC
c/o Christopher Y. Mills, Esq.
Busch Mills & Slomka, LLP
701 S. Olive Ave., Suite 105
West Palm Beach, FL 33401-6197

Siteground/SG Hosting Inc.
901 N. Pitt St.
Suite 325
Alexandria, VA 22314-1549

Southern Crane & Wrecker
3936 Phoenix Ave.
Jacksonville, FL 32296

Susan Giles
925
Morgan Road
Rydal, PA 19046-3028

Susan Giles
c/o Jake C. Blanchard
1501 Belcher Road S. Unit 6B
Largo, FL 33771-4505

Terry L. Rhodes, Executive Director
Department of Highway Safety and Motor V
2900 Apalachee Parkway
Tallahassee, FL 32399-0500

VM Wholesale Tire
125 East 63rd Street
Jacksonville, FL 32208-4711

Westlake Financial Services
PO Box 54807
Los Angeles, CA 90054-0807

Aaron R. Cohen +
P.O. Box 4218
Jacksonville, FL 32201-4218

Clive N. Morgan +
Morgan Legal, P.A.
6712 Atlantic Boulevard
Jacksonville, FL 32211-8730

United States Trustee - JAX 11 +
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Lara Roeske Fernandez +
Trenam Law
101 E. Kennedy Boulevard, Suite 2700
Tampa, FL 33602-5150

Rhys P Leonard +
Trenam Kemker
101 East Kennedy Boulevard
Suite 2700
Tampa, FL 33602-5170

Scott E Bomkamp +
United States Trustee
400 W. Washington Street
Suite 1100
Orlando, FL 32801-2440

Megan Wilson Murray +
Underwood Murray PA
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jake C Blanchard +
Blanchard Law, P.A.
1501 South Belcher Road, Unit 6B
Largo, FL 33771-4505

Daniel E Etlinger +
Jennis Morse Etlinger
606 East Madison Street
Tampa, FL 33602-4029

Adam M Gilbert +
Underwood Murray, P.A.
100 North Tampa Street, Suite 2325
Tampa, FL 33602-5842

Jocelyn C. Smith +
Brick Business Law, P.A.
3413 W. Fletcher Avenue
Tampa, FL 33618-2813

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Benetrends, Inc.
1684 S. Broad St.
Suite 130
Lansdale, PA 19446-5422

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Susan Giles

(d)Erik Johanson +
Erik Johanson PLLC
3414 Bay to Bay Boulevard, #300
Tampa, FL 33629-7084

(u)Note: Entries with a '+' at the end of the
name have an email address on file in CMECF
--------------------------------------------
Note: Entries with a '-' at the end of the
name have filed a claim in this case

End of Label Matrix
Mailable recipients    65
Bypassed recipients     3
Total                  68

ORDERED.

**Dated:  January 04, 2022**

Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                        Chapter 11

BIZGISTICS, INC.                                   Case No. 3:21-bk-02197-RCT

　　　Debtor.
_____/

**ORDER GRANTING DEBTOR'S**
**EMERGENCY MOTION FOR SALE OF ASSETS FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363**
(Doc. 107)

THIS MATTER came before the Court for a hearing on December 29, 2021 at 10:00 a.m.

(the "**Hearing**") upon Bizgistics, Inc.'s (the "**Debtor**") Emergency Motion for Sale of Assets Free

and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363 (Doc. 107) (the

"**Motion**").  Based upon the Motion, the representation and arguments of counsel at the Hearing,

the Declaration of Darrell Giles, the proffer of testimony of Darrell Giles, and the consent of

ReadyCap Lending, LLC ("**ReadyCap**") to the sale price, the Court makes the following findings of fact:

a)      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in the Motion are §§ 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure.

b)      The Debtor is the owner of several delivery vehicles.  A description of the vehicles that are being sold pursuant to this Order (the "**McGee Vehicles**") is attached as **Exhibit A** to this Order.

c)      The Debtor filed the Motion on December 23, 2021 and notice of the Hearing was timely served on all parties to whom notice was required.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.  No objections to the Motion were filed.

d)      Other than the Debtor, ReadyCap is the only other party who asserts an interest in the McGee Vehicles.

