**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re                                                     Chapter 11

BIZGISTICS, INC.                                Case No. 3:21-bk-02197-RCT

      Debtor.

_____/

**BIZGISTICS INC.'S MOTION FOR SUMMARY JUDGMENT**
**ON OBJECTION TO CLAIM NO. 3 AND MOTION TO VALUE AND**
**DETERMINE SECURED STATUS OF READYCAP LENDING, LLC CLAIM**
(Doc. No. 139)

Bizgistics Inc. (the "**Debtor**") files this Motion for Summary Judgment ("**Motion**") on its Objection to Claim 3 ("**Objection**") (Doc. No. 139) filed by ReadyCap Lending, LLC ("**ReadyCap**"), seeking a determination from the Court related to extent, validity, and priority of ReadyCap's Claim, as set forth below. In support of the Motion, the Debtor states:

**SUMMARY OF ARGUMENT**

The factual history of what occurred between the Debtor and ReadyCap in entering into the Loan Documents is not in dispute. As a result, the Debtor's entitlement to summary judgment hinges on the questions of whether ReadyCap is bound by its voluntary election to forgo distributions as an unsecured creditor, and whether the Debtor may avoid the unperfected security interest of ReadyCap pursuant to 11 U.S.C. § 544.

And as explained *infra*, the answer to both of these questions is a resounding yes.

**SUMMARY JUDGMENT EVIDENCE**

In support of this Motion, the Debtor refers the Court to the Declaration of Darrell Giles ("**Giles Decl.**"), attached as **Exhibit A**, and all exhibits attached thereto, on file, or to be filed

1

simultaneously with this Motion, all of which are incorporated by reference, as allowed by Federal Rule of Civil Procedure 10 and Federal Rule of Bankruptcy Procedure 7010.

## STATEMENT OF UNDISPUTED FACTS

1.      The Debtor is a Pennsylvania corporation which formerly operated a FedEx Ground business in Jacksonville, Florida.

2.      The Debtor executed an Independent Service Provider Agreement ("**ISP Agreement**") by and between the Debtor and FedEx Ground Package System, Inc. ("**FedEx**"), dated November 14, 2020.

3.      The Debtor acquired substantially all assets of Banner Delivery, Inc. ("**BDI**"), a FedEx Ground contractor, for a purchase price of $2,450,000 ("**Purchase Price**"), pursuant to an Asset Purchase Agreement ("**APA**") dated December 11, 2020.[1] (APA section 1).  A true and correct copy of the APA is attached hereto as **Exhibit B.**

4.      On or about December 15, 2020, to assist in funding the Debtor's acquisition of BDI's business, ReadyCap loaned $1,484,000 to the Debtor (the "**Loan**"), which funds, along with an injection of $642,500[2] in cash from the Debtor's principals (myself and my wife, Susan) (the "**Principal Contribution**") were used to acquire substantially all of BDI's assets. True and correct copies of the closing statements are attached hereto as **Composite Exhibit C.**

5.      ReadyCap also filed a UCC-1 with the Pennsylvania Secretary of State, attached hereto as **Exhibit D** ("**UCC**").

6.      In connection with the Loan, the Debtor and ReadyCap also executed the following documents comprising **Composite Exhibit E**: Loan Agreement, SBA Note, Security Agreement and related closing documents (the "**Loan Documents**").

---

[1] Other than excluded assets in Schedule 1 of the APA.
[2] See Composite Exhibit C, at 8 of 8.

7.      The Security Agreement lists the following as collateral:

4.  COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds and products.

| | | | | | | |
|---|---|---|---|---|---|---|
| X | a. | Equipment | | X | f. | Chattel paper |
| | b. | Fixtures | | X | g. | General intangibles |
| X | c. | Inventory | | | h. | Documents |
| X | d. | Accounts | | | i. | Farm products |
| X | e. | Instruments | | | j. | Deposit accounts |
| | | | | | k. | Investment property |

X   l.   Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):
         See exhibit A

m.  Other: insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

X        Furniture, Trade Fixtures, Machinery

EXHIBIT A (a legible reproduction of the below chart may be found on page 5 of Exhibit F).

