UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In Re

Bizgistics, LLC,

Case No. 3:21-bk-02197-RCT
Chapter 11

Debtor.
_____/

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**

Creditor ReadyCap Lending, LLC (RCL) files this Notice of Appeal under 28 U.S.C. Section 158 (a) Granting Bizgistics Motion for Summary Judgment, Denying RCL's Motion for Summary Judgment, and Sustaining Debtor's Objection to RCL's Claim 3 entered by the Bankruptcy Court on July 14, 2022.

**Part 1: Identify the Appellant**

1. Name of Appellant: ReadyCap Lending, LLC.
2. Position of Appellant: Creditor of Bizgistics, LLC, Debtor.

**Part 2: Identify the subject of this appeal.**

1. Describe the judgment, order, or decree appealed from:

    Order Granting Bizgistics' Motion for Summary Judgment, Denying RCL's Motion for Summary Judgment and Sustaining Debtor's Objection to RCL's Claim.

2. State the date on which the judgment, order, or decree was entered: July 14, 2022.

**Part 3: Identify the parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

1. ReadyCap Lending, LLC. Creditor

   Clive N. Morgan, Counsel to Creditor
   Fla Bar No. 357855
   Busch Mills & Slomka, LLP
   6712 Atlantic Boulevard
   Jacksonville, FL 32211
   904-508-0777
   cmorgan@buschmills.com

2. Bizgistics, LLC, Debtor

   Megan W. Murray, Counsel to Debtor
   Underwood Murray, P.A.
   101 N. Tampa Street, Suite 2325
   Tampa, FL 33602
   813-540-8401
   mmurray@underwoodmurray.com

**Part 4: Optional election to have appeal heard by District Court(application only in certain districts.**

Appellant elects to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5. Sign Below**

s/ Clive N. Morgan
Clive N. Morgan
Florida Bar No. 357855
Busch Mills & Slomka, LLP
6712 Atlantic Blvd.
Jacksonville, FL 32211
Tel: (904) 508-0777
Email: cmorgan@buschmills.com
Attorney for ReadyCap

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the Notice of Appeal was served via the electronic filing using CM/ECF systems on all parties on this 28th day of July, 2022.

                                                    _s/ Clive N. Morgan_
                                                    Clive N. Morgan
                                                    Fla Bar No. 357855

ORDERED.

Dated: July 13, 2022

_____
Roberta A. Colton
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re

BIZGISTICS, INC.,

Debtor.
_____/

Chapter 11

Case No. 3:21-bk-02197-RCT

**ORDER GRANTING BIZGISTICS' MOTION FOR SUMMARY JUDGMENT,
DENYING RCL'S MOTION FOR SUMMARY JUDGMENT,
AND SUSTAINING DEBTOR'S OBJECTION TO RCL'S CLAIM 3**

Before the Court are two motions: (1) Debtor Bizgistics' Motion for Summary Judgment on its Objection to Claim 3 and Motion to Value and Determine Secured Status of ReadyCap Lending, LLC's ("RCL") Claim (Doc. 257), which RCL opposes (Doc. 261); and (2) RCL's Motion for Summary Judgment (Doc. 258), which Bizgistics opposes (Doc. 262). As explained below, the Court grants Debtor's motion, sustains Debtor's objection to RCL's claim, and denies RCL's motion.

**I. Standard of Review**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] The Court must draw all inferences from the evidence in the light most favorable to the non-movant and

---

[1] Fed. R. Civ. P. 56(a).

resolve all reasonable doubts in that party's favor.[2] The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.[3] When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.[4]

## II. Factual Background

Debtor executed an Independent Service Provider ("ISP") agreement with FedEx on November 14, 2020.[5] Debtor also acquired substantially all of the assets of Banner Delivery, Inc. ("BDI"), a FedEx contractor, pursuant to an asset purchase agreement ("APA").[6] To fund Debtor's acquisition of BDI's assets, RCL loaned Debtor $1,484,000, which was guaranteed by the U.S. Small Business Administration (SBA loan number ending in 8209).[7]