e)      At the Hearing, the Debtor sought approval of a private sale of the Vehicles to Del McGee and/or his assignee, (collectively "**McGee**") pursuant to the contract attached as Exhibit B to the Motion (the "**McGee Contract**"), incorporated herein by reference in its entirety.[1]

f)      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Hearing and (ii) representations of counsel made  at the Hearing, the Court further finds:

---

[1] To the extent there is a conflict between the McGee Contract and this Order, this Order shall control.

i.      The Debtor advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtor's business judgment pursuant to § 363 of the Bankruptcy Code to sell the McGee Vehicles to McGee in accordance with the terms of the McGee Contract.

ii.      The sale of the McGee Vehicles is an arms-length transaction, for fair value, and is in the best interests of the estate and its creditors.

iii.      The Debtor and McGee have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation, and execution of the McGee Contract.  Neither the Debtor nor McGee have engaged in any conduct that would cause or permit the McGee Contract to be avoided under § 363(n) of the Bankruptcy Code.

iv.      The Debtor has articulated good and sufficient business justification for the sale of the McGee Vehicles pursuant to § 363(f) of the Bankruptcy Code.

v.      The sale of the McGee Vehicles to McGee satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code.

vi.      The consideration provided by McGee pursuant to the McGee Contract (i) is fair and reasonable and (ii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Conveyance Act and § 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the State of Florida.

vii.    Approval of the Motion and of the McGee Contract is in the best interests of the Debtor, its estate, its creditors, and all parties in interest.

viii.    The transfer of the McGee Vehicles to McGee will be a legal, valid, and effective transfer and will vest McGee (or his designee) with all right title, and interest of the Debtor in the McGee Vehicles free and clear of all liens, claims, encumbrances, defenses (including without limitation, rights of setoff and recoupment) and interest, known or unknown whether pre-petition or post-petition, secured or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, mature or unmatured, legal or equitable.

ix.    Neither the sale, transfer, or disposition of the McGee Vehicles pursuant to the McGee Contract and/or any further amendments thereto will subject McGee to any liability for claims, obligations, or encumbrances, unless such liability is provided for by the McGee Contract.

Accordingly, it is **ORDERED:**

1.    The Motion (Doc. 107) is **GRANTED** as set forth herein.

2.    The findings of fact set forth above are ratified as findings of this Court.  To the extent any of the findings of fact set forth above are deemed to be conclusions of law, then such findings are hereby confirmed as conclusions of law.

3.    Notice of the Hearing was adequate, fair, and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Federal Rules of Bankruptcy Procedure 2002 and 6004.  The fourteen day stay provided for by Federal Rule of Bankruptcy Procedure

6004(h) is hereby **WAIVED**.

4.     The form and substance of the McGee Contract and the transaction contemplated thereby, and by this Order, are hereby approved in all respects.  After entry of this Order, the Debtor and McGee may enter into any non-material amendment or modification to the McGee Contract that is not adverse to the Debtor's estate without the need for further notice and hearing.

5.     The Debtor is authorized and directed to execute all documents required to consummate the sale to McGee.  No further consents or approvals are required for the Debtor to consummate the sale or the transactions contemplated thereby.

6.     Prior to the Closing and taking the McGee Vehicles, McGee shall pay the Purchase Price by wire transfer of immediately available funds to the Escrow Agent.

7.     The lien of ReadyCap shall attach only to those sale proceeds directly traceable to the sale of the McGee Vehicles to the same extent, validity, and priority as such lien existed prior to the sale of the McGee Vehicles.  In no event shall any lien of ReadyCap attach to funds held by Escrow Agent that are not directly and indisputably traceable to the sale of the McGee Vehicles.

8.     McGee is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all encumbrances in or on the McGee Vehicles of any kind or nature whatsoever.

9.     The Debtor and McGee have acted in good faith, the terms and conditions of the McGee Contract are fair and reasonable and negotiated in good faith, McGee is an arm's length purchaser and entitled to the benefits and protections provided by 11 U.S.C. § 363(m).

10.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order, including those matters concerning the closing of the sale contemplated by this Order.

Megan W. Murray is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.