| Unit # | Year | Make | Body Type | Condition ie: Fair, Good, Excellent | Value | VIN | Miles | Address of FedEx Terminal where vehicle(s) stored | Owner on Title | Existing Lienholder | Received Titles and/or Registrations? Y/N |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 305518 | 1999 | Freightliner | Walk in P700 | Fair | $ 12,479.00 | 4UZ44FF41XCA61161 | 579,651 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Registration |
| 310920 | 1999 | Freightliner | Walk in P700 | Fair | $ 12,479.00 | 4UZ44FF40XCA49809 | 505,108 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Title & Reg |
| 96703 | 2001 | International | Walk in P1200 | Fair | $ 15,650.00 | 1HTMGA8M01A930174 | 100,487 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Title & Reg |
| 85330 | 2008 | Freightliner | Walk in P1000 | Fair | $ 18,000.00 | 4UZAARDLU8CZ58931 | 261,368 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Title & Reg |
| 313337 | 2013 | Ford | Walk in P1000 | Good | $ 46,068.00 | 1F6F5FKY7D0A13878 | 160,015 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Title & Reg |
| 87303 | 2014 | Freightliner | Walk in P1200 | Excellent | $ 23,070.00 | 4UZAARDLUXECFK8393 | 13,354 | 13509 Waterworks Street, Jacksonville, FL 32246 | Bush Leasing Trust | CFC Investment Co (Released) | Y-Title & Reg |
| 87323 | 2014 | Freightliner | Walk in P1200 | Excellent | $ 23,070.00 | 4UZAARDL1ECFK8413 | 157,603 | 13509 Waterworks Street, Jacksonville, FL 32246 | Bush Leasing Trust | CFC Investment Co (Released) | Y-Title & Reg |
| 87744 | 2016 | Freightliner | Walk in P1200 | Excellent | $ 56,025.00 | 4UZAARDU0GCHH5792 | 133,690 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | No Lien | Y-Title & Reg |
| 321455 | 2016 | Ford | Walk in P700 | Excellent | $ 50,835.00 | 1FCBE4KL5GDC13591 | 154,039 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 321456 | 2016 | Ford | Walk in P700 | Excellent | $ 50,835.00 | 1FCBE4KL6GDC13079 | 152,882 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 321457 | 2016 | Ford | Walk in P700 | Excellent | $ 50,835.00 | 1FCBE4KL2GDC13080 | 167,643 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 321458 | 2016 | Ford | Walk in P700 | Excellent | $ 50,835.00 | 1FCBE4KL3GDC13590 | 133,996 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 325569 | 2016 | Ford | Box P1000 | Excellent | $ 76,179.00 | 1F6F5FKY3G0A15965 | 130,837 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 325568 | 2017 | Freightliner | Walk in P1200 | Excellent | $ 79,094.00 | 4UZAARDU6HCW8504 | 96,965 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 402362 | 2017 | Freightliner | Walk in P1200 | Excellent | $ 75,762.00 | 4UZAARDU8HGJE8059 | 109,732 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |
| 405080 | 2017 | Freightliner | Box P1000 | Excellent | $ 76,066.00 | 4UZAARDU5HGJC2406 | 56,826 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Santander | Y-Registration |
| 405658 | 2017 | Freightliner | Box P1000 | Excellent | $ 75,931.00 | 4UZAARDU7HGJC2410 | 54,353 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |
| 405659 | 2017 | Freightliner | Box P1200 | Excellent | $ 75,531.00 | 4UZAARDU7HGJC2407 | 54,572 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Santander | Y-Registration |
| 405660 | 2017 | Freightliner | Box P1200 | Excellent | $ 75,531.00 | 4UZAARDU9HGJC2408 | 65,189 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Santander | Y-Registration |
| 408050 | 2017 | Freightliner | Walk in P1000 | Excellent | $ 72,617.00 | 4UZAARDU6HGJD1843 | 96,596 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | 1st Source | Y-Registration |
| 405665 | 2018 | Freightliner | Box P1000 | Excellent | $ 72,079.00 | 4UZAANPD6JCP7821 | 81,774 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |
| 408049 | 2018 | Freightliner | Walk in P700 | Excellent | $ 73,224.00 | 4UZAANFD7JCJY4082 | 84,114 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |
| 408051 | 2018 | Freightliner | Walk in P1200 | Excellent | $ 77,318.00 | 4UZAARFD6JCJY4114 | 52,426 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Eastern Funding | Y-Registration |
| 412344 | 2019 | Freightliner | Walk in P1000 | Excellent | $ 74,930.00 | 4UZAAPFD1KCKN9145 | 58,694 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |
| 412345 | 2019 | Freightliner | Walk in P1000 | Excellent | $ 74,930.00 | 4UZAAPFD3KCKN9146 | 57,536 | 13509 Waterworks Street, Jacksonville, FL 32246 | Banner Delivery, Inc. | Wells Fargo | Y-Registration |

8.      The UCC lists the following as collateral:

All assets and property including but not limited to the following: All equipment and machinery, (excluding motor vehicles), including power-driven machinery and equipment, furniture and trade fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, accessions, parts and tools belonging thereto or for use in

connections therewith, wherever located. All goods and accessions. All inventory, raw materials, work in process and supplies now owned or hereafter acquired. All accounts, deposit accounts, accounts receivable now outstanding or hereafter arising, and all books, and records pertaining thereto and all additions, substitutions, replacements and proceeds thereof. All contract rights, documents, instruments and promissory notes, investment property, chattel paper, general intangibles and payment intangibles now in force or hereafter acquired, including good will and all other assets, leases, rights to leases or leased properties.  n/n/ All of the above, whether now or hereafter owned and wherever located and the proceeds thereof.  n/n/ All the described collateral falls within the scope of Article 9 as enacted by the state.

See Exhibit  D at pg. 1.

### The Debtor's FedEx Vehicles

9.      Pursuant to the APA, Debtor negotiated to acquire, *inter alia*,[3] 25 FedEx box truck delivery vehicles from BDI (the "**FedEx Vehicles**").  Exhibit B. at pg. 14.

10.      ReadyCap obtained lien notations on the following certificates of title, as indicated

---

[3] The Debtor has not listed each of its assets in this Motion, as certain of the Debtor's assets are not at issue or relevant to this dispute. The Debtor's failure to list or describe an asset does not waive any rights with respect to that asset.