In connection with the loan, Debtor signed a Security Agreement granting RCL a security interest in all of the following property of Debtor, then owned or later acquired, together with all replacements, accessions, proceeds, and products: equipment, inventory, accounts, instruments, chattel paper, general intangibles, 25 specific titled motor vehicles (listed in an attached exhibit), furniture, trade fixtures, and machinery.[8] The Security Agreement provides that it will be governed by the law of the jurisdiction where Debtor is located without

---

[2] *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted).
[3] *See id.* (citation omitted).
[4] *See id.* (citation omitted).
[5] Doc. 257-1, ¶ 6.
[6] Doc. 257-1, ¶ 7.
[7] Doc. 257-1, ¶ 8; Doc. 258, p. 14 of 32.
[8] Doc. 139-2, p. 11-12, 15.

reference to conflicts of laws principles.[9] The SBA Authorization indicates that Debtor is located in Florida.[10]

RCL also filed a UCC-1 Financing Statement with the Pennsylvania Department of State (Debtor is a Pennsylvania corporation) on November 10, 2020. The Financing Statement describes the following collateral:

> All assets and property including but not limited to the following: All equipment and machinery, (excluding motor vehicles), including power-driven machinery and equipment, furniture and trade fixtures now owned or hereafter acquired, together with all replacements thereof, all attachments, accessories, accessions, parts and tools belonging thereto or for use in connections therewith, wherever located. All goods and accessions. All inventory, raw materials, work in process and supplies now owned or hereafter acquired. All accounts, deposit accounts, accounts receivable now outstanding or hereafter arising, and all books, and records pertaining thereto and all additions, substitutions, replacements and proceeds thereof. All contract rights, documents, instruments and promissory notes, investment property, chattel paper, general intangibles and payment intangibles now in force or hereafter acquired, including good will and all other assets, leases, rights to leases or leased properties. \n\n All of the above, whether now or hereafter owned and wherever located and the proceeds thereof. \n\n All the described collateral falls within the scope of Article 9 as enacted by the state.[11]

As stated above, the Security Agreement gave RCL a security interest in 25 titled motor vehicles, which are identified in an exhibit attached to the Security Agreement. RCL obtained lien notations on all of the certificates of title for the 25 vehicles, except for one vehicle that was involved in an accident prior to the sale of BDI's assets to Debtor (the "Accident Truck").[12] The Accident Truck was insured. Debtor thus proceeded with the acquisition of BDI's assets.[13]

---

[9] Doc. 139-2, p. 13.
[10] Doc. 258, p. 14 of 32.
[11] Doc. 139-3; Doc. 258, p. 30-32.
[12] Doc. 257-1, ¶ 14-16, 21.
[13] Doc. 257-1, ¶ 17-18.

3

Debtor contends that it agreed to proceed with the acquisition and receive the insurance proceeds, as well as the totaled Accident Truck.[14] However, Debtor contends that BDI still holds the insurance proceeds and that BDI will not turn over the Accident Truck.[15]

There is also a dispute between Debtor and BDI regarding the ownership of two additional vehicles (collectively referred to as "Truck and Trailer"). The APA states that BDI was selling Debtor the following:

> [A]ll other assets of every kind and description owned by [BDI] except for those excluded assets enumerated on Schedule 1 hereof, the same being incorporated by reference herein; and all vehicles and related assets owned by [BDI] that are enumerated on Schedule 2 hereof, including records related to each.[16]

However, the Truck and Trailer are not specifically listed in Schedule 1 (Excluded Assets) or Schedule 2 (Included Assets) attached to the APA.[17] According to Debtor, BDI has not turned over the Truck and Trailer to Debtor despite Debtor's demand to do so.[18] The Truck and Trailer are not listed in the exhibit to the Security Agreement that lists 25 specific vehicles that are collateral for the loan.[19]

As part of the APA, Debtor and BDI agreed to a holdback of $150,000 of the purchase price to protect Debtor should any contractually-defined contingency event occur.[20] The holdback funds have been, and continue to be, held in escrow by Old Republic Title Company.[21]

---

[14] Doc. 257-1, ¶ 18.
[15] Doc. 257-1, ¶ 19-20.
[16] Doc. 257-2, p. 2.
[17] Doc. 257-2, p. 13-14.
[18] Doc. 257-1, ¶ 25.
[19] Doc. 139-2, p. 15.
[20] Doc. 257-2, p. 2-3; Doc. 257-1, ¶ 29.
[21] Doc. 257-1, ¶ 30; Doc. 257-5, p. 9-14.