**Exhibit A**

| VIN | Buyer | Price |
|---|---|---|
| 4UZAANFD7JCJY4082 | Del McGee | $25,000.00 |
| 4UZA4FF41XCA61161 | Del McGee | $4,250.00 |
| 4UZA4FF40XCA49809 | Del McGee | $4,250.00 |

# EXHIBIT B

This **CONTRACT FOR PURCHASE OF VEHICLES** (this "**Agreement**") is made as of _____, 2021 (the "Effective Date"), between **BIZGISTICS, INC** ("**Seller**"), and _____ _____, ("**Buyer**").  Seller and Buyer may be referred to separately as "**Party**" and collectively as "**Parties**" in this contract ("**Agreement**").

1.     **Court Approval**:  The Parties' respective obligations to purchase and sell the Vehicle(s) pursuant to this Agreement are subject to Bankruptcy Court approval after notice and a hearing.  Title to the Vehicle(s) shall be free and clear of all liens.

2.     **Sale and Purchase of Vehicles**:  Subject to the terms and conditions of this Agreement and the Sale Order (defined below), and subject in all events to the approval of the Bankruptcy Court, on the Closing Date (defined below), Seller shall sell and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all Seller's right, title, and interest in the Vehicles described in Exhibit A (the "**Vehicles**").  The sale of the Vehicles is conducted on an "AS IS, WHERE IS" basis, with no warranties as to condition whatsoever.

3.     **Purchase Price**: The aggregate purchase price for the Vehicles shall be $33,500 (the "**Purchase Price**"), which is equal to the aggregate value of the price of each individual Vehicle as listed on Exhibit A.

4.     **Deposit**:  Prior to, and as a condition to Seller's execution of this Agreement, Buyer shall have deposited with Underwood Murray P.A. ("**Escrow Agent**") a deposit equal to 100% of the Purchase Price (the "**Deposit**"). The Deposit shall be held in Escrow Agent's trust account, without interest, pending final approval of the Agreement by the Bankruptcy Court and applied to the Purchase Price at Closing (defined below).

5.     **Default Provisions:**
   a. If Closing fails to occur because this Agreement is not approved by the Bankruptcy Court or because Seller is unable or unwilling to close for any reason, the Deposit shall be returned to Buyer within 10 days of return of the Vehicles listed in Exhibit A (if applicable) and either (i) entry of a Bankruptcy Court order denying the sale or (ii) 10 days of Seller's failure to close on the Closing Date as Buyer's sole and exclusive remedy.
   b. If the sale fails to occur because the Bankruptcy Court does not approve it, the Vehicles shall be returned to a location of Seller's choosing within the city of Jacksonville, FL, in which case Buyer shall be solely responsible for the entire cost of returning the Vehicles, including but not limited to insurance, the cost of transportation and any other costs associated with the return of the Vehicles to the Seller.

6.     **Court Approval:** Seller is required to obtain Bankruptcy Court approval of the sale of the Vehicles to the Buyer pursuant to this Agreement (the "**Sale Order**").  Seller shall file a motion seeking approval of this Agreement and entry of the Sale Order (the "**Sale Motion**") within a reasonable time of the execution of this Agreement.

7.     **Buyer Representations**:

a. Buyer represents this Agreement is, and the other documents and instruments contemplated hereby will be, when executed and delivered by Buyer, the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms as of the date Buyer executes this agreement.  Buyer acknowledges that this Agreement will not become binding on the Seller until Seller obtains a Sale Order.

b. Buyer represents that neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will result in a violation by Buyer of any federal, state, local, or other law or governmental requirements of any kind, and any rules, regulations, permits, licenses, and orders promulgated thereunder.

8.     **Closing:** Unless otherwise agreed to by the Seller and Buyer in writing, the closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place within three (3) business days after the Sale Order becomes final and non-appealable (14 days after the Sale Order is entered) (the "**Closing Date**").

a. Within a reasonable time after Closing, Seller shall transfer title to the Vehicles to Buyer in accordance with Florida law.

b. Notwithstanding the time of the Closing, Buyer is permitted to take possession of the Vehicles upon the receipt of the full Deposit by the Seller and proof of insurance. However, Buyer explicitly understands and acknowledges that the Sale remains subject to approval by the Bankruptcy Court and that Buyer may be required to return the Vehicles pursuant to Section 5 of this Agreement. This provision shall survive the execution and/or termination of this Agreement.

c. Buyer shall be solely responsible for arranging for the transportation and storage of the Vehicles and any and all associated costs (including, but not limited to, the procurement and payment for any necessary insurance).