| Unit # | Year | Make | Body Type | VIN | Lien notated on Certificate of Title |
|--------|------|------|-----------|-----|--------------------------------------|
| 305518 | 1999 | Freightliner | Walk In P700 | 4UZA4FF41XCA61161 | ReadyCap |
| 310920 | 1999 | Freightliner | Walk In P700 | 4UZA4FF40XCA49809 | ReadyCap |
| 96703 | 2001 | International | Walk In P1200 | 1HTMGABM01A930174 | ReadyCap |
| 85330 | 2008 | Freightliner | Walk In P1000 | 4UZAARDU18CZ58931 | ReadyCap |
| 313337 | 2013 | Ford | Walk In P1000 | 1F65F5KY7D0A13678 | ReadyCap |
| 87303 | 2014 | Freightliner | Walk In P1200 | 4UZAARDUXECFK8393 | ReadyCap |
| 87323 | 2014 | Freightliner | Walk In P1200 | 4UZAARDU1ECFK8413 | ReadyCap |
| 87744 | 2016 | Freightliner | Walk In P1200 | 4UZAARDU0GCHH5792 | ReadyCap |
| 321455 | 2016 | Ford | Walk In P700 | 1FC3E4KL5GDC13591 | ReadyCap |
| 321456 | 2016 | Ford | Walk In P700 | 1FC3E4KL6GDC13079 | ReadyCap |
| 321457 | 2016 | Ford | Walk In P700 | 1FC3E4KL2GDC13080 | ReadyCap |
| 321458 | 2016 | Ford | Walk In P700 | 1FC3E4KL3GDC13590 | ReadyCap |
| 325569 | 2016 | Ford | Box P1000 | 1F65F5KY3G0A15965 | ReadyCap |
| 325568 | 2017 | Freightliner | Box P1200 | 4UZAARDU3HCHW8504 | ReadyCap |
| 402362 | 2017 | Freightliner | Walk In P1200 | 4UZAARDU8HCJE8059 | ReadyCap |
| 405080 | 2017 | Freightliner | Box P1000 | 4UZAARDU5HCJC2406 | ReadyCap |
| 405658 | 2017 | Freightliner | Box P1000 | 4UZAARDU7HCJC2410 | ReadyCap |
| 405659 | 2017 | Freightliner | Box P1200 | 4UZAARDU7HCJC2407 | ReadyCap |
| 405660 | 2017 | Freightliner | Box P1200 | 4UZAARDU9HCJC2408 | ReadyCap |
| 408050 | 2017 | Freightliner | Walk In P1000 | 4UZAARDU6HCJD1843 | ReadyCap |
| 405665 | 2018 | Freightliner | Box P1000 | 4UZAANFD6JCJP7821 | ReadyCap |
| 408049 | 2018 | Freightliner | Walk In P700 | 4UZAANFD7JCJY4082 | ReadyCap |
| 408051 | 2018 | (Accident Truck) | Walk In P1200 | 4UZAARFD6JCJY4114 | **NONE** |
| 412344 | 2019 | Freightliner | Walk In P1000 | 4UZAAPFD1KCKN9145 | ReadyCap |
| 412345 | 2019 | Freightliner | Walk In P1000 | 4UZAAPFD3KCKN9146 | ReadyCap |
| NA | 2018 | Service Truck | F550 | 1FD0W5HT0JEC21611 | **NONE** |
| NA | 2014 | Service Traier | Trailer | 55YBE1821EN002935 | **NONE** |

### *Accident Truck and Related Insurance Proceeds*

11.    Pursuant to the APA, one of the FedEx Vehicles that the Debtor negotiated to acquire from BDI is a 408051 Freightliner 2018 Walk-in P1200, VIN 4UZAARFD6JCJY4114 (the "**Accident Truck**").

12.    On or about November 12, 2020, a month prior to closing the APA, the Accident Truck was involved in an accident which caused damage to, effectively totaling, the Accident Truck. *See* June 3, 2021 Letter attached as **Exhibit F** at pg. 3-4; see also Claim No. 1 at para. 18.

13.     The Accident Truck was insured by Protective Insurance, BDI's insurer. See **Exhibit F** (letter 6-3-21).

14.     Following the accident, the Debtor agreed to execute the APA, without modification of the Purchase Price, electing to receive the insurance proceeds of $63,716.92 (the "**Insurance Proceeds**") and the damaged Accident Truck. Exhibit F at 3; *See* also Claim 1, at ¶ 18, 43, 44, and Exhibit F (6-3-21 letter).

15.     Despite this agreement, after Protective Insurance sent the Insurance Proceeds to BDI, BDI wrongfully retained and refused to turn over the Insurance Proceeds to the Debtor, despite repeated demands to do so.

16.     BDI also wrongfully retained the Accident Truck post-closing of the APA, even though the Debtor purchased the Accident Truck pursuant to the APA. *See* Exhibit A (APA).

17.     ReadyCap never obtained a lien on the certificate of title of the Accident Truck. *See* Electronic Vehicle Information Check attached as **Exhibit G**

### *Truck / Trailer*

18.     Pursuant to the APA, the Debtor acquired all assets of BDI, except those listed on the excluded list (APA, Schedule 1).

19.     The APA sold to the Debtor, among other assets, "all other assets of every kind and description owned by [BDI] except for those excluded assets enumerated on Schedule 1 hereof." APA at 1.

20.     The Truck and Trailer were titled in BDI's name at the time of the execution of the APA.

21.     Post-closing, despite demand, BDI did not turn over to the Debtor two vehicles titled in its name, VIN # 1FD0W5HT0JEC21611 (Ford F550) ("**Truck**") and VIN #

55YBE1821EN002935 (the "**Trailer**").  The Truck and Trailer were not listed on Schedule 1 (Excluded Assets) or Schedule 2 (Included Assets).  True and correct copies of electronic vehicle information check reports for the Truck and the Trailer are attached hereto as **Composite Exhibit H**.

22.    Due to dispute over ownership, BDI and the Debtor both agreed to a sale of the Truck and Trailer via auction, reserving all rights to ownership of the proceeds (Doc. No. 158).

23.    On April 13, 2022, the Court authorized the sale of the Truck and Trailer (Doc. No. 207, granting at Doc. No. 158).  The auction process for the Truck and Trailer is scheduled, although cannot be completed, because BDI has refused to turn over the titles to Ritchie Bros., the auctioneer, so it can complete the auction.[4]

24.    At no time did ReadyCap retain a lien on the certificates of title to the Truck or the Trailer.  *See* Composite Exhibit H.

### *The Holdback*

25.    In the process of closing the APA, the Debtor and BDI negotiated a holdback of $150,000 of the Purchase Price to protect the Debtor from damages and other harms arising out of or related to "Contingency Event Losses," as described in section 3 and 11 of the APA (the "**Holdback**").