### III. Procedural Background

On September 12, 2021, Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code, and it was authorized to manage its property as a debtor-in-possession. However, Debtor was unable to renegotiate its ISP agreement with FedEx, and on October 15, 2021, Debtor ceased being a FedEx ground contractor.[22]

In its amended Schedule of Assets, Debtor indicated that it had breach of contract and fraud claims related to the transfer and operation of the FedEx business.[23] Debtor initiated an adversary proceeding against Old Republic, BDI, and Gareth Banner regarding the $150,000 holdback funds being held in escrow, and RCL sought leave to intervene. Shortly thereafter, Debtor voluntarily dismissed the adversary proceeding without prejudice. Currently, Debtor contends that it has fraud claims against FedEx, Banner, BDI, and others relating to the sale of BDI's assets to Debtor.[24]

Also in its schedules, Debtor listed RCL on Schedule D as a secured creditor that was owed $1,422,865.53, and Debtor indicated that RCL's claim was disputed.[25] Debtor listed the last four digits of the account number for the claim as 8209, which refers to RCL's loan guaranteed by the SBA ("RCL-SBA loan"). Debtor listed the collateral for RCL's claim as vehicles, accounts, and all assets, and Debtor estimated the value of the collateral as $1.1 million.[26]

Debtor also listed RCL on its Schedule E/F as an unsecured creditor holding a claim in an unknown amount.[27] However, Debtor did not check any of the boxes that would indicate

---

[22] Doc. 257-1, ¶ 38.
[23] Doc. 86, p. 8.
[24] Doc. 257-1, ¶ 34.
[25] Doc. 33, p. 12.
[26] Doc. 33, p. 12.
[27] Doc. 86, p. 18.

that the unsecured claim was contingent, disputed, or unliquidated.[28] Debtor indicated that the claim arose from an account number ending in 6101.[29]

The deadline for filing a proof of claim was November 22, 2021,[30] and RCL filed a late claim on January 6, 2022.[31] In its proof of claim, RCL indicated that its claim was for $1,485,914.20 and that its claim was secured by a lien on motor vehicles, business equipment, cause of action, and money held by a third party.[32] RCL stated in its proof of claim that the basis for perfection of its security interest was a security agreement and that no part of its claim was unsecured.[33] All of this information appears to relate to the RCL-SBA loan.

In response to RCL's proof of claim, Debtor filed an Objection and Motion to Determine Secured Status ("Objection").[34] At the March 10, 2022 hearing in this case, the Court discussed with the parties whether they wanted the Court to rule on Debtor's Objection via an adversary proceeding or as a contested matter. Thereafter, Debtor informed the Court that RCL had consented to proceeding as a contested matter rather than via an adversary proceeding, and the Court set a deadline for RCL to respond to Debtor's Objection.[35]

RCL filed a response to Debtor's Objection, and Debtor filed a reply.[36] During the May 25, 2022 hearing on Debtor's Objection, the parties stated that there were questions of law that likely could be resolved by summary judgment. Thereafter, Debtor and RCL filed the instant motions for summary judgment on RCL's proof of claim and Debtor's Objection.

---

[28] Doc. 86, p. 18.
[29] Doc. 86, p. 18.
[30] Doc. 14, p. 2.
[31] Claim 3-1.
[32] Claim 3-1, p. 2.
[33] Claim 3-1, p. 2.
[34] Doc. 139.
[35] Docs. 199, 202.
[36] Docs. 220, 232.

### IV. Motions for Summary Judgment

Debtor objects to RCL's proof of claim on the following grounds: (1) RCL's claim should be disallowed, because RCL filed its proof of claim after the deadline;[37] (2) RCL does not have an enforceable or perfected security interest in any commercial tort claims; and (3) RCL does not have a perfected security interest in the $150,000 escrowed holdback funds, the Accident Truck (and resulting insurance proceeds), or the Truck and Trailer. Finally, Debtor argues that to the extent that any portion of RCL's security interest is not perfected, it should be avoided under 11 U.S.C. § 544. Accordingly, the Court will address each argument.