9. BUYER, ON BEHALF OF ITSELF AND ANY AFFILIATES OR RELATED PARTIES, UNDERSTANDS AND AGREES THAT THE VEHICLES ARE SO ASSIGNED, LEASED, TRANSFERRED AND CONVEYED TO BUYER IN "AS IS" CONDITION ON A "WHERE IS" BASIS, WITH NO CONTINGENCIES OF ANY KIND INCLUDING FINANCING OR DUE DILIGENCE AND WITHOUT ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, EXCEPT AS OTHERWISE EXPRESSLY STATED IN THIS AGREEMENT.

10. Miscellaneous:

a. This Agreement may not be amended except by an instrument in writing signed by both Parties.

b. This Agreement constitutes the entire agreement between the Parties and supersedes any prior agreements.

c. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile signatures shall be accorded the same enforcement rights as an original.

d. Each Party shall bear its own costs and expenses incurred in executing and consummating this Agreement.

e. Time is of the essence with respect to each Party's obligations hereunder.

f. If the last day of any time period provided for in this Agreement falls on a Saturday, Sunday or holiday, the last day shall be extended until the next business day that banks operating in Tampa, Florida are open for business.

g. This Agreement shall be governed by, construed, interpreted and the rights of the Parties determined in accordance with the laws of the State of Florida and each Party submits to the jurisdiction of the Bankruptcy Court to resolve any disputes arising out of this Agreement.

11. **Jury Trial Waiver:** BUYER AND SELLER HEREBY EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT.

**Escrow Agent Provisions:**

12. If conflicting demands relating to this Agreement are made upon the Escrow Agent, the parties hereto expressly agree that the Escrow Agent may file suit to interplead the Deposit into the registry of the Bankruptcy

Court and seek a declaratory relief as to the entitlement to funds. Upon the filing of any such declaratory relief or interpleader suit and depositing with the Bankruptcy Court all funds deposited by the Parties under this Agreement, the Escrow Agent shall thereupon be fully released and discharged from any and all obligations to further perform the duties or obligations imposed upon it by this Agreement.

13.	In no event shall Escrow Agent be liable for any act or omission under or in respect of this Agreement except where Escrow Agent's acts or omission is the result of its gross negligence or willful misconduct. Accordingly, Escrow Agent shall not incur any liability with respect to (i) any action taken or omitted in good faith, including upon advice of its legal counsel given with respect to any questions relating to the duties and responsibilities of the Escrow Agent under this Agreement, or (ii) any action taken or omitted in reliance on any instrument, not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by a person or persons having authority to sign or present such instrument, and to conform with the provisions of this Agreement.

14.	Seller and Buyer acknowledge that Escrow Agent may also serve as legal counsel to Seller in connection with this Agreement, and both Seller and Buyer consent to Escrow Agent serving in such dual capacity. In the event of any actual dispute or adversity between Seller and Buyer, Escrow Agent shall be entitled to resign as Escrow Agent and to represent Seller in such dispute or adversity, and in such case shall deliver any and all funds held by Escrow Agent pursuant to this Agreement to a successor escrow agent designated by Seller and consented to by Lender, or approved by the Bankruptcy Court if no consent is obtained after commercially reasonable effort.

**BUYER:**	_____(print)

Signature: _____

Its:	_____

Date:	_____


**SELLER:**	**Bizgistics, Inc.**

Signature: _____

Its:	_____

Date:	_____

**EXHIBIT A**

| VIN | Buyer | Price |
|---|---|---|
| 4UZAANFD7JCJY4082 | Del McGee | $25,000.00 |
| 4UZA4FF41XCA61161 | Del McGee | $4,250.00 |
| 4UZA4FF40XCA49809 | Del McGee | $4,250.00 |