26.    The Debtor and BDI specifically agreed that the Holdback would be held in an escrow account ("**Escrow**") by Old Republic Title Company of Oregon ("**Escrow Agent**" or "**Old Republic**").  *See* the Hold Funds Instructions (the "**Escrow Agreement**"), attached hereto as **Exhibit I.**

---

[4] The Debtor will address this with the Court by separate motion. As noted previously, title is not dispositive to rights in a vehicle.  *See In re* Chesley, 550 B.R. 903, 913 (Bankr. M.D. Fla. 2016)("The applicable statute and case law establish that a person can be the owner of a motor vehicle even in the absence of being named on a registered title certificate.").

27.     ReadyCap's Claim No. 3 lists the Holdback as "money held by 3d party."    *See* Claim 3.

28.     The Escrow is not being held for ReadyCap, nor is Old Republic an agent of ReadyCap.

29.     Neither the Loan Documents nor the APA indicate whether the funds comprising the Holdback came from the Principal Contribution or the ReadyCap Loan proceeds.

### *The Litigation*

30.     Among other assets, the Debtor holds fraud, fraudulent transfer and fraudulent misrepresentation claims against FedEx, Banner, BDI and others related to the sale of the business from BDI to the Debtor.  As described herein, the Debtor also holds claims against Banner and BDI for, *inter alia,* conversion and/or fraud with respect to the Insurance Proceeds, Accident Truck, Truck and Trailer.

31.     ReadyCap describes these causes of action and potential litigation similarly in its Response to the Debtor's Objection that "Gareth Banner and Banner Delivery mislead it as to the profitability of the business during the sale process. It contends that it suffered damages as a result of the misrepresentations.  Therefore it contends that the sale was fraudulent." (Doc. No. 220, at 2-3).

### *The Debtor's Bankruptcy*

32.     On September 12, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Subchapter V of the Bankruptcy Code.

33.     The Debtor was authorized to manage its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

34.     The Debtor was unable to renegotiate its ISP Agreement with FedEx as it had hoped, and as of October 15, 2021, the Debtor ceased operating as a FedEx ground contractor.

35.     As of the Petition Date, the Debtor listed personal property primarily consisting of, *inter alia,* vehicles, equipment and tools, the Holdback of $150,000 and causes of action.

36.     The Debtor listed ReadyCap in its original and amended schedules (Doc. No. 33) as having a disputed secured claim amount of $1.1 million, and an unsecured claim in an unknown amount.

37.     The Debtor lists other creditors who, as of the Petition Date, extended credit to the Debtor. For example, American Express was scheduled having an unsecured claim of $53,316.37 (Doc. No. 86).

38.     The Proof of Claim Deadline was November 22, 2021 (Doc. No. 14).

39.     On January 6, 2022, ReadyCap filed a secured proof of claim alleging a first-priority security interest in all the Debtor's property. *See* Claim No. 3, which does not reserve rights to bifurcate between unsecured and secured claims.

40.     ReadyCap's Claim No. 3 lists as collateral "business equipment, cause of action, money held by 3d party."

41.     ReadyCap's Claim 3 checks the box for secured, and lists $0.00 as unsecured.

42.     The Debtor filed a plan of liquidation (Doc. No. 181, as amended) that was confirmed on March 10, 2022 (Doc. No. 186).

43.     Prior to confirmation, the Debtor sold 15 FedEx Vehicles for a total purchase price of $300,500. See Doc. No. 227, Composite Exhibit B.

44.     Subsequently, with respect to the remaining FedEx Vehicles, the Court entered an order providing that the Debtor shall be deemed to have transferred, and ReadyCap shall be

deemed to have accepted and assumed all right, title, interest, liabilities, storage fees, risk of loss or responsibility for or related to the ownership of the Abandoned Vehicles listed on Exhibit C of this Plan" (Doc. No. 251).[5]

## DISPUTE AS TO READYCAP'S CLAIM NO. 3

45.    ReadyCap claims to have a lien on all assets of the Debtor, including, among other of the Debtor's assets, the FedEx Vehicles, the Holdback, the Accident Truck, the Insurance Proceeds, the Truck and Trailer and all of the Debtor's causes of action.

46.    The Debtor opposes the extent, validity and priority of ReadyCap's alleged perfected security interest, as set forth below, and posits that to the extent any portion of ReadyCap's security interest was not perfected, it may be avoided under § 544.

## SUMMARY JUDGMENT STANDARD

47.    Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).  The Court should grant summary judgment if the undisputed facts make clear that the movant's burden has been satisfied and a trial is unnecessary. *In re Performance Materials, Inc.,* 309 B.R. 819, 821 (Bankr. M.D. Fla. 2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).  A party moving for summary judgment may support its motion by "citing to particular parts in the record, including depositions, documents, electronically stored information, affidavits or declarations,

---

[5] The Effective Date of the Plan was April 21, 2022  (Doc. No. 215).

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(a).

48.     Once the movant presents sufficient and competent evidence demonstrating entitlement to summary judgment in its favor, the non-movant must set forth specific facts demonstrating a genuine issue for trial and may not rely on mere averments or denials in the pleadings. *Performance Materials*, 309 B.R. at 821 (citing *In re Radar Distributors, Inc*., 4 F.3d 62, 67 (1st Cir. 1993). However, "a mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that [the fact-finder] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990).  As explained by the Supreme Court, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

49.     With respect to review of a contract, i.e., the Loan Documents in this case, a court will look to the documents themselves in determining the facts. *See Faez v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent.").[6] Only when the documents are ambiguous will a court look to parole evidence to resolve a dispute regarding the documents.  *See LSQ Funding Group, L.C. v. EDS Field Services*, 879 F. Supp.2d 1320, 1328 (M.D. Fla. 2012) ("Generally, the party seeking to introduce parol evidence must establish that the document is ambiguous and in need of interpretation."). Contract interpretation is a question of law appropriately decided on summary judgment. *Ellenwood v. World Triathlon*

---

[6] The Loan Documents are governed by Florida law.   The ISP is governed by Pennsylvania law. The APA is governed by Florida law.