#### A. Untimely Filed Claim and Unsecured Portion

Debtor argues that RCL's claim based on the RCL-SBA loan should not be allowed, because it was filed after the deadline. To the extent that RCL may be under-secured, the Court agrees with Debtor that RCL cannot pursue a deficiency claim, because RCL did not timely file a proof of claim.

There is no dispute that RCL did not timely file its proof of claim. RCL argues, however, that it was not required to file a proof of claim due to its secured status and Debtor's inclusion of RCL's claim in its bankruptcy schedules.

Federal Rule of Bankruptcy Procedure 3003(b)(1) provides that creditors' claims listed in the debtor's schedules "shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated."

---

[37] Debtor also argues that to the extent that the Court considers RCL's untimely proof of claim, RCL should be held to its assertion therein that none of its claim is unsecured, and thus, RCL cannot share in any distributions to unsecured creditors. *See In re J.H. Inv. Services, Inc.*, 452 Fed. Appx. 858 (11th Cir. 2011) (holding the creditor to its assertion in its proof of claim that the entire claim was secured and not allowing the creditor to pursue a deficiency claim). The Court need not reach this argument because the Court agrees with Debtor that RCL was required to file a proof of claim to the extent the RCL-SBA loan was under-secured, and because it is undisputed that RCL did not timely file its proof of claim, RCL cannot pursue an unsecured deficiency claim.

7

Further, Rule 3003(c)(2) provides that any creditor whose claim is not listed in the debtor's schedules, or is listed in the schedules as disputed, contingent, or unliquidated, must file a proof of claim by the court's deadline to do so. Additionally, Rule 3003(c)(2) provides that if a creditor is required to file a proof of claim and does not do so prior to the court's deadline, that creditor cannot obtain a distribution from the estate for its claim.

With respect to RCL's secured claim, Debtor listed it in its schedules as being disputed. Thus, under Rule 3003(c)(2), RCL was required to timely file a proof of claim in order to collect on its claim. Because RCL failed to timely file a proof of claim, its secured claim is disallowed. Still, just because RCL's secured claim is disallowed, that does not mean that RCL is left with nothing. Rule 3002(a) and 11 U.S.C. § 506(d)(2) provide an exception regarding collectability—they provide that if a creditor has a secured claim that is not allowed due to the creditor's failure to file a proof of claim, the creditor's lien on the debtor's assets is not affected by the creditor's failure to file a proof of claim. Thus, to the extent that RCL has a valid and unavoidable secured claim, its failure to timely file a proof of claim is not fatal to RCL collecting on its claim from the collateral securing that claim.

In addition to its secured claim, RCL now contends that the RCL-SBA loan may be under-secured, and as such, a portion of its claim may be unsecured. But this assertion comes way too late. Because Debtor listed RCL's claim based on the RCL-SBA loan as disputed, RCL was required to timely file a proof of claim. It does not matter that Debtor characterized the claim as disputed only on Schedule D, which lists claims of secured creditors. The case of *In re Stephanie's Too, LLC*[38] is instructive on this point.

---

[38] 2020 WL 119752 (Bankr. D. N.J. Jan. 9, 2020).

In *Stephanie's Too*, the issue before the court in the Chapter 11 bankruptcy case was whether a partially secured creditor who did not file a proof of claim was allowed to cast a ballot on account of its deficiency claim.[39] The debtor listed the creditor on Schedule D as having a secured claim for $2,500 and an unsecured claim for over $600,000, and the debtor did not indicate that the creditor's claim was contingent, disputed, or unliquidated.[40] The debtor did not list the creditor as an unsecured creditor on Schedule E/F, and the creditor did not file a proof of claim.[41]

The creditor argued that because the debtor listed its claim on Schedule D and did not indicate that the claim was contingent, disputed, or unliquidated, the creditor was not required to file a proof of claim in order to cast a ballot on its deficiency claim, as its entire claim was deemed allowed.[42] The court agreed, stating:

> Rule 3003(c)(2) only requires a creditor to file a claim if its claim is not scheduled or is scheduled as disputed, contingent, or unliquidated. Rule 3002(c)(2) does not require a creditor to file a claim if it was scheduled in one schedule [as not disputed, contingent, or unliquidated], but not scheduled in another schedule. Based upon the language of the Bankruptcy Code and Rules, the Court concludes that if a creditor's claim is scheduled as [not disputed, contingent, or unliquidated], the entire claim is deemed filed and allowed, not only the portion that corresponds to the schedule in which the creditor was listed.[43]

Here, on the other hand, Debtor listed RCL's claim as partially secured (clearly indicating a potential deficiency claim) on Schedule D and clearly designated the claim as disputed. This was enough to dispute both the secured and deficiency claim so as to require RCL to timely file a proof of claim. RCL's failure to do so precludes its deficiency claim.

---

[39] *See id.* at *1.
[40] *See id.*
[41] *See id.*
[42] *See id.*
[43] *See id.* at *3.

9

The Court notes that Debtor did list RCL as having an unsecured claim on its Schedule E/F. While the boxes to designate the claim as disputed, contingent, or unliquidated are unchecked, the claim amount is listed as "Unknown." The Court cannot deem a claim allowed in an unknown amount. In any event, the claim listed on Debtor's Schedule E/F for RCL references an account number ending in 6101—which is a different account number than the one for the RCL-SBA loan, which has an account number ending in 8209. As such, the Court finds that Debtor's filing of Schedule E/F did not eliminate RCL's duty to timely file a proof of claim to assert a deficiency claim arising from the RCL-SBA loan. Because RCL did not timely file its proof of claim, it does not have an allowed unsecured claim arising from the RCL-SBA loan.

### B. Perfection and Avoidance[44]

Next, Debtor argues that RCL does not have a perfected security interest in the following assets: (1) any commercial tort claims that Debtor might choose to pursue; (2) the $150,000 holdback funds being held in escrow; (3) the Accident Truck and resulting insurance proceeds, and (4) the Truck and Trailer. Therefore, Debtor argues that RCL's alleged security interest in these items should be avoided under 11 U.S.C. § 544.

"The burden of proving that an item of property is subject to a security interest is on the party asserting the interest."[45] Even if RCL shows that its alleged security interest in these assets has, in fact, attached, Debtor can avoid RCL's security interest in an asset under § 544 if RCL did not perfect its security interest in that asset prior to the bankruptcy petition date.

---

[44] Pursuant to 28 U.S.C. §157(b)(2)(K), determinations regarding the validity, extent, or priority of liens are core proceedings.
[45] *In re Payroll Management, Inc.*, 630 B.R. 627, 642 (Bankr. N.D. Fla. 2021) (citation omitted).

Avoidance of a security interest by a bankruptcy trustee or a debtor-in-possession under § 544 has been explained as follows:

> In a bankruptcy proceeding, trustees are sometimes appointed to manage and administer the debtor's estate. Title 11 U.S.C. § 544(a) grants a bankruptcy trustee the status of a hypothetical lien creditor who has completed the legal process for perfection of its lien upon all property available for the satisfaction of its claim against the debtor, thereby taking priority over all unperfected security interests. Where a trustee is not appointed, a debtor—referred to as a debtor in possession—continues to manage and administer its estate during the proceedings. By virtue of 11 U.S.C. § 1107, a debtor in possession . . . generally has the rights and powers of a bankruptcy trustee.[46]

Thus, the Court must determine whether RCL has a valid and perfected security interest in each of these assets as of the petition date, and if not, then RCL's security interest in that asset may be avoided under § 544.[47]

### 1. Commercial Tort Claims

Debtor argues that RCL does not have a perfected security interest in any commercial tort claims that Debtor may choose to pursue. RCL responds that it has a perfected security interest in all of Debtor's causes of action by virtue of the Security Agreement and its UCC-1 Financing Statement covering general intangibles. As explained below, to the extent that Debtor pursues claims that can be characterized as commercial tort claims, RCL does not have a security interest in such claims.