*Corp.*, 2021 WL 62482, *2 (M.D. Fla. Jan 7, 2021) ("Under Florida law, the construction and interpretation of an unambiguous written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment.").[7]

50.    Here, where the documents are unambiguous, the Court can and should resolve the disputes set forth herein by review of the documents and application of the law, without the need to resort to extrinsic, parole evidence.

### *ReadyCap Has No Unsecured Claim*

51.    ReadyCap may have obtained a security interest in certain of the Debtor's assets by virtue of its notation on certificate of title or through its security agreement. However, ReadyCap does not dispute it did not file a timely proof of claim. *See* Doc. No. 252, at 2.

52.    Federal Rule 3003 requires all creditors whose claims are not scheduled as disputed, contingent or unliquidated to file a proof of claim by the time prescribed by the Court, and failing to do so shall eliminate rights with respect to distribution.  See Fed. R. Bank. P. 3003(c)(2).

53.    Even if the Court determines that ReadyCap is entitled to distributions on its lien by virtue of perfection as to its security interest in certain assets and rights under the Bankruptcy Code, ReadyCap waived its right to seek unsecured distribution because its proof of claim was untimely.  Fed. R. Bank. P. 3003(c)(2).[8]

54.    Even if the claim were timely, ReadyCap also waived its right to seek unsecured distributions by listing its unsecured claim as $0.00.  See Claim No. 3.

---

[7] The general legal framework for analyzing a contract on summary judgment is no different under Pennsylvania law. *See e.g. Strauss v. United States Postal Service*, 296 F. Supp. 3d 705, 708-709 (E.D. Pa. 2017) (noting that the plain and unambiguous language of a contract will control, and that the existence of an ambiguity is a question of law appropriate for summary judgment).

[8] The Debtor is entitled to reduction of ReadyCap's secured claim as provided in the confirmed Plan See Doc. Nos. 181, 186, 251.

55.     When analyzing an almost identical scenario, the Eleventh Circuit Court of Appeals in *J.H. Inv. Servs.,* determined that a creditor who filed only a secured claim was not entitled to an unsecured claim, and that § 506 does not automatically bifurcate a claim to the extent a filed secured claim is unsecured. *See In re J.H. Inv. Servs., Inc.,* 2010 WL 3943952, at *4 (M.D. Fla. Oct. 7, 2010), *aff'd*, 452 F. App'x 858 (11th Cir. 2011) (noting, among other things, due process and fairness to all parties in interest).

56.     Here, ReadyCap filed a proof of claim superseding the Debtor's schedules, listing the entire amount of its claim as secured (see Claim 3, section 9) and noting the unsecured amount of claim is $0.00. *See* Bankruptcy Rule 3003(c)(4) (a filed proof of claim supersedes schedules); *In re Pennave Properties Assocs.*, 165 B.R. 793, 796 (E.D. Pa. 1994) (noting a creditor's filing of proof of secured claim superseded any scheduling of such creditor's claim as unsecured, such that the bankruptcy court could reject that creditor's subsequent assertion of an unsecured claim as untimely); *In re Vybiral,* No. 2014 WL 4997336, at *6 (Bankr. W.D. Pa. Oct. 7, 2014) (noting a creditor was bound by its position in its proof of claim and waived the right to seek a secured distribution because it elected in its own proof of claim to be deemed unsecured); *In re Workman*, 373 B.R. 460, 465 (Bankr. D.S.C. 2007) (noting a creditor may waive any right to which it is entitled, including rights determined by a contract).

57.     Just as in *In re J.H. Inv. Servs.*, ReadyCap is bound by its election to forgo participation as an unsecured creditor on its proof of claim. *J.H. Inv. Services*, 452 Fed. Appx. at 861 (noting "[t]hus, to substantially comply with Form 10, a creditor should note the portion of its claim it believes is unsecured.  When an undersecured creditor does not, the [t]trustee and other parties can conclude that the creditor has decided not to pursue its deficiency claim.").

58.    Therefore, because it is undisputed that ReadyCap asserted an unsecured claim in the amount of $0.00 in Claim 3, ReadyCap's unsecured claim is $0.00 as a matter of law and the Debtor is entitled to summary judgment in its favor as to this issue.

**_ReadyCap Does Not Have a Perfected Security Interest in the Holdback_**

59.    ReadyCap does not have a perfected security interest in the Holdback because it does not have control of the escrow account, which is a deposit agreement and/or money.

60.    ReadyCap acknowledges the Holdback is "Money held by [a] 3d party." Although the rights to the Holdback are disputed as between the Debtor and Banner Delivery, Inc., there is no dispute that the Holdback is held in an escrow account held by Old Republic relating to the APA.

61.    Whether the Holdback is a deposit account or money, a security interest in it can only be perfected by possession.  *In re Brown*, 311 B.R. 282 (Bankr. M.D. Fla. 2004) ("for a security interest to be created in an escrow account, the secured party must have control over it."); *Matter of O.P.M. Leasing Servs., Inc.,* 46 B.R. 661, 670 (Bankr. S.D.N.Y. 1985) (finding the secured creditor fully perfected its security interest in the escrow account through possession several years before the debtor filed its bankruptcy petition); *In re Ne. Int'l Airways, Inc.,* 99 B.R. 487, 489 (Bankr. S.D. Fla. 1989) (noting under prior Florida statute, a security interest in money can be perfected by the secured party taking possession); *In re Tuscany Energy, LLC*, 561 B.R. 910 (Bankr. S.D. Fla. 2016) (noting under Florida law, a security interest in deposit account may be perfected only by control over that deposit account); *In re Merida Tiles Corp.,* 144 B.R. 550, 551 (Bankr. S.D. Fla. 1992), *rev'd on other grounds,* (S.D. Fla. May 24, 1993) (noting the fundamental concept under Florida law that an interest in cash or cash equivalents cannot be perfected absent physical possession of the cash or cash equivalent); *In re Harbour E. Dev., Ltd.,*

2011 WL 3035287, at *7 (Bankr. S.D. Fla. July 22, 2011) (noting the escrow agent was in possession of the deposits in the escrow account which was in the name of the escrow agent, thereby the escrow agent perfected its security interest by control).