Debtor states on its amended Schedule of Assets that it has breach of contract and fraud claims related to the transfer and operation of the FedEx business. Debtor has also indicated that it intends to pursue fraud claims against FedEx, Banner, BDI, and others relating to the sale

---

[46] *In re NRP Lease Holdings, LLC*, 20 F.4th 746, 750 (11th Cir. 2021) (internal citations and quotation marks omitted).
[47] "In Florida, a lien creditor takes priority over the rights of a holder of any unperfected security interest." *Id.* at 752 (citing Fla. Stat. § 679.3171(1)(b)(1)).

11

of BDI's assets to Debtor. As Debtor has not yet filed a complaint, it is impossible at this time for this Court to determine whether any claims that Debtor may pursue fall within the category of general intangibles (which specifically excludes commercial tort claims[48]) for which RCL has a perfected security interest.

Debtor contends that it may pursue commercial tort claims, which do not fall within the category of general intangibles. Furthermore, Debtor contends that RCL cannot have a perfected security interest in any commercial tort claims that Debtor may pursue, because RCL did not sufficiently describe Debtor's commercial tort claims as collateral in the Security Agreement. The Court agrees with Debtor.

To have an enforceable security interest attach to Debtor's property, there must be an authenticated security agreement with a description of the collateral that is sufficient to satisfy Florida Statute § 679.1081.[49] Florida Statute § 679.1081(5)(a) provides that when the collateral is a commercial tort claim, the collateral cannot simply be described as a commercial tort claim; more specificity is required.[50] Here, however, neither the Security Agreement nor the UCC-1 Financing Statement specifically describes any commercial tort claims as collateral (nor do they even contain the phrase "commercial tort claim" within the specified collateral). Given that commercial tort claims were not sufficiently described in the Security Agreement (or even mentioned), RCL's alleged security interest in such claims did not attach.[51] Without attachment, RCL cannot have a perfected security interest in any commercial tort claims that

---

[48] Fla. Stat. § 679.1021(1)(pp) (specifically excluding commercial tort claims from the definition of "general intangibles").
[49] *Payroll Management*, 630 B.R at 642. Florida Statute § 679.1081 sets forth the specificity requirements to sufficiently describe different types of collateral in order for a security interest to attach.
[50] *See id.* at 636. The result is the same under Pennsylvania law. *See* 13 Pa. C.S. § 9108(e)(1).
[51] *See In re Payroll Management, Inc.*, 2020 WL 9604279, at *4 (Bankr. N.D. Fla. Dec. 8, 2020) (stating that the security agreement is the operative document for attachment).

Debtor may choose to pursue. So, if Debtor pursues a commercial tort claim, RCL does not have a perfected security interest in any such claim. But whether a claim is a "commercial tort claim" will depend on the allegations asserted by Debtor in its complaint.[52]

The Court notes that RCL argues that even if it does not have a security interest in any commercial tort claims, it has a security interest in any proceeds that may result from such claims. Specifically, RCL argues that if a commercial tort claim is settled and is reduced to a contractual obligation to pay, Debtor's right to payment becomes a payment intangible (which is a subset of general intangibles) for which RCL has a perfected security interest.

Initially, RCL's argument is appealing. Comment 15 to Florida Statute § 679.1091 states "that once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort." However, as of the petition date, no settlement of (and thus no right to payment for) Debtor's potential commercial tort claims has occurred. Therefore, RCL could not have a perfected security interest in a commercial tort right to payment as of the petition date, because a right to payment did not exist, and as such, RCL's security interest could not yet attach or be properly perfected. As of the petition date, the hypothetical judgment lien creditor arising under § 544(a)(1) interrupts and takes priority. Accordingly, if Debtor settles a commercial tort claim post-petition, any security interest that RCL might have outside of bankruptcy is avoidable under § 544. This is because RCL's security interest did not attach and was not perfected as of

---

[52] Pursuant to Florida Statute § 679.1021(m) of Florida's Uniform Commercial Code, the definition of a commercial tort claim includes a claim arising in tort where the claimant is an organization. The definition is the same under Pennsylvania law. *See* 13 Pa. C.S. § 9102(a).

the petition date, when the intervention of the strong-arm powers of the hypothetical judgment lien creditor occurred.[53]