62.     Because ReadyCap does not have possession or control of this escrow account, nor is Old Republic ReadyCap's agent, ReadyCap does not have a perfected security interest in the Holdback escrow account. *See § Fla. Stat.* 679.3141 (a security interest in deposit accounts is perfected by control); *Fla. Stat.* § 679.3121 (a security interest in a deposit account may only be perfected by control); *Fla. Stat.* § 679.1041 (describing circumstances when a party has control).[9]  *See also In re Dent,* 130 B.R. 623, 629 (Bankr. S.D. Ga. 1991) (finding secured creditor perfected its security interest in escrow account by being in possession of the account by virtue of its ownership).

63.     The Holdback is not an account receivable.  *Fla. Stat.* § 679.1021 (1)(b) provides that an "Account," includes various forms of receivable which are not applicable,[10] and specifically *excludes* "rights to payment evidenced by chattel paper or an instrument; commercial tort claims; deposit accounts; investment property; letter-of-credit rights or letters of credit; or rights to payment for money or funds advanced or sold…." (emphasis added).

64.     The Holdback is not a general intangible. Pursuant to *Fla. Stat.* § 679.1021(pp), "general intangible" means any personal property, including things in action, *other than* **accounts**, chattel paper, **commercial tort claims**, **deposit accounts**, documents, goods,

---

[9] Old Republic is not an agent or bailee of ReadyCap. *S.E.C. v. Elliott,* 953 F.2d 1560 (11th Cir. 1992).

[10] "Account" includes "a right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; for services rendered or to be rendered; for a policy of insurance issued or to be issued; for a secondary obligation incurred or to be incurred; for energy provided or to be provided; for the use or hire of a vessel under a charter or other contract; arising out of the use of a credit or charge card or information contained on or for use with the card; or as winnings in a lottery or other game of chance operated or sponsored by a state, governmental unit of a state, or person licensed or authorized to operate the game by a state or governmental unit of a state. The term includes health-care-insurance receivables."

instruments, investment property, letter-of-credit rights, letters of credit, **money**, and oil, gas, or other minerals before extraction." (emphasis added).

65.    The requirements for perfection in a deposit account and money are different from the requirements to perfect a security interest in a general intangible. As explained herein, because it is undisputed that ReadyCap has failed to perfect its security interest in the Holdback (either a deposit account or money) due to lack of possession or control, the Debtor is entitled to summary judgment in its favor as to this issue.

### *ReadyCap does not have a perfected security interest in the Debtor's Commercial Tort Claims*

66.    Fla. Stat. § 679.1021(m) provides that a "Commercial tort claim" is a claim arising in tort with respect to which (1) the claimant is an organization; or (2) the claimant is an individual and the claim (a) arose in the course of the claimant's business or profession and (b) does not include damages arising out of personal injury to or the death of an individual.

67.    Because the claimant in this case, the Debtor, is an organization, section 2 related to "in the course of business" does not apply.  Therefore, as long as a cause of action by the Debtor arises in tort, it is a Commercial tort claim under the Florida Chapter 679.

68.    Here, ReadyCap also does not have a perfected security interest in any Commercial tort claim held by the Debtor due to the insufficiency of the description contained in its UCC.  *See Fla. Stat.* § 679.1081(5)(a) (noting a description only by type of collateral is not sufficient description of a commercial tort claim).

69.    As one court has explained:

Florida's Uniform Commercial Code governs attachment of security interests.

Fla. Stat. §§ 679.2031(1) and (2) provide, in pertinent part:

(1) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral;

> (2) Except as otherwise provided ... a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>> (a) Value has been given;
>> (b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>> (c) One of the following conditions is met:
>>> *1. The debtor has authenticated a security agreement that provides a description of the collateral;*
>
> Section 679.1081 of Florida's UCC governs the sufficiency of descriptions of collateral and provides, in pertinent part:
>
> (1) *A description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.*
> (2) Except as otherwise provided ... a description of collateral reasonably identifies the collateral if it identifies the collateral by:
>> (a) Specific listing;
>> (b) Category;
>> (c) ... a type of collateral defined in the Uniform Commercial Code;
>
> Section 679.1081(3) of Florida's UCC provides that "[a] description of collateral as 'all the debtor's assets' or 'all the debtor's personal property' or using words of similar import does not reasonably identify the collateral for purposes of the security agreement.
>
> **Florida's UCC § 679.1081(5)(a) imposes heightened identification requirements for commercial tort claims: a description only by type of collateral defined in this chapter is an insufficient description of: (a) A commercial tort claim. As relevant here, § 679.1021(m) of Florida's UCC defines a commercial tort claim as a claim arising in tort with respect to which: the claimant is an organization.**

*In re Payroll Mgmt., Inc.,* 630 B.R. 627, 635–36 (Bankr. N.D. Fla. 2021) (internal quotations omitted, emphasis added).