### 2. Holdback Funds Held in Escrow

Next, Debtor argues that RCL does not have a perfected security interest in the $150,000 holdback funds being held in escrow, because perfection requires that RCL have possession of the funds.[54] RCL acknowledges that it does not have possession of the $150,000 holdback funds.[55] However, RCL argues that if the holdback funds are returned to Debtor, the funds would become assets of the bankruptcy estate and would be subject to RCL's security interest. Unfortunately, RCL fails to recognize the strong-arm power of § 544—because RCL admits that it did not have a perfected security interest in the holdback funds as of the petition date, any security interest that RCL has in those funds will be avoided under § 544.

### 3. Accident Truck and Insurance Proceeds

Next, Debtor argues that RCL does not have a perfected security interest in the Accident Truck and resulting insurance proceeds, because RCL did not perfect its security interest in the Accident Truck by noting its security interest on the Accident Truck's certificate of title.[56] Further, Debtor argues that by failing to perfect its security interest in the Accident Truck, RCL failed to perfect its security interest in the resulting insurance proceeds.[57]

---

[53] Alternatively, if Debtor asserts a commercial tort claim post-petition and then settles it, 11 U.S.C. § 552(a) arguably would prevent RCL's security interest from attaching to the settlement funds, because the settlement funds would be after-acquired property and the settlement funds could not be characterized as proceeds from property that RCL had a security interest in pre-petition (*i.e.,* the commercial tort claim).
[54] Fla. Stat. § 679.3131(1). The result is the same under Pennsylvania law. *See* 13 Pa. C.S. § 9313(a).
[55] Doc. 261, p. 3.
[56] Fla. Stat. § 679.3111(1)(b); Fla. Stat. § 319.27.
[57] Fla. Stat. § 679.3151 (stating that a security interest attaches to identifiable proceeds of collateral and the security interest in the proceeds is a perfected security interest if the security interest in the original collateral was perfected).

In response, RCL acknowledges that it did not perfect its security interest in the Accident Truck.[58] However, RCL blames Debtor for failing to take steps to obtain the title to the Accident Truck so that RCL could notate its security interest on the certificate of title. Again though, RCL fails to recognize the strong-arm power of § 544 and that any security interest that RCL has in the Accident Truck and resulting insurance proceeds will be avoided under § 544.

### 4. Truck and Trailer

Next, Debtor argues that RCL does not have a perfected security interest in the Truck and Trailer, because RCL did not perfect its security interest by notating its security interest on the Truck and Trailer's certificate of title.[59] As with the Accident Truck, RCL acknowledges that it did not perfect its security interest in the Truck and Trailer.[60] Again, RCL blames Debtor for failing to take steps to obtain the titles so that RCL could notate its security interest on them. However, as previously explained with respect to the Accident Truck, any security interest that RCL has in the Truck and Trailer will be avoided under § 544.

### V. Conclusion

Based on the above, RCL is a secured creditor, but it does not have an allowed unsecured claim due to its failure to timely file a proof of claim for the unsecured amount owed by Debtor. Further, RCL did not have a perfected security interest on the petition date in any commercial tort claims that Debtor may choose to pursue, the holdback funds being held in escrow, the Accident Truck and resulting insurance proceeds, or the Truck and Trailer. As a result, RCL's security interest in those assets is avoided under § 544.

---

[58] Doc. 261, p. 6-7.
[59] In fact, the Truck and Trailer are not even listed in the Security Agreement as one of the titled vehicles in which RCL has a security interest. Thus, there is no evidence that RCL even has a security interest in the Truck and Trailer.
[60] Doc. 261, p. 6-7.

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     The Court **GRANTS** Debtor's Motion for Summary Judgment on its Objection to Claim 3 and Motion to Value and Determine Secured Status of RCL (Doc. 257).

(2)     The Court **DENIES** RCL's Motion for Summary Judgment (Doc. 258).

(3)     The Court **SUSTAINS** Debtor's Objection to RCL's Claim 3 (Doc. 139), and the Court **GRANTS** Debtor's Motion to Value and Determine Secured Status of RCL (Doc. 139) as set forth above.

Attorney Megan Murray is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of its entry.