70.     Under *Fla. Stat.* § 679.1081(5) a commercial tort claim cannot be perfected by a general description or listing of "all assets" or a general intangible, a general contract right, accessions, attachments or otherwise.  Accordingly, a "general intangibles" clause is insufficient to create a security interest in the proceeds of a commercial tort claim, absent specific identification of the claim.  *In re S-Tek 1, LLC,* 2021 WL 6101680 (Bankr. D.N.M. Dec. 23, 2021) (noting that a secured creditor that entered into a security agreement with a debtor in

connection with the debtor's purchase of a surveying business did not have a security interest in the debtor's commercial tort claim arising from conduct related to the purchase); *Mantle v. N. Star Energy & Constr. LLC,* 441 P.3d 841, 849 (Wyo. 2019) (referring to a similar statute to Florida's and noting the heightened identification requirements for commercial tort claims). Commercial tort claims such as the Litigation are unique and require more specific description.

71.     To perfect a security interest in a Commercial tort claim, the tort claim must be described with particularity, which ReadyCap failed to do.  *See Fla. Stat.* § 679.1081 ("A description only by type of collateral defined in this chapter is an insufficient description of … a commercial tort claim").  ReadyCap does not list a Commercial tort claim or cause of action in its security agreement or UCC.

72.     While courts disagree on whether a creditor can have a security interest in a debtor's rights to a settlement resulting from a commercial tort claim under other grants of collateral such as general intangibles, those finding in favor of borrowers are more consistent with the language of Fla. Stat. § 679.1081.  *See e.g., In re S-Tek 1, LLC*, 2021 WL 6101680, at *5 (finding a secured party cannot have a security interest in proceeds from a commercial tort claim, to do so would obviate the purpose of the heightened description requirement and "make an end run around the limitations in the UCC."). The *S-Tek 1* court went on to explain the rational basis for this outcome:

> A secured party cannot make an end run around the limitations in the UCC on a debtor granting a security interest in a commercial tort claim by acquiring a security interest in amounts payable or paid as a result of the claim under other grants of collateral. **The value of a commercial tort claim lies in the recovery or potential recovery on the claim. Stripped of the right to recover, a commercial tort claim has no value. If a creditor could evade the UCC limitations on granting a security interest in a commercial tort claim simply by obtaining a security interest under a generalized grant of security interest in general intangibles, not in the claim itself but instead**

**on what gives the claim value – recovery on the claim, those limitations would be meaningless.**

Further, if a grant of security interest in general intangibles were sufficient to create a security interest in the debtor's recovery on commercial tort claim, if the debtor obtained a damages award on a commercial tort claim against the secured party itself, the secured party would have a security interest in the damages awarded against it. The UCC limitations on a debtor granting a security interest in a commercial tort claim should be construed to prevent that perverse result.

*Id*. at *7 (emphasis added).

73.     As noted above, barring a secured party from recovery under a commercial tort claim, but permitting the secured party to claim rights in a trailing settlement belies logic.  *Id.* (also noting that such a reading is consistent with the UCC comments insofar as a debtor is not prohibited from granting an original security interest in a commercial tort claim by doing it correctly—adhering to the specific description requirements—and thereafter, when the properly perfected commercial tort claim is reduced to judgment the security interest will follow).

74.     Further, Florida law provides under § 679.3151 that "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected."  Reading a springing security interest into this portion of the UCC is inconsistent with Florida law and the public policy behind requiring active, knowing consent to grant a security interest in a commercial tort.  *Id.; In re S-Tek 1, LLC*, 2021 WL 6101680, at *5 (noting commercial tort claims do not usually serve as commercial collateral, and the limitations and heightened requirements to secure such an interest are imposed to "ensure that a creditor obtain the benefit of a commercial tort claim under a grant of collateral only if it is clear the debtor specifically intended to confer that benefit.").[11]

---

[11] *But see In re Payroll Mgmt., Inc.,* 630 B.R. 627, 637 (Bankr. N.D. Fla. 2021)(in dicta only).

75.    Furthermore, permitting a creditor to perform an end run around the description requirements of § 679.1081 and § 679.3151 by allowing a security interest in proceeds in an otherwise unperfected commercial tort claim would render these two sections of the Florida Statutes superfluous and of no import.

76.    Based on the foregoing, there exists no genuine issues of material fact on this issue and the Court should determine as a matter of law that ReadyCap's alleged security interest in any commercial tort claim should be denied and to the extent necessary, avoided.[12]

### *ReadyCap Does Not Have a Perfected Security Interest in the Disputed Truck and Trailer.*

77.    ReadyCap argues it has a security interest in any asset owned by the Debtor, presumably including any interest the Debtor has in the disputed truck and trailer ("**Truck and Trailer**") which is the subject of this Court's sale order (Doc. No. 207).

78.    Under Florida law, a security interest in a motor vehicle is not perfected or enforceable until it has been noted on the certificate of title for the vehicle. *Fla Stat.* §§ 319.27 and 679.3111(1)(b).  *See also* Fla. Stat. § 679.3151(3), noting "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected."

79.    Here, it is undisputed that there is no such notation on the certificate of title for either the Truck or Trailer in favor of ReadyCap, or any other lender.  ReadyCap does not have a perfected lien on the Debtor's interest in the Truck and Trailer, nor does it have a security interest in the Debtor's rights to proceeds therefrom.

80.    Accordingly, no genuine issue of material fact exists, and ReadyCap's failure to notate any lien on the Truck and Trailer titles precludes ReadyCap from asserting a perfected

---

[12] The Debtor acknowledges that the Court might seek to reserve ruling until a cause of action is refiled so that it can refer to specific counts to determine which are commercial tort claims, nevertheless, the Debtor submits that a ruling that ReadyCap does not have a security interest in <u>any</u> claims constituting Commercial tort claims is not premature.

security interest in the Truck and Trailer as a matter of law, and any alleged interests are avoidable under § 544. Therefore, the Debtor is entitled to summary judgment as to this issue.

### _ReadyCap Does Not Have a Perfected Security Interest Accident Truck or the Insurance Proceeds_

81.    For the same reasons set forth above (_see_ Fla. Stat. §§ 319.27 and 679.3111(1)(b)), ReadyCap does not have a security interest in the Insurance Proceeds because it never obtained a lien on the certificate of title of the Accident Truck. _See also_ Fla. Stat. § 679.3151(3), which provides that "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected."

82.    Further, BDI and/or Banner's wrongful retention of the Insurance Proceeds was and is a fraudulent transfer under 11 U.S.C. § 548 and related Florida statutes. The Debtor's post-petition recovery of the Insurance Proceeds or any other asset by way of a fraudulent transfer are post-petition assets belongs to the estate. The Debtor could not have permitted these assets to become encumbered by a security interest. _In re Connolly Geaney Ablitt & Willard, P.C.,_ 585 B.R. 644, 653-654 (Bankr. D. Mass. 2018) (also finding that the commercial tort claims were not property described with particularity, and thus the creditor's lien did not attach); _In re Physiotherapy Holdings, Inc.,_ 2016 WL 3611831, at *14 (Bankr. D. Del. June 20, 2016) (noting "[p]ost-petition avoidance actions 'can only be brought by the trustee after the petition is filed ... and the [pre-petition debtor] does not own the right to pursue a fraudulent transfer claim in bankruptcy.'").

83.    Accordingly, no genuine issue of material fact exists, and ReadyCap's failure to obtain a lien on the Accident Truck and its inability to claim a lien on fraudulent transfer receivables entitle the Debtor to summary judgment as to this issue.

### *Section 544 permits the Debtor to avoid any alleged lien to the extent it is unperfected.*

84.     Section 544 of the Bankruptcy Code places a debtor in possession in the same position as "a hypothetical creditor of the Debtor who has completed the legal process for perfection of his lien upon all property available for the satisfaction of his claim against the Debtor." *In re HDI Partners*, 202 B.R. 524, 528 (Bankr. S.D. Fla. 1996).  The hypothetical lien rights granted by § 544 "takes priority over all unperfected liens or security interests." *Id.* As a result, 544 permits a debtor to avoid an unperfected lien on property of the estate. *See In re Lykes Bros. S.S. Co., Inc.*, 216 B.R. 856, 862 (Bankr. M. D. Fla. 1996) ("[t]his record more than warrants the conclusion that ideal judgment lien status granted by § 544(a)(1) & (2) of the Code is superior to any unperfected secured interest and the Debtor is entitled to avoid the security interest."); *In re Abrass*, 268 B.R. 665, 682 (Bankr. M.D. Fla. 2001) ("§ 544(a) arms the trustee at the time of the filing of the debtor's bankruptcy petition with all the rights and powers of various creditors and transferees of the debtor so as to avoid incomplete or improperly perfected transfers of the debtor"); *In re Advanced Aviation, Inc.*, 101 B.R. 310, 313 (Bankr. M.D. Fla. 1989) ("§ 544 permits the trustee to exercise whatever rights of avoidance any creditor holding a secured claim could have exercised on his own behalf under applicable law.").

85.     Here § 544(a) and (b) enable the Debtor to avoid any unperfected lien on any asset of the Debtor, including but not limited to ReadyCap's asserted liens on the Holdback, the Truck and Trailer, the Accident Truck, the Insurance Proceeds and Commercial tort claim.

86.     The *Finizio* case ReadyCap cites in its Response[13] is inapposite to any bankruptcy case, where a debtor is entitled to use § 544 to avoid an unperfected security interest.  *Finizio* related to a state court case in which a court ordered securities delivered to complete perfection in a probate setting.  *Finizio* has no applicability here because the referenced statute in that case

---

[13] *Finizio v. Shubow*, 557, So.2d 640 (4th DCA 1990).

has been repealed, and because ReadyCap cannot perfect a security interest post-petition. *See Matter of Maas*, 69 B.R. 245, 247 (Bankr. M.D. Fla. 1986) (finding post-petition perfection of a security interest (that does not relate back) violates the automatic stay). Here ReadyCap's security interest is perfected only upon attachment which does not relate back, and perfection now is not possible due to the bankruptcy. *Fla. Stat.* §§ 679.3081, 679.3091, 679.3121.

87.     Any reference by the Debtor to a security interest in its schedules does not acknowledge, admit or confirm that such lien is also perfected. Accordingly, § 544 permits the Debtor to enforce the rights of hypothetical creditors, including those in existence on the Petition Date now holding allowed unsecured claims like American Express. Therefore, to the extent the Court determines that ReadyCap has an unperfected security interest, it should, as a matter of law, avoid the security interest under § 544.

## CONCLUSION

Based on the foregoing, the undisputed facts demonstrate that the Debtor is entitled as a matter of law, to summary judgment in its favor finding that: (1) ReadyCap has no unsecured claim, or alternatively an unsecured claim in the amount of $0.00, (2) that ReadyCap does not have a perfected security interest in the Holdback, (3) that ReadyCap does not have a perfected security interest in the commercial tort claim, (4) that ReadyCap does not have a perfected security interest in the Truck and Trailer, (5) that ReadyCap does not have a perfected security interest in the Accident Truck or the Insurance Proceeds, and (6) that all of ReadyCap's un-perfected security interests in the foregoing may be avoided by the Debtor pursuant to 11 U.S.C. § 544.

WHEREFORE, the Debtor respectfully requests that this Court grant summary judgment in favor as set forth above, and award to the Debtor all other relief the Court finds just and proper.

Respectfully submitted this 15th day of June 2022.

Respectfully submitted,

/s/ Megan W. Murray
Megan W. Murray
Florida Bar Number 0093922
Adam M. Gilbert
Florida Bar Number 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 N. Tampa St., Suite 2325
Tampa, FL 33602
Tel: (813) 540-8401 / Fax: (813) 553-5345
Email: mmurray@underwoodmurray.com
          agilbert@underwoodmurray.com
*Counsel to the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF on June 15, 2022.

/s/ Megan W. Murray
Megan W. Murray